Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
Wesley A. Wong (314652)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com
wesleyw@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiff
Mark Samarghandi*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE RECKSTIN FAMILY TRUST, Individually and On Behalf Of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>  v.<br><br>C3.AI, INC., THOMAS M. SIEBEL, DAVID BARTER, PATRICIA A. HOUSE, RICHARD LEVIN, MICHAEL G. MCCAFFERY, NEHAL RAJ, CONDOLEEZZA RICE, S. SHANKAR SASTRY, BRUCE SEWELL, LORENZO SIMONELLI, and STEPHEN M. WARD JR.,<br><br>       Defendants. | No. 4:22-cv-01413-HSG<br><br>CLASS ACTION<br><br>**MARK SAMARGHANDI'S OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL**<br><br>Date: Thursday, Aug. 18, 2022<br>Time: 2:00 p.m.<br>Courtroom: 2, 4th Floor<br>Judge:  Haywood S. Gilliam, Jr.<br><br>ORAL ARGUMENT REQUESTED |

011089-11/1891503 V1

## I.    INTRODUCTION

Mr. Samarghandi has the largest financial interest in the litigation, is the presumptive "most adequate plaintiff," and should be appointed as the Lead Plaintiff. Mr. Samarghandi's financial interest, as measured by his potentially recoverable last in, first out ("LIFO") loss is **$1,234,611.90**. *See* ECF No. 30-3. While competing movant Yining Cai purports to claim a total economic loss of $3,233,364.87 (ECF No. 8-3), this figure artificially inflates Yining Cai's true financial interest, as it includes over $2 million in losses resulting from stock sales that Yining Cai and assignor Yingjie Cai made in June 2021—well before the sole alleged disclosure of the Defendants' fraud on February 16, 2022. *See* ECF No. 1 at ¶¶ 8, 67; ECF No. 8-3; and Gilmore Opp. Decl., Ex. A.[1]  Under the Supreme Court's ruling in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), losses on such transactions are not recoverable because they were not caused by the Defendants' misrepresentation. When properly excluding these economic losses—an approach consistent with the general practice of this District— Yining Cai's potentially recoverable LIFO losses total only $1,160,203.50. *See* Gilmore Opp. Decl., Ex. A. By contrast, Mr. Samarghandi incurred 100% of his $1,234,611.90 in claimed losses in connection with long-term investments in C3ai common stock held through the alleged disclosure. As such, 100% of his claimed losses are causally connected to the fraud, ECF No. 30-3, resulting in Mr. Samarghandi having the largest financial interest in this litigation.

Moreover, as demonstrated in his moving papers, Mr. Samarghandi—the Chief Financial Officer of a Houston-based used car dealership—satisfies the relevant requirements of Federal Rules of Civil Procedure 23 ("Rule 23"). ECF No. 30-6. In particular, Mr. Samarghandi has demonstrated his losses are typical of those of other class members. Additionally, in his pleadings and declaration, Mr. Samarghandi has shown that he both understands the lead plaintiff's responsibilities and is willing and capable of overseeing the litigation and his proposed lead counsel in an independent manner. ECF Nos. 30-1, 30-6.

---

[1] "Gilmore Opp. Decl." refers to the Declaration of Lucas E. Gilmore in Support of Mark Samarghandi's Opposition to Competing Motions for Appointment as Lead Plaintiff, and Approval of Selection of Counsel, filed concurrently herewith.

Mr. Samarghandi's status as the movant that (i) timely moved for lead plaintiff appointment, (ii) has the largest financial interest, and (iii) satisfies Rule 23, establishes a presumption that he is the most adequate plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(iii). Since Mr. Samarghandi is the presumptively most adequate plaintiff, and the presumption has not been rebutted, Mr. Samarghandi should be appointed as lead plaintiff, and his selection of lead counsel should be approved.

## II.     ARGUMENT

### A.     Mr. Samarghandi is the presumptively most adequate plaintiff because he has the largest financial interest in the relief sought by the class.

Mr. Samarghandi satisfies all three requirements to be the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). First, he filed a timely motion for appointment as lead plaintiff. *See* ECF No. 30. Second, he satisfies the requirements of Rule 23, as demonstrated in his PSLRA certification, memorandum of law in support of his lead plaintiff motion and supporting declaration. *Id*. Finally, as explained herein, Mr. Samarghandi has the largest financial interest in the relief sought by the class of all movants.

### 1.     Recoverable loss is the primary measure of financial interest

"The Ninth Circuit has not provided clear guidance on what metric district courts should use in determining which potential plaintiff has the largest financial interest in a case, noting only that 'the court may select accounting methods that are both rational and consistently applied.'" *Mulligan v. Impax Labs., Inc.*, 2013 WL 3354420, at *4 (N.D. Cal. July 2, 2013) (quoting *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) ("To make this comparison, the district court must calculate each potential lead plaintiff's financial interest in the litigation. In so doing, the court may select accounting methods that are both rational and consistently applied.")).

In their discretion, courts frequently weigh the four factors that were first introduced in *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) and *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) to determine which movant has the largest financial interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and

(4) the approximate losses suffered. *See, e.g., Melucci v. Corcept Therapeutics Inc.*, 2019 WL 4933611 (N.D. Cal. Oct. 7, 2019).

While "[c]ourts applying this test consider the factors together as a whole to approximate each moving plaintiff's losses," *id*. (citing *Vancouver Alumni Asset Holdings, Inc. v. Daimler AG*, 2016 WL 10646304, at *2-3 (C.D. Cal. July 20, 2016)), they "generally place the greatest emphasis on the last of these factors," i.e., the approximate losses suffered, *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 2012 WL 78780, at *4 (N.D. Cal. Jan. 9, 2012).

In evaluating a party's financial interests in the litigation, courts in the Northern District and elsewhere often distinguish between "actual economic losses suffered" and "potential recovery" via federal securities laws. *See Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *3 (N.D. Cal. Feb. 15, 2011). This is because the Supreme Court's ruling in *Dura* "made it clear that a purchaser of stock at fraudulently inflated prices may suffer economic losses that are not caused by a defendant's misrepresentations," and are therefore not recoverable. *Perlmutter*, 2011 WL 566814 at *4; *see also Dura*, 544 U.S. at 342-43 (stating that an investor's losses on sales of stock whose purchase price had been fraudulently inflated "may reflect, not the earlier misrepresentation, but changed economic circumstances . . . or other events, which taken separately or together account for some or all of th[e] lower price"; consequently, where an investor sells his "shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss" caused by defendants' fraud).

The principle of *Dura* applies to losses under Section 10(b) of the Securities Exchange Act of 1934, as well as under Section 11 of the Securities Act of 1933 (both claims in this action). Specifically, in the Section 11 context, "[t]he affirmative defense of negative causation prevents recovery for losses that the defendant proves are not attributable to the alleged misrepresentation or omission in the registration statement." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013) (citing 15 U.S.C. § 77k(e) (codifying Section 11)). Courts therefore hold that there is no recoverable loss if a plaintiff sells his or her shares before the corrective disclosure(s) and, in the Section 11 context, often dismiss such plaintiff's claims for lack of standing. *See, e.g.*, *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1262 (N.D. Cal. 2000) ("[T]he Section 11 defendants have an absolute 'negative

causation' defense pursuant to Section 11(e) for any [] shareholders who disposed of their shares prior to the corrective disclosure."); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 254 (S.D.N.Y. 2003) ("Under the 1933 Act, the price decline before disclosure may not be charged to defendants." (internal quotation marks, citations, and brackets omitted)).

Consequently, in response to *Dura*, many district courts at the lead-plaintiff-motion stage—including those within the Northern District—have chosen "not to consider losses resulting from stock trades that occurred prior to any disclosure of the defendant's fraud" when evaluating potential lead plaintiffs' financial interests in the litigation. *See Perlmutter*, 2011 WL 566814, at *4.[2] These courts have concluded they "would be abdicating [their] responsibility under the PSLRA if [they] were to ignore the issue of loss causation [under *Dura*] at the lead plaintiff appointment stage." *Xu v. FibroGen, Inc.*, 2021 WL 3861454, at *7 n.13 (N.D. Cal. Aug. 30, 2021) (quoting *Africa v. Jianpu Tech. Inc.*, 2021 WL 1999467, at *2 (S.D.N.Y. May 19, 2021)).

As such, in evaluating financial interest in the lead-plaintiff-motion context, district courts routinely exclude losses on securities that were not held at the time of the sole corrective disclosure because such losses are unrecoverable. *See In re Elan Corp. Sec. Litig.*, 2009 WL 1321167, at *1 (S.D.N.Y. May 11, 2009) (concluding that "a more accurate figure of [a movant's] total losses" should exclude losses incurred on securities sold before corrective disclosure); *see also Hurst v. Enphase Energy, Inc.*, 2020 WL 7025085, at *3 (N.D. Cal. Nov. 30, 2020) (noting that "private securities fraud actions are intended 'not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause'") (citing *Dura*, 544 U.S. at

---

[2] In *Perlmutter*, the court concluded that "Ninth Circuit authority favors considering loss causation on a motion for appointment as lead plaintiff," and that courts should therefore focus only on "losses occurring after a defendant makes corrective disclosures." *Id*. at *5-6 (citing, as an example, *Cavanaugh*, 306 F.3d at 730 (district courts should determine "which [potential plaintiff] has the ***most to gain*** from the lawsuit" (emphasis added))). In *Mulligan*, the court similarly suggested that courts considering competing lead plaintiff motions should calculate losses incurred by plaintiffs in light of *Dura*, such that "losses stem[ming] from stocks sold before the alleged fraud was revealed" are not considered. *See* 2013 WL 3354420, at *5-6; *see also Isaacs v. Musk*, 2018 WL 6182753, at *2 (N.D. Cal. Nov. 27, 2018) (declining to appoint as lead plaintiff an investor whose claimed losses were largely attributable to activity occurring "prior to the fraud" and so potentially not "causally related to the fraud").

345); *Evellard v. LendingClub Corp.*, 2016 WL 9108914, at *3 (N.D. Cal. Aug. 15, 2016) (recognizing in a case with Section 10b and Section 11 claims, without holding due to non-opposition, that "the proper test for losses for purposes of identifying the plaintiff with the largest financial interest is a test based on the *Dura* decision"). Accordingly, potential recoverable losses (excluding losses on shares purchased and sold before any corrective disclosure) is the best measure of financial interest of potential lead plaintiffs in this case.

**2.   Mr. Samarghandi has the largest loss potentially recoverable via securities laws**

Under the proper framework, Mr. Samarghandi's financial interest, as measured by his potential recoverable loss, is $1,234,611.90. ECF No. 30-3. This is because all of Mr. Samarghandi's losses were incurred on shares purchased and held over the single alleged corrective disclosure event occurring on February 16, 2022, when Spruce Point Capital Management ("Spruce Point") issued a report and strong sell research opinion regarding C3.ai ("Spruce Point Report"). *See* ECF No. 1 ¶¶8, 67 & ECF No. 30-3.

While movant Yining Cai claims a loss of $3,233,364.87 ($1,022,117.34 in individual losses plus $2,211,247.53 in losses purportedly assigned from Yining Cai's father, Yingjie Cai), this figure includes $2,073,161.37 in losses resulting from stock sales that both Yining and Yingjie made in mid-June 2021, well before any disclosure of the Defendants' fraud. *See* ECF No. 8-3; Gilmore Opp. Decl., Ex. A. "Losses" from these transactions are not recoverable, and therefore should be excluded by the Court in its financial interest assessment. *See Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *4 (N.D. Cal. Aug. 22, 2008) ("[T]he court finds no reason to include losses in its calculations that would later be considered uncompensable" recognizing "it is difficult, if not impossible, to demonstrate loss causation for shares bought and sold before the disclosure of the misstatements or omissions."); *Foster v. Maxwell Techs., Inc.*, 2013 WL 5780424, at *3 (S.D. Cal. Oct. 24, 2013) ("This Court focuses on the amount of potential recovery in the relief sought by the class.").

Properly removing these economic losses on these transactions decreases Yining Cai's potential recoverable loss to $1,160,203.50 ($280,602.50 in individual recoverable losses, plus

$879,601.00 in recoverable losses assigned by Yingjie Cai). Gilmore Opp. Decl., Ex. A. As such, Mr. Samarghandi has the largest loss of the remaining lead plaintiff movants:[3]

| Movant | Potential Recoverable Loss |
|---|---|
| **Mark Samarghandi** | $1,234,611.90* |
| **Yining Cai** | $1,160,203.50* |
| **Hossein Y. Afshari** | $1,157,576.93 |
| **Leonard Janos** | $899,154.47 |
| **Fadi Karnaby** | $574,876.47 |
| David Hu<br>Li Zhong Hu | $203,522.68<br>$119,984.12<br>----------------<br>$323,506.80 |
| **Christie Sweeney**<br>**Dennis Martinez** | $117,180.00<br>$201,435.35<br>----------------<br>$318,615.35 |
| **Sravan Potu** | $282,665.00 |
| **\* Adjusted for losses potentially recoverable under *Dura*.** | |
| **\*\* Mr. Samarghandi has not calculated the potential recoverable losses for movants other than himself and Yining Cai, as the other movants acknowledge that they incurred lower economic losses, and any exclusion of stock trades under *Dura* for those movants would not increase their recoverable losses in this suit relative to Mr. Samarghandi.** | |

While Yining Cai's potential recoverable losses may arguably be close to Mr. Samarghandi's potential recoverable loss, for purposes of identifying the movant with the largest financial interest, "any financial difference is meaningful." *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) (collecting cases).

---

[3] Mr. Potu (ECF No. 45), the Hu Family (ECF No. 47), Fadi Karnaby (ECF No. 48), Hossein Y. Afshari (ECF No. 49), and Dennis Martinez and Christie Sweeney (ECF No. 50) have filed notices of non-opposition to the competing motions, acknowledging that they do not have the "largest financial interest" in this litigation.

OPP. TO COMPETING MOTS. FOR APPOINTMENT OF LEAD PLAINTIFF AND COUNSEL - 6
Case No.: 4:22-cv-01413-HSG
011089-11/1891503 V1

Since Mr. Samarghandi has the largest financial interest of the remaining movants, filed a timely motion, and satisfies the requirements of Rule 23, he is the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

**B.      The presumption that Mr. Samarghandi is the most adequate plaintiff has not been rebutted**

The lead plaintiff presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II). No proof, let alone facts, has been presented that Mr. Samarghandi would be inadequate or subject to unique defenses, and Mr. Samarghandi is not aware of any possible basis for such a contention. *See Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status.").

To the contrary, Mr. Samarghandi is more than capable of "fairly and adequately protect[ing] the interests of the class." Fed. R. Civ. P. 23(a)(4). Mr. Samarghandi, a resident of The Woodlands, Texas, and the Chief Financial Officer of a Houston-based used car dealership (ECF No. 30-6), has a substantial financial stake in the litigation as well as the incentive and ability to vigorously represent the Class's claims. Further, Mr. Samarghandi's interests are perfectly aligned with those of other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Mr. Samarghandi and the Class. He therefore satisfies the requirements of Rule 23.

**C.      The Lead Plaintiff's choice of counsel should be approved**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); 15 U.S.C. § 77z-1(a)(3)(B)(v). Here, Mr. Samarghandi has selected Hagens Berman as lead counsel for the class. The firm has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. Accordingly, the Court should approve Mr. Samarghandi's selection of counsel.

OPP. TO COMPETING MOTS. FOR APPOINTMENT OF LEAD PLAINTIFF AND COUNSEL - 7
Case No.: 4:22-cv-01413-HSG
011089-11/1891503 V1

## III.   CONCLUSION

For the reasons discussed above and in his opening brief, Mr. Samarghandi respectfully requests that this Court: (1) appoint him to serve as lead plaintiff in this action; (2) approve his selection of Hagens Berman as lead counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: May 17, 2022

HAGENS BERMAN SOBOL SHAPIRO LLP

By:   */s/ Lucas E. Gilmore*
      LUCAS E. GILMORE

Reed R. Gilmore (139304)
Lucas E. Gilmore (250893)
Wesley A. Wong (314652)
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com
wesleyw@hbsslaw.com

Steve W. Berman (*pro hac vice forthcoming*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiff Mark Samarghandi and [Proposed] Lead Counsel*