GIBSON, DUNN & CRUTCHER LLP
JESSICA VALENZUELA, SBN 220934
 JValenzuela@gibsondunn.com
1881 Page Mill Road
Palo Alto, California 94304-1211
Telephone:   650.849.5300
Facsimile:   650.849.5333

GEORGE B. ADAMS III, SBN 321904
 GAdams@gibsondunn.com
555 Mission Street Suite 3000
San Francisco, CA 94105-0921
Telephone:   415.393.8200
Facsimile:   415.393.8306

*Attorneys for Defendant*
*Baker Hughes Company*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE RECKSTIN FAMILY TRUST, et al., | CASE NO. 4:22-cv-01413-HSG |
| Plaintiffs, | **BAKER HUGHES'S NOTICE OF MOTION AND MOTION TO DISMISS WITH PREJUDICE AND JOINDER IN C3 DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| C3.AI, INC., et al. | |
| Defendants. | |

**Hearing:**
Date:          August 17, 2023
Time:          2:00 PM
Place:         Courtroom 2, 4th Floor

Judge:         Hon. Haywood S. Gilliam, Jr.
Action Filed:  March 4, 2022

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

Page

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

I. INTRODUCTION ....................................................................................................... 2

II. BACKGROUND ........................................................................................................ 3

    A.     Overview of Baker Hughes's Reseller Agreements With C3 ..................... 3

    B.     C3's December 2020 IPO .......................................................................... 4

    C.     C3's Alleged Statements About the Baker Hughes Sales Force Following the IPO ...................................................................................................... 5

    D.     Baker Hughes Sells A Small Portion Of Its C3 Shares In April 2021 ......... 5

    E.     The Alleged Corrective Disclosures ......................................................... 6

    F.     Procedural History ................................................................................... 6

III. LEGAL STANDARD .............................................................................................. 6

IV. ARGUMENT ........................................................................................................... 7

    A.     Plaintiffs Fail To Plead Control Person Claims Against Baker Hughes Under Section 15 and Section 20(a). ........................................................ 7

        1.     Plaintiffs' Section 15 Claim Is Untimely. ........................................ 7

        2.     Plaintiffs Fail To Plead A Primary Violation By C3. ...................... 8

        3.     Plaintiffs Fail to Plead Any Facts That Baker Hughes Controlled C3 ............ 8

    B.     Plaintiffs Fail to State a Claim Under Section 20A Against Baker Hughes. ............ 10

        1.     Plaintiffs Fail To Plead A Predicate Violation By Baker Hughes. ............... 10

        2.     Plaintiffs Fail to Allege Any Facts That Baker Hughes Traded C3 Stock While in Possession of Material Nonpublic Information ..................... 11

        3.     Plaintiffs Also Fail to Allege Scienter. ........................................... 13

        4.     Plaintiffs Fail to Allege Any Facts That Baker Hughes Traded Contemporaneously With Plaintiffs. ........................................... 14

V. CONCLUSION .......................................................................................................... 16

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Arrowhead Rsch. Corp. Sec. Litig.*,
2016 WL 6562066 (C.D. Cal. Mar. 29, 2016) ......................................................10, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................7

*Bao v. Solarcity Corp.*,
2016 WL 54133 (N.D. Cal. Jan. 5, 2016) ...........................................................2, 9

*Batwin v. Occam Networks, Inc.*,
2008 WL 2676364 (C.D. Cal. July 1, 2008) ......................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................7

*Brodsky v. Yahoo! Inc.*,
592 F. Supp. 2d 1192 (N.D. Cal. 2008) ........................................................12, 13

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ...............................................................................13

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ..............................................................14

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .................................................................................6

*Dexia Holdings, Inc. v. Countrywide Financial Corp.*,
2012 WL 1798997 (C.D. Cal. Feb. 17, 2012) ......................................................8

*Ferreira v. Funko Inc.*,
2021 WL 8820650 (C.D. Cal. Oct. 22, 2021) ....................................................11

*Glazer Capital Management, L.P. v. Forescount Techs., Inc.*
63 F.4th 747 (9th Cir. 2023) ................................................................................13

*Golub v. Gigamon Inc.*,
372 F. Supp. 3d 1033 (N.D. Cal. 2019) ................................................................9

*Greenberg v. Sunrun Inc.*,
233 F. Supp. 3d 764 (N.D. Cal. 2017) ...............................................................7, 8

*In re Gupta Corp. Sec. Litig.*,
900 F. Supp. 1217 (N.D. Cal. 1994) ...............................................................9, 10

Gibson, Dunn &
Crutcher LLP

*Hollinger v. Titan Cap. Corp.*,
    914 F.2d 1564 (9th Cir. 1990)..................................................................7

*In re Immersion Corp. Sec. Litig.*,
    2011 WL 871650 (N.D. Cal. Mar. 11, 2011) .......................................11

*Jenson v. Allison-Williams Co.*,
    1999 WL 35133748 (S.D. Cal. Aug. 23, 1999) ....................................8

*Lipton v. Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002)............................................................10

*McGovney v. Aerohive Networks, Inc.*,
    367 F. Supp. 3d 1038 (N.D. Cal. 2019) .............................................13

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ..............................................9

*In re Nektar Therapeutics Sec. Litig.*,
    34 F. 4th 828 (9th Cir. 2022) ............................................................ 13

*In re Netflix, Inc. Sec. Litig.*,
    964 F. Supp. 2d 1188 (N.D. Cal. 2013) .............................................10

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993)..................................................................14

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014).............................................................14

*In re Openwave Sys. Sec. Litig.*,
    528 F. Supp. 2d 236 (S.D.N.Y. 2007) ................................................11

*In re Pixar Sec. Litig.*,
    450 F. Supp. 2d 1096 (N.D. Cal. 2006) .............................................14

*Purple Mountain Tr. v. Wells Fargo & Co.*,
    432 F. Supp. 3d 1095 (N.D. Cal. 2020) .............................................10

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012)............................................................7, 8

*Rogers v. Horsely*,
    123 Fed. App'x. 281 (9th Cir. 2005) ...................................................8

*Sabbag v. Cinnamon*,
    2010 WL 8470477 (N.D. Cal. Dec. 10, 2010) ....................................8

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
    485 F. Supp. 3d 1113 (N.D. Cal. 2020) ....................................3, 14, 15

Gibson, Dunn &
Crutcher LLP

*Shurkin v. Golden State Vintners Inc.*,
   471 F. Supp. 2d 998 (N.D. Cal. 2006), *aff'd*, 303 F. App'x 431 (9th Cir. 2008) ...........................3

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
   2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ...................................................................9

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996).................................................................................8

*Xiaojiao Lu v. Align Tech. Inc.*,
   417 F. Supp. 3d 1266 (N.D. Cal. 2019) ...............................................................11, 15

**STATUTES**

15 U.S.C. § 77m............................................................................................2, 7, 8

15 U.S.C. § 78t–1.........................................................................................10, 11

15 U.S.C. § 78u-4(b)(2)(A)....................................................................................13

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 17, 2023, at 2:00 p.m., or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Courtroom 2 – 4th Floor, Defendant Baker Hughes Company ("Baker Hughes") will and hereby does move for an order dismissing Plaintiffs' Amended Complaint, ECF No. 71 ("Amended Complaint"), pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") for failure to state a claim against Baker Hughes under Section 15 of the Securities Act of 1933 ("Securities Act"), Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Section 20A of the Exchange Act (the "Motion"). This Motion is based on this Notice, the supporting Memorandum of Points and Authorities included below, the Motion to Dismiss and supporting Memorandum of Points and Authorities of the C3 Defendants, along with the Request for Judicial Notice, supporting declaration, and exhibits thereto, all records in this action, and any additional material and arguments as may be considered in connection with the hearing on the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Plaintiffs' claim under Section 15 of the Securities Act should be dismissed against Baker Hughes because it is barred by the one-year statute of limitations.

2. Whether Plaintiffs' claim under Section 15 of the Securities Act should be dismissed for failure to plead a primary violation of the Securities Act.

3. Whether Plaintiffs' claim under Section 15 of the Securities Act should be dismissed for failure to plead that Baker Hughes controlled C3.ai, Inc.

4. Whether Plaintiffs' claim under Section 20(a) of the Exchange Act should be dismissed for failure to plead a primary violation of the Exchange Act.

5. Whether Plaintiffs' claim under Section 20(a) of the Exchange Act should be dismissed for failure to plead that Baker Hughes controlled C3.ai, Inc.

6. Whether Plaintiffs' claim under Section 20A of the Exchange Act should be dismissed for failure to plead a predicate violation of the Exchange Act by Baker Hughes.

Gibson, Dunn &
Crutcher LLP

7. Whether Plaintiffs' claim under Section 20A of the Exchange Act should be dismissed for failure to plead that Baker Hughes possessed material nonpublic information at the time of its trades.

8. Whether Plaintiffs' claim under Section 20A of the Exchange Act should be dismissed for failure to plead that Baker Hughes traded C3 shares with scienter.

9. Whether Plaintiffs' claim under Section 20A of the Exchange Act should be dismissed because no named Plaintiff traded contemporaneously with Baker Hughes.

## I. INTRODUCTION

Plaintiffs' Amended Complaint against Baker Hughes is much too little, much too late. It should be dismissed for the same reasons explained by C3.ai, Inc. ("C3") in its motion to dismiss—and Baker Hughes joins that motion in full. But if anything, the claims against Baker Hughes—which was not even named as a defendant in Plaintiffs' initial complaint—are even weaker. The Amended Complaint does not allege that Baker Hughes made any false or misleading statements. Instead, it asserts that Baker Hughes—a minority investor in C3 with an arm's length business relationship—somehow "controlled" C3 and its executives and is secondarily liable for any fraud on C3's part. It also asserts that Baker Hughes engaged in "insider trading." These claims all fail not just for all the reasons set out in C3's motion, but also for four additional, independent reasons.

*First*, Plaintiffs' claim against Baker Hughes under Section 15 of the Securities Act of 1933 ("Securities Act") is barred by the statute of limitations. Securities Act claims must be brought within one year of actual or inquiry notice of the alleged misstatement or omission. 15 U.S.C. § 77m. The Amended Complaint admits that the purported "truth" about Defendants' alleged misstatements was disclosed on December 1, 2021. But Plaintiffs did not bring *any* claim against Baker Hughes until February 15, 2023—more than fourteen months later. ECF No. 71.

*Second*, Plaintiffs' Section 15 and Section 20(a) claims also fail because the Amended Complaint does not plead that Baker Hughes is a "control person" of C3. Plaintiffs' boilerplate allegations that Baker Hughes was a minority shareholder with a less than 15% equity stake and a representative on C3's board do not come close to showing that Baker Hughes exercised day-to-day management over C3's affairs. *See Bao v. Solarcity Corp.*, 2016 WL 54133, at *9 (N.D. Cal. Jan. 5, 2016).

Gibson, Dunn &
Crutcher LLP

*Third*, Plaintiffs' Section 20A claim for insider trading fails because the Amended Complaint does not allege the requisite requirement that Baker Hughes possessed material, nonpublic information about C3 when it sold C3 stock—let alone facts sufficient to plead a strong inference that Baker Hughes acted with the requisite fraudulent intent. *See Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998, 1024 (N.D. Cal. 2006), *aff'd*, 303 F. App'x 431 (9th Cir. 2008).

*Fourth*, Plaintiffs' Section 20A claim fails because Plaintiffs "cannot satisfy the contemporaneity requirement" as a matter of law. *See SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1136 (N.D. Cal. 2020). Based on Plaintiffs' own allegations, it is undisputed that no Plaintiff traded on the same day as Baker Hughes. And not a single Plaintiff who purchased shares after Baker Hughes' sales did so at a lower price than Baker Hughes sold its shares. All claims against Baker Hughes should be dismissed in their entirety for these reasons, too.

## II. BACKGROUND[1]

Baker Hughes respectfully incorporates the full background discussion set out in C3's motion to dismiss ("C3 Motion") (ECF No. 105) and briefly recounts the essential allegations relevant to Baker Hughes's motion below.

### A. Overview of Baker Hughes's Reseller Agreements With C3

Baker Hughes is one of the world's largest oil field services companies. ¶ 8.[2] The Amended Complaint alleges that, in June 2019, Baker Hughes entered into an agreement (the "Reseller Agreement") with C3. Under the Reseller Agreement, Baker Hughes purchased a subscription to C3's software for Baker Hughes' own operations. It also acquired (i) the exclusive right to resell C3's software in the oil and gas industry, and (ii) a non-exclusive right to resell C3's software in other industries. ¶ 63. In return, Baker Hughes agreed that it would guarantee revenues to C3 for three years: $50 million, $100 million and $170 million, respectively, for fiscal years ending on April 30, 2020, 2021 and 2022. *Id.*

---

[1] By summarizing Plaintiffs' allegations, Baker Hughes does not concede that the allegations are true.

[2] Citations in the form of "¶ _" or "¶¶ _" refer to the paragraphs of the Amended Complaint (ECF No. 71).

Gibson, Dunn &
Crutcher LLP

A year later, in June 2020, Baker Hughes and C3 agreed to extend their reseller agreement by an additional two years to 2024. *Id.* As part of the amendment, the parties modified Baker Hughes's revenue commitments in FY 2021 and 2022 to $53.3 million and $75 million, respectively. The amendment also added a $125 million revenue commitment for FY 2023, and $150 million for FY 2024. *Id.* These commitments were absolute—if Baker Hughes failed to generate enough sales to meet the annual revenue commitments, it was required to pay the difference. *Id.* At the same time, Baker Hughes also purchased stock in C3 and appointed its CEO (Mr. Simonelli) to C3's board of directors. ¶ 64. Mr. Simonelli served on C3's board until December 17, 2021. ¶ 68.

## B. C3's December 2020 IPO

C3 went public through an initial public offering on December 9, 2020. ¶ 71. According to the Amended Complaint, Baker Hughes owned a 14.7% stake in C3 before the IPO, which was reduced to 11.65% after the IPO. ¶ 65.

In connection with the IPO, C3 publicly filed a registration statement (the "Registration Statement") with the SEC. ¶ 1. The Registration Statement attached the Reseller Agreement as an exhibit and included (among other things) detailed financial disclosures and more than 35 pages of disclosures identifying certain risks that could impact C3's revenues and sales. *See* C3 Mot. at 6-7.[3] These disclosures also identified certain risks to C3 investors regarding the Baker Hughes relationship. The Amended Complaint does not challenge those disclosures, or the vast majority of the remaining 180 pages of the Registration Statement.

Instead, the Amended Complaint claims that just three statements about C3's partnership with Baker Hughes were misleading: (1) that Baker Hughes was a "strategic vertical industry partner in oil and gas" (¶ 74), (2) that C3 was "jointly marketing and selling" its software "under the BHC3 brand to oil and gas companies globally with the active engagement of Baker Hughes, which has a 12,000-person sales organization" (¶ 75), and (3) that, for fiscal year 2020, C3 "recognized as revenue the full

---

[3] In connection with the Motions to Dismiss, the Court may consider the contents of the Registration Statement, as well as the other exhibits submitted with the C3 Motion, and notice of these documents is appropriate for the reasons set out in the C3 Defendants' Request for Judicial Notice, in which Baker Hughes joins. *See* C3 Defendants' Request for Judicial Notice (ECF No. 105-2).

Gibson, Dunn &
Crutcher LLP

value of the first year of the direct subscription agreement and the value of deals brought in by Baker Hughes through the reseller arrangement" (¶ 77).

## C.    C3's Alleged Statements About the Baker Hughes Sales Force Following the IPO

The Amended Complaint alleges that after the IPO, C3's CEO (Tom Siebel) made and repeated several similar statements between February 24, 2021 and November 29, 2021 in which he claimed that C3 was working with a 12,000 person salesforce at Baker Hughes. ¶¶ 124-53. Plaintiffs further allege that C3's President (Edward Abbo) told investors at a conference on March 2, 2021 that C3 had a "deep partnership" with Baker Hughes and that Baker Hughes had "deep relationships" with oil and gas companies. ¶ 130.

On June 25, 2021, C3 filed its annual report with the SEC on Form 10-K. ¶ 140. The Form 10-K was signed by C3's CEO and Chairman (Mr. Siebel), its CFO (Mr. Barter), and C3's ten directors. *Id.*; C3 Mot. Ex. D at 126 (C3 June 25, 2021 Form 10-K). The 10-K repeated the Registration Statement's disclosure that C3 was "jointly marketing and selling" its software "under the BHC3 brand to oil and gas companies globally with the active engagement of Baker Hughes, which has a 12,000-person sales organization." *Id.*

On September 1, 2021, C3 filed a quarterly report with the SEC on Form 10-Q. ¶ 144. The 10-Q was signed by Defendants Siebel and Barter. *Id.* The 10-Q referred to "the activities of our field sales organization," stating that C3's "strategic go-to-market alliances vastly extend our reach globally," and referring to Baker Hughes as among C3's "most notable partners." *Id.*

## D.    Baker Hughes Sells A Small Portion Of Its C3 Shares In April 2021

Investors who owned C3 shares before the IPO, including Baker Hughes, agreed that they would not sell their shares for a period of 120 days following the IPO. But that lock-up period would expire early—after 90 days—if certain conditions were met. ¶ 156. Those conditions were satisfied and the lockup expired on March 8, 2021. ¶ 158.

Nearly a month later, on April 7, 2021, Baker Hughes sold 873,431 shares of C3 common stock at a price of $64.25/share. ¶ 157. Baker Hughes sold additional shares on April 9, 2021 (189, 188 shares at $60.86/share) and on April 22, 2021 (170,000 shares at $67.99/share). *Id.* According to the Amended Complaint, Baker Hughes's April 22, 2021 sale was made according to a 10b5-1 plan dated

Gibson, Dunn &
Crutcher LLP

March 22, 2021.  *Id.*  Altogether, Baker Hughes's sales in April 2021 represented just 11 percent of its total investment in C3.  ¶ 65.

## E.    The Alleged Corrective Disclosures

On December 1, 2021, C3 announced its financial results for the second quarter of FY 2022, including total revenue of $58.3 million—a more than 40% increase year-over-year.  *See* C3 Mot. Ex. A (C3 December 1, 2021 Form 8-K) at 5.  On a conference call that same day, Siebel disclosed that C3 had reorganized its salesforce as an independent unit in July 2021 and again in November 2021 to a more traditional model.  ¶ 191.  He also disclosed that BHC3 previously had a dedicated sales team selling for C3 that "sat outside" of Baker Hughes, that had also been recently restructured.  ¶ 192. Plaintiffs contend that these disclosures revealed C3's purported fraud to investors.  Following C3's quarterly earnings announcement, its stock dropped.  Plaintiffs are claiming that they were damaged as a result, and this lawsuit promptly followed.

## F.    Procedural History

Plaintiff The Reckstin Family Trust filed a Class Action Complaint on March 4, 2022. ECF No. 1.  Baker Hughes was not named as a defendant in that complaint.  *Id.*  Nearly a year later, on February 15, 2023, Lead Plaintiff Mark Samarghandi ("Lead Plaintiff") filed an Amended Class Action Complaint naming Baker Hughes as a defendant for the first time.  ECF No. 71.  Baker Hughes now moves to dismiss all of the claims against it with prejudice.

Although Plaintiffs claim to challenge 18 separate statements during the one-year putative class period, these statements all say the same thing:  Plaintiffs allege that C3 misled investors by repeating the same representations about the size of Baker Hughes' sales force and that sales force's availability to sell C3 products.  Plaintiffs further claim that the challenged statements were misleading because C3 failed to disclose that it reorganized its own sales force in July 2021—more than halfway into the Class Period.

## III. LEGAL STANDARD

On a motion to dismiss, the Court is not required to accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  Instead, for Plaintiffs' claims to be plausible, they must be

Gibson, Dunn &
Crutcher LLP

1   supported by "sufficient factual matter, accepted as true, to 'state a claim to relief.'" *Ashcroft v. Iqbal*,

2   556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

3       Where a complaint asserts federal securities claims under Section 15 of the Securities Act and

4   Sections 20(a) and 20A of the Exchange Act, the complaint must "'specify each statement alleged to

5   have been misleading, the reason or reasons why the statement is misleading, and, if an allegation

6   regarding the statement or omission is made on information and belief, the complaint shall state with

7   particularity all facts on which that belief is formed,' lest it fall short of the heightened pleading

8   requirements of the Private Securities Litigation Reform Act" ("PSLRA"). *See Greenberg v. Sunrun*

9   *Inc.*, 233 F. Supp. 3d 764, 771 (N.D. Cal. 2017) (quoting 15 U.S.C. § 78u–4(b)(1)).

## IV. ARGUMENT

### A. Plaintiffs Fail To Plead Control Person Claims Against Baker Hughes Under Section 15 and Section 20(a).

13      The Amended Complaint does not allege that Baker Hughes made any false or misleading

14  statement.  Instead, it asserts that Baker Hughes—a minority investor in C3 with an arm's length

15  business relationship—somehow *controlled* C3 and its executives and is therefore liable for C3's

16  purported fraud under Section 15 of the Securities Act or Section 20(a) of the Exchange Act.  But to

17  state either claim, Plaintiffs must plead (1) an underlying violation of the Securities Act or Exchange

18  Act and (2) control over the primary violator or the statements at issue.  *Greenberg*, 233 F. Supp. 3d at

19  772; *see also In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012).[4]

20      Plaintiffs do not sufficiently allege either element, so both claims should be dismissed.

21      1.      Plaintiffs' Section 15 Claim Is Untimely.

22      As a threshold matter, Plaintiffs' Section 15 claim fails because it is barred by the statute of

23  limitations.  Claims brought under Section 15 are subject to a one-year statute of limitations running

24  from actual or inquiry notice of untrue or misleading statements.  *See* 15 U.S.C. § 77m.  On the face of

25  Plaintiffs' own allegations, they have failed to bring any claim against Baker Hughes within this one-

26  year period.

27

28  [4] Although § 15 is not identical to § 20(a), the controlling person analysis is the same. *See Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1578 (9th Cir. 1990).

Gibson, Dunn & Crutcher LLP

The Amended Complaint states that the "truth" about Defendants' alleged misstatements was disclosed on December 1, 2021. ¶¶ 189-93. Thus, by Plaintiffs' own admission, the one-year statute of limitations began to run no later than this date. *Sabbag v. Cinnamon*, 2010 WL 8470477, at *3-4 (N.D. Cal. Dec. 10, 2010) (dismissing claim under Section 14(a) of the Exchange Act as time-barred under similar statute of limitations where "[p]laintiffs themselves allege that [defendant] had finally disclosed the truth" more than a year before the filing of the amended complaint). Yet Baker Hughes was not named as a defendant until the Amended Complaint was filed on February 15, 2023—more than fourteen months later. As such, the claims against Baker Hughes are untimely on their face. *Dexia Holdings, Inc. v. Countrywide Financial Corp.*, 2012 WL 1798997, at *3 (C.D. Cal. Feb. 17, 2012) (dismissing Section 15 claim against defendant not named in earlier action as time barred); *see also In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1411 (9th Cir. 1996) (addressing same limitations period under 15 U.S.C. § 77m and dismissing Section 11 claim against new defendant named for first time in amended complaint).[5]

### 2. Plaintiffs Fail To Plead A Primary Violation By C3.

For all the reasons set forth in the C3 Motion, Plaintiffs fail to plead that any Defendant violated Section 11 of the Securities Act (Count I) or Section 10(b) of the Exchange Act (Count III). *See* C3 Mot. Argument §§ I-II. As a result, Plaintiffs' secondary control-person claims against Baker Hughes necessarily fail as a matter of law for lack of a primary violation and should be dismissed for that reason alone. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d at 886; *Greenberg*, 233 F. Supp. 3d at 772.

### 3. Plaintiffs Fail to Plead Any Facts That Baker Hughes Controlled C3.

To plead control, Plaintiffs must allege specific facts showing that Baker Hughes was involved "in the day-to-day affairs of the company or [had] specific control over the preparation and release of

---

[5] Under well-settled law, a "statute of limitations is not tolled against a defendant class member until the moment that party is specifically named as a defendant, either through an amended complaint or otherwise . . . otherwise, defendants would be required to defend against actions of which they had no knowledge whatsoever until after the statute of limitations had run." *Jenson v. Allison-Williams Co.*, 1999 WL 35133748, at *5 (S.D. Cal. Aug. 23, 1999); s*ee also Rogers v. Horsely*, 123 Fed. App'x 281, 286 (9th Cir. 2005).

Gibson, Dunn &
Crutcher LLP

the allegedly false and misleading statements." *See Solarcity Corp.*, 2016 WL 54133, at *9. Plaintiffs do not come close to satisfying that standard.

The *Solarcity* case shows why. In that case, the plaintiff alleged that Solarcity's chairman, Elon Musk, was liable as a control person for allegedly false and misleading statements that the company made to investors. Plaintiff relied on the fact that Musk was chairman of the company's board, owned roughly 30% of Solarcity's outstanding shares, was cousins with Solarcity's CEO, and signed certain of Solarcity's financial statements. *Id.* The Solarcity CEO even described Musk as having the ability to direct the CEO's actions by "instruct[ing the CEO] to swerve into a pothole" to "avoid invisible walls." *Id.* The court held that these allegations "fall short" of pleading control. *Id.*

The allegations here pale in comparison to those held insufficient in *Solarcity*. They are far more sparse and comprise of only two boilerplate allegations: (1) Baker Hughes owned 14.7% of C3 at the time of the IPO, which dropped to 11.65% after the IPO (¶¶ 8, 65, 112) and (2) Baker Hughes designated its CEO (Mr. Simonelli) to serve as one of C3's ten directors (¶¶ 8, 64, 112). Such allegations are patently insufficient to plead control.

*First*, Baker Hughes' "position as a minority shareholder . . . does not establish control person liability." *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994). Baker Hughes' status as a minority shareholder with less than a 15% equity stake does not support an inference that it controlled C3 "management and policies"—let alone show that Baker Hughes "exercised a significant degree of day-to-day operational control" over C3 "amounting to the power to dictate [its] conduct or operations" as required to plead a control person claim. *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000) (internal quotation marks omitted).

Indeed, courts routinely dismiss control person claims where defendants own far more of a company. *See Solarcity Corp.*, 2016 WL 54133, at *9 (30% equity interest insufficient to establish control); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000) (same for 20% equity interest); *Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1053 (N.D. Cal. 2019) (same for 15.3% equity interest).

*Second*, the fact that Baker Hughes' CEO held a seat on C3's board is not enough to plead control. An individual's mere status as a director cannot make someone a control person. *See Solarcity*,

Gibson, Dunn &
Crutcher LLP

2016 WL 54133, at \*9; *see also Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1107 (N.D. Cal. 2020) (dismissing Section 20(a) claim against former board chair). If the status of Mr. Simonelli as a director is insufficient to make him a control person, it necessarily follows that merely being affiliated with a director cannot make Baker Hughes a control person. *See In re Gupta Corp. Sec. Litig.*, 900 F. Supp. at 1243.

Because Plaintiffs do not and cannot allege that Baker Hughes controlled C3, their Section 15 and Section 20(a) should be dismissed with prejudice.

**B.      Plaintiffs Fail to State a Claim Under Section 20A Against Baker Hughes.**

Plaintiffs attempt to maintain a Section 20A insider trading claim against Baker Hughes because it sold a small portion of its C3 stock in the months after the IPO. But the Amended Complaint fails to allege any basis for such a claim.

Section 20A provides a limited private right of action against "[a]ny person who violates any provision of [the Exchange Act] by purchasing or selling a security while in possession of material, nonpublic information." 15 U.S.C. § 78t–1. Section 20A claims can only be brought by persons who made a "contemporaneous" trade in the same security—i.e., a purchaser who bought shares when the defendant sold shares or vice versa. *Id.*

So to plead a Section 20A claim against Baker Hughes, Plaintiffs must allege with specificity that Baker Hughes (1) committed a predicate insider trading violation of the Exchange Act, (2) traded C3 stock while in possession of material nonpublic information, (3) did so with scienter, *and* (4) one or more Plaintiffs traded "contemporaneously" with Baker Hughes. *See In re Arrowhead Rsch. Corp. Sec. Litig.*, 2016 WL 6562066, at \*11 (C.D. Cal. Mar. 29, 2016); *see also Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002). Plaintiffs cannot satisfy a single requirement, much less all four.

1.      <u>Plaintiffs Fail To Plead A Predicate Violation By Baker Hughes.</u>

Plaintiffs' Section 20A claim against Baker Hughes fails as a threshold matter because Plaintiffs do not plead any plausible predicate insider trading claim under the Exchange Act against Baker Hughes and "there can be no insider trading liability under Section 20A without an underlying" act of insider trading in violation of the Exchange Act. *In re Netflix, Inc. Sec. Litig.*, 964 F. Supp. 2d 1188,

1199 (N.D. Cal. 2013) (dismissing Section 20A claim where plaintiff failed to allege a violation of Section 10(b) by the defendant); *In re Immersion Corp. Sec. Litig.*, 2011 WL 871650, at *9 (N.D. Cal. Mar. 11, 2011).[6]

The only Exchange Act claim asserted against Baker Hughes is for control person liability under Section 20(a).  ¶¶ 248-254, 259.  But Section 20(a) "may serve as a predicate violation for the purposes of § 20A . . . only where the claim for control person liability relates to insider trading."  *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *27 (C.D. Cal. July 1, 2008).  That is not the case here: the Amended Complaint pleads no Section 20(a) claim against Baker Hughes based on insider trading.

Instead, Plaintiffs' Section 20(a) "control person" claim is based on the theory that Baker Hughes somehow "control[ed] the contents" of C3's statements and is liable for C3's alleged misstatements and omissions.  ¶¶ 248-54.  Plaintiffs' Section 20(a) claim against Baker Hughes fails as a matter of law for the reasons discussed in Section IV.A above and, in any event, is not a valid "insider trading" predicate for purposes of Section 20A.  *See Batwin*, 2008 WL 2676364, at *27 (dismissing Section 20A claim where Section 20(a) claim did not "relate[] to insider trading"); *Ferreira v. Funko Inc.*, 2021 WL 8820650, at *38 (C.D. Cal. Oct. 22, 2021) ("Without a predicate violation by these particular Defendants, Plaintiffs' Section 20A claim against them fails.").  Plaintiffs' Section 20A claim fails and should be dismissed for this threshold reason.

> 2.    <u>Plaintiffs Fail to Allege Any Facts That Baker Hughes Traded C3 Stock While in Possession of Material Nonpublic Information.</u>

In addition to failing to plead a predicate violation by Baker Hughes under Section 20(a), the Amended Complaint does not plead any facts showing that Baker Hughes traded C3 stock "while in possession of material, nonpublic information" (15 U.S.C. § 78t–1)—let alone with "specificity regarding what material, nonpublic information [Baker Hughes] had" as required by the PSLRA.  *See Xiaojiao Lu v. Align Tech. Inc.*, 417 F. Supp. 3d 1266, 1282 (N.D. Cal. 2019).  Plaintiffs allege that

---

[6]  *See also In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 256 (S.D.N.Y. 2007) ("Plaintiff failed entirely to allege any underlying Exchange Act violation *as to defendants* Snyder, Peters, and Wilkinson.  The Section 20A claims against them are therefore dismissed, as well" (emphasis added)); *City of Edinburgh Council*, 754 F.3d 159,175–76 (3d Cir. 2014) ("Because the Funds have failed to adequately plead a predicate Exchange Act violation, their section 20A claim must also be dismissed").

Gibson, Dunn &
Crutcher LLP

Baker Hughes sold C3 shares while purportedly in possession of: (1) the supposed "truth about C3's access to the Baker Hughes salesforce" (¶ 256), and (2) alleged "adverse information concerning C3's true business and financial condition" (¶ 260). Neither category can support an insider trading claim against Baker Hughes.

*First*, Plaintiffs do not allege any facts showing that Baker Hughes possessed material nonpublic information about C3's access to the Baker Hughes salesforce. C3's Registration Statement disclosed that C3 and Baker Hughes were "jointly marketing and selling a range of Enterprise AI solutions to address the entire value of upstream, mid-stream, and downstream activity ***under the BHC3 brand*** to oil and gas companies globally with the active engagement of Baker Hughes, which has a 12,000-person sales organization." ¶ 75. As explained in the C3 Motion, Plaintiffs do not allege that this statement was actually false or misleading (C3 Mot. at 11). The only other allegation connected even tangentially to Baker Hughes is that Mr. Simonelli, Baker Hughes' CEO, signed C3's 2021 10-K along with C3's other nine directors. ¶ 140. Even if there were any false or misleading statements in the 10-K (which there were not), it was filed two months *after* Baker Hughes's alleged insider sales and cannot give rise to a Section 20A claim. ¶ 157; *see also Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1208 (N.D. Cal. 2008) (dismissing 20A claim and noting that "Plaintiffs fail to identify any specific material nonpublic information in the possession of any Defendant *at the time of a specific trade*" (emphasis added)). ¶¶ 75, 140.

By comparison, Plaintiffs allege no facts that Baker Hughes was even aware of the alleged misstatements concerning C3's partnership with Baker Hughes, made by Mr. Siebel between February 24, 2021 and November 29, 2021 (¶¶ 124-53) and in C3's 10-Q filed on September 1, 2021, which was signed only by Defendants Siebel and Barter. ¶ 144. Nor, in any event, do Plaintiffs explain how the size of Baker Hughes' salesforce working for C3 would be material to C3's investors in light of Baker Hughes' revenue commitments—pursuant to which C3 would recognize revenues whether or not Baker Hughes generated any sales. ¶ 63. Nor does the Amended Complaint contain a single allegation as to why the size of Baker Hughes' sales force—whether dedicated to selling C3 products or not—would have made any difference to C3's business operations or results.

Gibson, Dunn &
Crutcher LLP

An omitted fact is material only if it "alter[s] the 'total mix' of information made available" to stockholders concerning their investment. *In re Nektar Therapeutics Sec. Litig.*, 34 F. 4th 828, 836 (9th Cir. 2022). "That is to say the omission 'must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists.'" *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1055 (N.D. Cal. 2019) (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)). Conclusory allegations such as those in the Amended Complaint that a fact is "material" do not suffice to state a securities claim under the PSLRA. *See In re Nektar Therapeutics*, 34 F. 4th at 836 (dismissing complaint that did "not allege with specificity" why misrepresentation was material). Plaintiffs instead must (but do not) explain *why* the salesforce size would have been material to C3's shareholders in light of the absolute revenue commitments guaranteed by Baker Hughes.

*Second*, Plaintiffs allege no facts showing that Baker Hughes possessed information concerning C3's "true business and financial condition" when it sold C3 shares in April 2021. Nor could they. Crucially, the adverse developments that Plaintiffs allege were undisclosed—C3's reorganization of its salesforce in July and November 2021 (¶ 191) and the amendment of the Reseller Agreement in October 2021 (¶ 150)—all occurred months *after* Baker Hughes's alleged insider sales in April 2021. It goes without saying that Baker Hughes could not possess material, nonpublic information about events that occurred in July and November 2021 "at the time [it] sold [its C3] stock" in April 2021. *In re Arrowhead*, 2016 WL 6562066, at *11 (Section 20A concerns material information known "at the time" of defendants' insider sale); *Brodsky*, 592 F. Supp. 2d at 1208 (same). Plaintiffs' Section 20A claim should be dismissed for this reason too.

### 3. Plaintiffs Also Fail to Allege Scienter.

Even if Plaintiffs could show that Baker Hughes possessed some material nonpublic information when it sold C3 stock in April 2021 (which they cannot), Plaintiffs' Section 20A claim would still fail because Plaintiffs fail to plead "a strong inference" of scienter in connection with any trades by Baker Hughes as required under the PSLRA. 15 U.S.C. § 78u-4(b)(2)(A).

"'Scienter' as used in the federal securities laws means the 'intent to mislead investors' or deliberate recklessness to 'an obvious danger of misleading investors.'" *Glazer Capital Management,*

L.P. v. Forescount Techs., Inc. 63 F.4th 747, 765 (9th Cir. 2023) (quoting *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1059 (9th Cir. 2014)).  At most, Plaintiffs contend that Baker Hughes's pattern of trading was "suspicious" (¶ 168)—but Plaintiffs do not allege *anything* about Baker Hughes's trading history, so there is nothing to compare Baker Hughes' three sales in April—which totaled just 11 percent of its holdings in C3—against and thus no inference of anything "suspicious" is possible.  *See, e.g.*, *In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1104-05 (N.D. Cal. 2006) ("Standing alone, the sale of almost 25% over a five month period is not suspicious.").

Moreover, Plaintiffs cannot plausibly claim that Baker Hughes's April 22, 2021 stock sale is suspicious because Plaintiffs concede it was a *non-discretionary* sale under a Rule 10b5-1 plan.  ¶¶ 157, 168.  Such a "non-discretionary sale[]" made pursuant to a prior Rule 10b5-1 plan "negate[s] an inference of scienter."  *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1069 (N.D. Cal. 2012) (non-discretionary sales made under 10b5-1 trading plan not indicative of fraud).  Plaintiffs' Section 20A claim should thus be dismissed for failure to plead scienter in addition to the lack of a predicate violation and the complete absence of any facts showing Baker Hughes possessed material nonpublic information when it traded C3 stock.

### 4.    Plaintiffs Fail to Allege Any Facts That Baker Hughes Traded Contemporaneously With Plaintiffs.

The Court should dismiss Plaintiffs' Section 20A claim against Baker Hughes for the additional and independent reason that none of the Plaintiffs traded "contemporaneously" with Baker Hughes and so none have standing under Section 20A.  Section 20A is intended to "ensure[] that only private parties who have traded with someone who had an unfair advantage will be able to maintain insider trading claims."  *See Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993).  Section 20A is therefore designed to compensate shareholders who may have purchased directly from insiders with material non-public information.

Consistent with this statutory purpose, courts in the Ninth Circuit generally require that a plaintiff must have purchased shares on the *same day* or the day after the insider sales, even though there is no bright-line rule.  And "courts have consistently held that shares purchased below the defendant's sale price cannot satisfy the contemporaneity requirement, because it is impossible that

those trades occurred with defendant at an unfair advantage." *See SEB Inv. Mgmt. AB*, 485 F. Supp. 3d at 1136 (citing cases). Likewise, trades predating the alleged insider's sale cannot meet the contemporaneous requirement because it is "impossible" that a plaintiff traded with the insider for those sales. *See id*.; *Xiaojiao Lu*, 417 F. Supp. 3d at 1283 (same).

Plaintiffs' Section 20A claim must be dismissed under these principles because no Plaintiff traded contemporaneously with Baker Hughes. Plaintiffs allege that Baker Hughes or Mr. Simonelli[7] sold C3 stock on just three days: April 7, April 9, and April 22, 2021. ¶ 157. The chart below shows all of Plaintiffs' alleged purchases between April 1 and May 31, 2021. No Plaintiff purchased shares on the same date as Baker Hughes' sales. And, in every case, Plaintiffs purchased their shares *for a lower price than* the price at which Baker Hughes sold. As a result, Plaintiffs "cannot satisfy the contemporaneity requirement." *See SEB Inv. Mgmt. AB*, 485 F. Supp. 3d at 1136.

**Trades of C3 Common Stock by Plaintiffs and Baker Hughes:  April 1, 2021 to May 31, 2021[8]**

| Date | Purchasing/Selling Party | No. Shares | Price |
|------|--------------------------|------------|-------|
| April 7, 2021 | Sale by Baker Hughes (¶ 157) | 873,431 | $64.25 |
| April 9, 2021 | Sale by Baker Hughes (¶ 157) | 189,188 | $60.86 |
| April 12, 2021 | Purchase by Lead Plaintiff | 1,000 | $60.00 |
| April 20, 2021 | Purchases by Lead Plaintiff | 250 | $60.40 |
| April 22, 2021 | Sale by Baker Hughes (¶ 157) | 170,000 | $67.99 |
| April 30, 2021 | Purchase by Plaintiff David Linder | 1,000 | $64.26 |

---

[7] The Amended Complaint attributes Baker Hughes's sales to "Baker Hughes/Simonelli," but alleges no facts showing that these trades were by Mr. Simonelli and judicially noticeable documents show that they were not. *See* C3 Mot. Ex. N-O (Baker Hughes Forms 144, dated April 8, 2021 and April 16, 2021).

[8] *See* ¶ 157; ECF No. 30-2 (identifying Lead Plaintiff's trades during the Class Period); Am. Compl. Ex. A (ECF No. 70-1) (identifying Plaintiff Sharon Zavalanski's trades during the Class Period); *id.* Ex. B (ECF No. 70-2) (identifying Plaintiff David Linder's trades during the Class Period); *id.* Ex. C (ECF No. 70-3) (identifying Plaintiff Elizabeth Wensel's trades during the Class Period).

Gibson, Dunn &
Crutcher LLP

| May 4, 2021 | Purchase by Lead Plaintiff | 150 | $57.76 |
|---|---|---|---|
| May 4, 2021 | Purchase by Lead Plaintiff | 100 | $59.44 |
| May 4, 2021 | Purchase by Plaintiff David Linder | 1,000 | $58.26 |
| May 6, 2021 | Purchase by Plaintiff David Linder | 250 | $56.12 |
| May 11, 2021 | Purchase by Plaintiff David Linder | 250 | $52.76 |
| May 13, 2021 | Purchase by Plaintiff David Linder | 250 | $48.90 |
| May 13, 2021 | Purchase by Plaintiff David Linder | 150 | $48.00 |
| May 13, 2021 | Purchase by Plaintiff David Linder | 100 | $49.65 |

## V. CONCLUSION

For the foregoing reasons, all of Plaintiffs' claims against Baker Hughes should be dismissed with prejudice.

Dated: May 1, 2023

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jessica Valenzuela*
Jessica Valenzuela

*Attorneys for Defendant Baker Hughes Company*

Gibson, Dunn &
Crutcher LLP