Harry A. Olivar, Jr. (Cal. Bar No. 143089)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
harryolivar@quinnemanuel.com

Michael B. Carlinsky (admitted *pro hac vice*)
David Myre (Cal. Bar No. 304600)
Jesse Bernstein (admitted *pro hac vice*)
Jacob J. Waldman (admitted *pro hac vice*)
Leigha Empson (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Ave., 22nd Floor
New York, NY 10010
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
davidmyre@quinnemanuel.com
jessebernstein@quinnemanuel.com
jacobwaldman@quinnemanuel.com
leighaempson@quinnemanuel.com

*Attorneys for the C3 Defendants*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| THE RECKSTIN FAMILY TRUST,<br><br>             Plaintiff,<br><br>    vs.<br><br>C3.AI, INC., et al.,<br><br>             Defendants. | Case No. 4:22-cv-01413-HSG<br><br>**C3 DEFENDANTS' REPLY IN SUPPORT OF THEIR REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR MOTION TO DISMISS; FURTHER REQUEST FOR JUDICIAL NOTICE AS TO EXHIBITS S AND T**<br><br>Judge:  Hon. Haywood S. Gilliam, Jr.<br>Courtroom:  2, 4th Floor<br>Hearing Date:  November 2, 2023<br>Hearing Time:  2:00 p.m. |

Defendants C3.ai, Inc. ("C3" or the "Company"), and Thomas M. Siebel, Edward Y. Abbo, David Barter, and Lorenzo Simonelli (the "Individual Defendants" and together with C3, the "C3 Defendants") respectfully submit this reply in support of their Request for Judicial Notice (ECF No. 105-2, "C3 RJN") of Exhibits A through R cited in the C3 Defendants' Motion to Dismiss (ECF No. 105, "Mot."). The C3 Defendants further request that the Court take judicial notice of two additional exhibits, Exhibits S and T, submitted in connection with the C3 Defendants' concurrently filed Reply in support of their Motion to Dismiss. Exhibits A through R were attached to the May 1, 2023 Declaration of Harry A. Olivar, Jr (ECF No. 106); and Exhibits S and T are attached to the August 23, 2023 Supplemental Declaration of Harry A. Olivar, Jr.

As previously demonstrated in the C3 Defendants' initial Request for Judicial Notice, the Court may properly consider on a motion to dismiss (1) "materials incorporated by reference in the complaint," and (2) "judicially noticed matters." *Curry v. Yelp Inc.*, 875 F.3d 1219, 1224 (9th Cir. 2017); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009).

As detailed below, Exhibits A through T have either been incorporated by reference into Plaintiffs' Amended Complaint (ECF No. 71, the "Complaint") or are otherwise proper subjects of judicial notice under Federal Rule of Evidence 201, and their contents are not subject to dispute. Plaintiffs' Opposition (ECF No. 119 at 51-55, "Opp.") does not set forth any valid reason for the Court not to consider any of the C3 Defendants' exhibits in the context of the C3 Defendants' Motion to Dismiss.

***IPO Documents and Annual and Quarterly SEC Filings:*** In their Request for Judicial Notice, the C3 Defendants asked the Court to consider the contents of Exhibits A through H (C3's IPO materials, Forms 10-K, and Forms 8-K). The Court may take judicial notice of these documents filed with the SEC. C3 RJN at 3; *see, e.g.*, *Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, 2016 WL 7475555, at *1 n.1 (N.D. Cal. Dec. 29, 2016) (taking judicial notice of SEC filings); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (judicial notice of SEC filings is "proper"). Further, certain of these documents (Exhibits B through D) were incorporated by reference in the Complaint and may be considered for that reason as well. C3 RJN at 1-2; *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

None of Plaintiffs' arguments opposing judicial notice of these SEC filings is persuasive:

*First*, Plaintiffs object to judicial notice of the risk disclosures in C3's IPO materials, claiming the content of those documents cannot rebut Plaintiffs' often incorrect or incomplete allegations regarding those same risk disclosures. Opp. 52-53. But Plaintiffs ignore established law that a party may use documents incorporated by reference, or subject to judicial notice, to establish what information was available to investors—including what risk disclosures were made. *See Smith v. NetApp, Inc.*, 2021 WL 1233354, at *4 (N.D. Cal. Feb. 1, 2021) (considering risk disclosures where "Plaintiff disputes the adequacy of the risk disclosures, but not their authenticity or the fact that they were made."). This is precisely what the C3 Defendants do: point to the actual risk disclosures to show what warnings the Company provided to investors. *E.g.*, Mot. 6-7. Exhibits B and C should thus be considered for the purpose of demonstrating the disclosures C3 actually made to the market.

*Second*, Plaintiffs object to the C3 Defendants' use of (i) the Registration Statement (Ex. C) and (ii) the 2022 Form 10-K (Ex. E) to demonstrate that C3 received income attributable to deals brought in by Baker Hughes before April 30, 2020. Opp. 52-53 (citing *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1003 (9th Cir. 2018)). As to the Registration Statement (Ex. C), Plaintiffs do not dispute that it is incorporated into their Complaint, nor do they claim that the revenue, income, or other financial figures are false. And in *Khoja*, the Ninth Circuit declined to consider the document at issue for its truth because "there [was] a reasonable dispute as to what" the document established. 899 F.3d at 1000-01. That is not the case here. As discussed in the Motion, Plaintiffs' threadbare allegations about FE-1's three-year-old hearsay do not create any such dispute, nor is the Registration Statement's revenue reporting subject to differing interpretations. And, critically, "[w]hen a general conclusion in a complaint contradicts specific facts retold in a document attached to the complaint, incorporated by reference in the complaint, or subject to judicial notice, those specific facts are controlling." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023). The Court should therefore consider the uncontested financial reporting in the Registration Statement, rather than an unnamed former employee who thought they recalled hearing something. *See Khoja*, 899 F.3d at 1003 ("[I]t is improper to assume the truth of

an incorporated document if such assumptions only serve to dispute facts stated in a *well-pleaded* complaint.") (emphasis added); *see also* Mot. 13.

Additionally, post-*Khoja* authority has routinely held that a court "is not required to 'accept as true allegations that contradict matters properly subject to judicial notice.'" *Muertos Roasters, LLC v. Schneider*, 2022 WL 3908432, at *2 (E.D. Cal. 2022) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)); *see also Fisher v. Nissel*, 2022 WL 16961479, at *4 (C.D. Cal. 2022).

The Court may also take judicial notice of the 2022 Form 10-K (Ex. E), even though it is not incorporated by reference into the Complaint. *See, e.g.*, *Metzler*, 540 F.3d at 1064 n.7. Plaintiffs do not claim that the revenue figures reported in this SEC filing are inaccurate, and those specific figures may be considered and compared to Plaintiffs' more general allegations regarding deals brought in by Baker Hughes. *See In re Finjan*, 58 F.4th at 1052 (specific facts in a document subject to judicial notice control over general allegations in a complaint). Plaintiffs further argue that the 2022 Form 10-K is irrelevant because it was created after the Class Period. Opp. 55. But the 2022 Form 10-K is an SEC filing (that Plaintiffs nowhere allege is false) that reflects revenue earned during the Class Period from deals brought in by Baker Hughes; it makes clear that Plaintiffs' threadbare assertions concerning the Registration Statement, based on unreliable hearsay from a thinly drawn confidential witness, are insufficient. *See Muertos Roasters*, 2022 WL 3908432, at *2 (content of documents subject to judicial notice may be considered where they demonstrate the inaccuracy of allegations).

*Third*, Plaintiffs object to consideration of C3's Forms 8-K (Exs. A, F-H) and the 2021 Form 10-K (Ex. D) and the revenue numbers reported therein. Opp. 52-55. In opposing judicial notice, Plaintiffs assert that these documents cannot be used to rebut Plaintiffs' allegations "about Defendants' improper revenue recognition or the effect of the Joint Venture on C3's revenues." Opp. 54. But Plaintiffs *make no allegations* about improper accounting or revenue recognition at C3. Plaintiffs' only allegation regarding misstated revenue identifies a single statement in which C3 acknowledged generally that the Company recognized revenue from deals brought in by Baker Hughes. Plaintiffs have never claimed that the actual revenue numbers in C3's Forms 8-K or 2021

Form 10-K were incorrect in any way.

Defendants requested that the Court consider the Forms 8-K and the 2021 Form 10-K only to demonstrate what information was available to the market regarding C3's revenue—and not for the truth of the statements themselves. Specifically, Defendants argue that any information about the specific structure of internal or external sales teams would not have been material to investors given the total mix of information in the market and in the context of the investors receiving the actual revenue numbers that no one contends were false. *See., e.g.*, Mot. 19. This is a proper purpose justifying judicial notice of these quarterly reports and the 2021 Form 10-K. *See, e.g.*, *In re Century Aluminum Co. Sec. Litig.*, 2011 WL 830174, at *9 (N.D. Cal. Mar. 3, 2011) (courts routinely take judicial notice of documents to demonstrate what information was publicly available to the market).[1]

***SEC Filings Demonstrating Stock Sales and Ownership:*** The C3 Defendants previously requested that the Court consider certain documents filed with the SEC for the purpose of evaluating Defendants' stock holdings and sales as relevant to the scienter analysis. C3 RJN at 2-3. Specifically, the C3 Defendants requested that the Court take judicial notice of Exhibits I and J (C3 Proxy Statements), K, L, and M (Baker Hughes' Forms 4), and N and O (Baker Hughes' Forms 144). *Id.* The C3 Defendants also noted that Exhibits K, L, and M were incorporated by reference into the Complaint because the Complaint relies heavily on the stock sales reflected therein. *Id.*

Plaintiffs object to the Court considering Forms 4 and Forms 144 filed by Baker Hughes that show stock sales by Baker Hughes during the Class Period. Opp. 53-54. Defendants cite these documents to show that Plaintiffs' allegations that Defendant Simonelli sold stock are wrong: the sales were, in fact, executed by Baker Hughes Holdings LLC. Mot. 30. Further, as established in the C3 Defendants' Request, courts regularly take judicial notice of Forms 4 and Forms 144 to evaluate scienter allegations. *See, e.g.*, *Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at *4 (N.D. Cal. Nov. 16, 2020) (considering Forms 4 for the purpose of evaluating stock sales and scienter allegations even where Forms 4 are not explicitly cited in complaint); *In re Solarcity Corp.*,

---

[1] Plaintiffs assert that the Forms 8-K are "subject to differing interpretations" (Opp. 54) but do not attempt to explain how the revenue numbers reflected therein are, or may be, subject to differing interpretations.

274 F. Supp. 3d 972, 988 (N.D. Cal. 2017) (judicial notice of Form 4 and proxy statements for the purpose of evaluating stock holdings was proper because they "are relevant for the purpose of evaluating scienter").

Plaintiffs assert that consideration of the Forms 4 and 144 is improper also because the Forms are not incorporated into the Complaint. In fact, the Complaint repeatedly references specific stock sales that were reported to the SEC on the Forms 4 and 144. *E.g.*, *id.* ¶¶ 157-69, 185-88, 209-210, 216, 223. Even without express reference, they "necessarily form the basis for Plaintiffs' allegations." *See Hampton*, 2020 WL 6710096, at *4 ("While the SAC does not reference the Form 4's specifically . . . they are the only public source for the allegations concerning the sale dates, number of shares sold, and price per share, all of which come directly from those Form 4s."). These Forms are likewise subject to judicial notice because they are also SEC filings, as discussed in the previous section. *In re Solarcity Corp.*, 274 F. Supp. 3d at 988 ("[C]ourts in this district have taken judicial notice of SEC Form 4 and proxy statements, even when those documents were not referenced in the pleadings in order to prove that stock sales were made or were not made."). For that reason, the Court may also take judicial notice of Exhibits I and J, which are C3's Proxy Statements from 2021 and 2022 respectively, to consider Defendants' stock holdings reflected in those filings.[2] *Id.* Regardless, Plaintiffs are not entitled to make allegations that are demonstrably false and then prevent consideration of judicially noticeable evidence that proves those allegations are false.

***Analyst Reports:*** The C3 Defendants' Request asked the Court to consider the content of the analyst reports cited in the Complaint (Exs. P, Q, R), both because the Complaint relies on them, and because they are separately proper subjects of judicial notice. C3 RJN at 3-4. Plaintiffs oppose the C3 Defendants' Request because they say Defendants use the reports "to rebut Plaintiffs' loss

---

[2] Plaintiffs object to the consideration of Exhibit J (an August 2022 Proxy Statement) as being from 10 months after the Class Period, but Plaintiffs include allegations regarding stock sales after the Class Period, which they say provide context for the Class Period sales (Opp. 32). Plaintiffs cannot have it both ways. In any dvent, Defendants cite the August 2022 Proxy Statement only to demonstrate that the relatively stable holdings of the Individual Defendants continued throughout the Class Period and beyond.

causation arguments" and because they are "subject to differing interpretations." Opp. at 53. But Plaintiffs do not and cannot dispute the well-established law that analyst reports may be considered to show what information was available to the market, which is the central issue in a loss causation analysis. *See, e.g.*, *In re Century Aluminum*, 2011 WL 830174, at *9 ("[C]ourts routinely take judicial notice of analyst reports . . . to determine what may or may not have been disclosed to the public."); *Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568, at *4 (N.D. Cal. June 19, 2020) (similar). That is the very purpose for which the C3 Defendants use the analyst reports here. Mot. at 31-32 (identifying other negative information available to the market at the time of the alleged stock declines). The analyst reports cited in the Complaint can be considered to determine what other information was available to the market and thus whether there may have been other causes for the relevant stock declines. *See Metzler*, 540 F.3d at 1063, 1065 (no loss causation alleged where earnings miss was "more plausible" cause for stock drop); *In re Nvidia Corp. Sec. Litig.*, 2010 WL 4117561, at *12 (N.D. Cal. Oct. 19, 2010) (similar).

***Additional Exhibits S and T:*** Defendants request that the Court take judicial notice of Exhibits S and T to the Supplemental Declaration of Harry A. Olivar, Jr. filed concurrently with this submission and the C3 Defendants' Reply in Support of the Motion to Dismiss. Exhibits S and T are further excerpts of the 2021 Form 10-K and 2022 Form 10-K reflected in Exhibits D and E to the C3 Defendants' Motion. These Exhibits are cited by the C3 Defendants to demonstrate the risk disclosures available to the market after the Registration Statement. For the same reasons explained above (*see supra* at 2), the Court may take judicial notice[3] of these SEC filings to consider the risk disclosures available to the market. *See Smith*, 2021 WL 1233354, at *4; *see also Metzler*, 540 F.3d at 1064 n.7.

*   *   *   *   *

For the foregoing reasons, the C3 Defendants respectfully request that their request for judicial notice of Exhibits A through T be granted. The below chart summarizes the reasons judicial

---

[3] Exhibit S (C3's 2021 Form 10-K) is also incorporated by reference in the Complaint. *See* ECF No. 71 at ¶¶ 140-41, 204; *Marder*, 450 F.3d at 448 (courts may consider documents incorporated by reference).

notice should be granted for each exhibit.

| Ex. | Document | Basis for Judicial Notice |
|---|---|---|
| A | C3 December 1, 2021 Form 8-K | Judicial Notice of SEC Filing |
| B | C3 December 8, 2020 Prospectus | Incorporated by Reference (*e.g.*, Compl. ¶¶ 71, 74-78); and Judicial Notice of SEC Filing |
| C | C3 December 7, 2020 Registration Statement | Incorporated by Reference (*e.g.*, Compl. ¶¶ 1, 2, 74, 75, 77); and Judicial Notice of SEC Filing |
| D | C3 June 25, 2021 Form 10-K | Incorporated by Reference (Compl. ¶¶ 140-41, 204); and Judicial Notice of SEC Filing |
| E | C3 June 22, 2022 Form 10-K (excerpts) | Judicial Notice of SEC Filing |
| F | C3 March 1, 2021 Form 8-K (excerpts) | Judicial Notice of SEC Filing |
| G | C3 June 2, 2021 Form 8-K | Judicial Notice of SEC Filing |
| H | C3 September 1, 2021 Form 8-K | Judicial Notice of SEC Filing |
| I | August 20, 2021 Proxy | Judicial Notice of SEC Filing |
| J | August 24, 2022 Proxy | Judicial Notice of SEC Filing |
| K | Baker Hughes April 8, 2021 Form 4 | Incorporated by Reference (*e.g.*, Compl. ¶ 157); and Judicial Notice of SEC Filing |
| L | Baker Hughes April 9, 2021 Form 4 | Incorporated by Reference (*e.g.*, Compl. ¶ 157); and Judicial Notice of SEC Filing |
| M | Baker Hughes April 23, 2021 Form 4 | Incorporated by Reference (*e.g.*, Compl. ¶ 157); and Judicial Notice of SEC Filing |
| N | Baker Hughes April 8, 2021 Form 144 | Judicial Notice of SEC Filing |
| O | Baker Hughes April 16, 2021 Form 144 | Judicial Notice of SEC Filing |
| P | December 2, 2021 Bank of America Analyst Report | Incorporated by Reference (Compl. ¶ 196); Judicial Notice of Analyst Report |
| Q | December 2, 2021 Deutsche Bank Analyst Report | Incorporated by Reference (Compl. ¶ 197); Judicial Notice of Analyst Report |
| R | December 2, 2021 J.P. Morgan Analyst Report | Incorporated by Reference (Compl. ¶ 198); Judicial Notice of Analyst Report |
| S | C3 June 25, 2021 Form 10-K (excerpts) | Incorporated by Reference (Compl. ¶¶ 140-41, 204); and Judicial Notice of SEC Filing |
| T | C3 June 22, 2022 Form 10-K (excerpts) | Judicial Notice of SEC Filing |

DATED:  August 23, 2023

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

*/s/ Harry A. Olivar, Jr.*
Harry A. Olivar, Jr. (Cal. Bar No. 143089)
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
harryolivar@quinnemanuel.com

Michael B. Carlinsky (admitted *pro hac vice*)
David Myre (Cal. Bar No. 304600)
Jesse Bernstein (admitted *pro hac vice*)
Jacob J. Waldman (admitted *pro hac vice*)
Leigha Empson (admitted *pro hac vice*)
51 Madison Ave., 22nd Floor
New York, NY 10010
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
davidmyre@quinnemanuel.com
jessebernstein@quinnemanuel.com
jacobwaldman@quinnemanuel.com
leighaempson@quinnemanuel.com

*Attorneys for the C3 Defendants*