GIBSON, DUNN & CRUTCHER LLP
JESSICA VALENZUELA, SBN 220934
    JValenzuela@gibsondunn.com
310 University Avenue
Palo Alto, California  94301
Telephone:    650.849.5300
Facsimile:    650.849.5333

GEORGE B. ADAMS III, SBN 321904
    GAdams@gibsondunn.com
555 Mission Street Suite 3000
San Francisco, CA 94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306

*Attorneys for Defendant*
*Baker Hughes Company*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE RECKSTIN FAMILY TRUST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>C3.AI, INC., et al.<br><br>Defendants. | CASE NO. 4:22-cv-01413-HSG<br><br>**BAKER HUGHES'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS WITH PREJUDICE AND JOINDER IN C3 DEFENDANTS' REPLY**<br><br>**Hearing:**<br>Date:        November 2, 2023<br>Time:        2:00 PM<br>Place:       Courtroom 2, 4th Floor<br><br>Judge:       Hon. Haywood S. Gilliam, Jr.<br>Action Filed:  March 4, 2022 |

Gibson, Dunn &
Crutcher LLP

BAKER HUGHES'S REPLY ISO MOTION TO DISMISS WITH PREJUDICE
CASE NO. 4:22-CV-01413-HSG

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ..................................................................................................................... 2

    A.    Plaintiffs' Claims Against Baker Hughes Under Section 15 Should Be Dismissed With Prejudice. ............................................................................... 2

    B.    Plaintiffs' Remaining Control Person Claim Under Section 20(a) Also Fails As a Matter of Law. ............................................................................................ 2

        1.    Plaintiffs Fail To Plead A Primary Violation By C3. ..................................... 3

        2.    Plaintiffs Fail To Plead Any Facts That Baker Hughes Controlled C3. ........... 3

    C.    Plaintiffs Fail To State a Claim Under Section 20A Against Baker Hughes. ............... 6

        1.    Plaintiffs Fail To Plead A Predicate Violation By Baker Hughes. ................... 6

        2.    Plaintiffs Also Fail to Allege Scienter. ........................................................ 7

        3.    Plaintiffs Fail To Allege Any Facts That Baker Hughes Traded C3 Stock While in Possession of Material Nonpublic Information ........................ 9

        4.    Plaintiffs Fail to Allege That Baker Hughes Traded Contemporaneously With Plaintiffs. ........................................................ 10

III. CONCLUSION ................................................................................................................ 13

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re American Apparel, Inc. Shareholder Litigation*,
2013 WL 10914316 (C.D. Cal. Aug. 8, 2013).............................................................................5

*Bao v. Solarcity Corp.*,
2016 WL 54133 (N.D. Cal. Jan. 5, 2016) .............................................................................1, 3, 4, 6

*Batwin v. Occam Networks, Inc.*,
2008 WL 2676364 (C.D. Cal. July 1, 2008) .............................................................................6

*Brodsky v. Yahoo! Inc.*,
592 F. Supp. 2d 1192 (N.D. Cal. 2008) .............................................................................8

*Buban v. O'Brien*,
1994 WL 324093 (N.D. Cal. June 22, 1994) .............................................................................11, 12

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) .............................................................................9

*Dexia Holdings, Inc. v. Countrywide Financial Corp.*,
2012 WL 1798997 (C.D. Cal. Feb. 17, 2012).............................................................................2

*In re Facebook, Inc. Sec. Litig.*,
405 F. Supp. 3d 809 (N.D. Cal. Sept. 25, 2019) .............................................................................9

*Ferreira v. Funko Inc.*,
2021 WL 8820650 (C.D. Cal. Oct. 22, 2021).............................................................................7

*Glazer Capital Management, L.P. v. Forescount Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023).............................................................................7

*Lamartina v. VMware, Inc.*,
2023 WL 2763541 (N.D. Cal. Mar. 31, 2023).............................................................................12

*McGovney v. Aerohive Networks, Inc.*,
367 F. Supp. 3d 1038 (N.D. Cal. 2019) .............................................................................10

*Metzler Invest. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008).............................................................................9

*In re Nektar Therapeutics Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022).............................................................................10

*In re Netflix, Inc. Sec. Litig.*,
964 F. Supp. 2d 1188 (N.D. Cal. 2013) .............................................................................6, 7

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993).............................................................................11

BAKER HUGHES'S REPLY ISO MOTION TO DISMISS WITH PREJUDICE
CASE NO. 4:22-CV-01413-HSG

Gibson, Dunn & Crutcher LLP

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014)............................................................................................................7

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
    485 F. Supp. 3d 1113 (N.D. Cal. 2020) ...............................................................................2, 11, 12

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
    2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ...............................................................................3

*In re UTStarcom, Inc. Securities. Litigation*,
    617 F. Supp. 2d 964 (N.D. Cal. 2009) ...........................................................................................5

**STATUTES**

15 U.S.C. § 78u-4(b)(2)(A)................................................................................................................7, 11

Gibson, Dunn &
Crutcher LLP

## I. INTRODUCTION

Plaintiffs' opposition makes one thing clear:  Plaintiffs' ill-conceived claims against Baker Hughes are an afterthought.  Out of their fifty-five page Opposition, Plaintiffs' dedicate little more than three pages to their claims against Baker Hughes.  And those arguments rest on conclusory allegations and strained speculation that Baker Hughes—a minority investor in C3 with an arm's length business relationship—somehow "controlled" C3 and its executives and is secondarily liable for any purported fraud on C3's part.  Plaintiffs' claims against Baker Hughes are all meritless for the reasons set out in C3's briefing and in Baker Hughes's opening memorandum (BH Mem.), and fail as a matter of law.

*First*, Plaintiffs now withdraw their claim against Baker Hughes under Section 15 of the Securities Act of 1933 ("Securities Act")—the only Securities Act claim asserted against Baker Hughes.  Opp. at 47 n.16.  This claim is time barred on the face of the Amended Complaint, cannot possibly be revived, and should be dismissed with prejudice.  As shown below, Plaintiffs' remaining claims against Baker Hughes fare no better than the Section 15 claim that they have abandoned and should likewise be dismissed.

*Second*, Plaintiffs do not come close to pleading a control-person claim under Section 20(a) against Baker Hughes.  Baker Hughes' status as a minority shareholder with a single representative on C3's board (Mr. Simonelli) does not establish that Baker Hughes was involved in C3's "day-to-day affairs" or had "specific control over the preparation and release of the allegedly false and misleading statements" by C3 and its executives.  *See Bao v. Solarcity Corp*., 2016 WL 54133, at *9 (N.D. Cal. Jan. 5, 2016).  Plaintiffs' response that Mr. Simonelli signed C3's Registration Statement and 2021 10-K—just as all of C3's other nine directors did—misses the point.  Without allegations of actual control of C3 by Baker Hughes, the fact that its CEO was on the C3 board does not make Baker Hughes a control person.  Moreover, the Complaint pleads no facts showing that statements in either C3's Registration Statement or its 2021 10-K were actually false or misleading.  With respect to the allegedly unscripted false statements made by Mr. Siebel in response to analyst questions and interviews, Plaintiffs do not plead that Baker Hughes or Mr. Simonelli were present during or even aware of such statements—much less that either could have controlled Mr. Siebel at the time he made them.

Gibson, Dunn & Crutcher LLP

BAKER HUGHES'S REPLY ISO MOTION TO DISMISS WITH PREJUDICE
CASE NO. 4:22-CV-01413-HSG

*Third*, Plaintiffs' halfhearted attempt to defend their Section 20A claim against Baker Hughes for insider trading also fails. Plaintiffs cannot satisfy any element of Section 20A. Plaintiffs admit that they do not plead a predicate insider trading violation **by Baker Hughes**. Opp. at 43. Plaintiffs admit Baker Hughes lacked knowledge of Mr. Siebel's allegedly misleading statements about the Baker Hughes' salesforce at the time of its alleged insider sales (*id.*)—and so could not have possessed the requisite scienter when making these trades. BH Mem. at 13-14. Plaintiffs fail to allege with any specificity how Baker Hughes would know that information **about its own salesforce** would have been material to **C3's investors**. *Id.* at 11-13. And, there can be no dispute that Plaintiffs cannot satisfy Section 20A's contemporaneity requirement because, based on the facts alleged in the Amended Complaint, it is impossible that any Plaintiff traded with Baker Hughes. *Id.* at 14-15; *see also SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1136 (N.D. Cal. 2020).

All claims against Baker Hughes should be dismissed in their entirety and with prejudice.

## II.  ARGUMENT

**A.      Plaintiffs' Claims Against Baker Hughes Under Section 15 Should Be Dismissed With Prejudice.**

Belatedly recognizing that it is barred by the statute of limitations, Plaintiffs "withdraw . . . their Section 15 claim against Baker Hughes." Opp. at 47 n.16. Plaintiffs' Section 15 claim against Baker Hughes is untimely on its face. BH Mem. at 7-8; *see also Dexia Holdings, Inc. v. Countrywide Financial Corp.*, 2012 WL 1798997, at *3 (C.D. Cal. Feb. 17, 2012) (dismissing Section 15 claim against defendant not named in earlier action as time barred). Plaintiffs do not and cannot identify any amendment that could give rise to a valid Section 15 claim against Baker Hughes. Plaintiffs' Section 15 claim therefore should be dismissed with prejudice—just as Plaintiffs agreed to dismiss their untimely Section 11 claim against the Underwriter Defendants with prejudice. *See* ECF No. 118. There is no basis for a different outcome.

**B.      Plaintiffs' Remaining Control Person Claim Under Section 20(a) Also Fails As a Matter of Law.**

Plaintiffs do not dispute that, to state a claim against Baker Hughes under Section 20(a) of the Exchange Act, they must plead (1) an underlying violation of the Exchange Act by C3 or the individual

Gibson, Dunn &
Crutcher LLP

BAKER HUGHES'S REPLY ISO MOTION TO DISMISS WITH PREJUDICE
CASE NO. 4:22-CV-01413-HSG

defendants, and (2) that Baker Hughes—a minority investor that has a business relationship with C3—somehow controlled C3 and its executives and is therefore liable for their purportedly false or misleading statements. *See* BH Mem. at 7; Opp. at 45-47. Plaintiffs fail to show that the Amended Complaint sufficiently alleges either element, so their Section 20(a) claim should be dismissed.

1.     Plaintiffs Fail To Plead A Primary Violation By C3.

For all the reasons set forth in the C3 Motion and Reply, Plaintiffs fail to plead that any Defendant violated Section 10(b) of the Exchange Act (Count III).[1] *See* C3 Mot. Argument §§ I-II; C3 Reply § II. As a result, Plaintiffs' secondary control-person claim under Section 20(a) against Baker Hughes necessarily fails as a matter of law for lack of a primary violation and should be dismissed for that reason alone. *See* BH Mem. at 8.

2.     Plaintiffs Fail To Plead Any Facts That Baker Hughes Controlled C3.

Even if Plaintiffs could establish a primary violation under Section 10(b) by C3 or the Individual Defendants (they cannot), Plaintiffs' Section 20(a) claim would *still* fail because the Amended Complaint "does not provide even one specific act of control" exercised by Baker Hughes over C3. *See In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000) (dismissing Section 20(a) claim based on inferences and "circumstantial evidence of control"). To be clear, Plaintiffs are attempting to hold Baker Hughes—C3's commercial partner—liable for allegedly fraudulent statements that Baker Hughes did not make, was not present when they were made, and is not even alleged to have known about. The Amended Complaint fails to plead that Baker Hughes had any control over the challenged statements.

To plead a claim under Section 20(a), Plaintiffs must identify specific facts showing that Baker Hughes was involved in C3's "day-to-day affairs" or that it had "specific control over the preparation and release of the allegedly false and misleading statements." *See Solarcity Corp.*, 2016 WL 54133, at *9. As explained in Baker Hughes' Memorandum, allegations that Baker Hughes owned 14.7% of C3 at the time of the IPO—dropping to 11.65% after the IPO—and designated its CEO (Mr. Simonelli)

---

[1] As explained in Baker Hughes' Memorandum, the Amended Complaint likewise fails to plead that any Defendant violated Section 11 of the Securities Act (Count I). But because Plaintiffs withdraw their Section 15 claim, Baker Hughes limits this section and the following sections to Plaintiffs' Exchange Act claims.

Gibson, Dunn &
Crutcher LLP

to serve as one of C3's ten directors, fall far short of the allegations the *Solarcity* court found **insufficient** to plead control and fail as a matter of law. *See* BH Mem. at 8-10.

In an attempt to distinguish *Solarcity*, Plaintiffs highlight that, in that case, Elon Musk was not on the audit committee and only signed "certain of SolarCity's financial statements." Opp. at 45-46. Neither distinction withstands scrutiny. First, *Solarcity* involved alleged accounting errors and other financial statement misstatements. So the fact that Mr. Musk was not on the Audit Committee established that he did not have control over the challenged statements there. Here, Plaintiffs do not allege an accounting restatement or other GAAP violation, so Mr. Simonelli's membership on the Audit Committee has no bearing on whether he controlled the alleged false statements.[2]

Nor do Plaintiffs even allege that any of the statements made in C3's Registration Statement or its 2021 annual report—the only statements Mr. Simonelli allegedly signed as a C3 director—were actually false or misleading. *See* BH Mem. at 12; C3 Mot. at 11; C3 Reply § I.A. Instead, the vast majority of allegedly false and misleading statements were made by Mr. Siebel in unscripted comments. ¶¶ 124-53. The Amended Complaint alleges nowhere that Baker Hughes or Mr. Simonelli was even aware of these statements, much less that they were present when they were made, or that they had any involvement in preparing or planning for those statements.

Second, Mr. Musk's alleged direct involvement in *Solarcity* went far beyond Mr. Simonelli's— much less Baker Hughes' alleged indirect involvement through Mr. Simonelli—and *even then* it was not enough to establish control. Mr. Musk personally owned roughly 30% of Solarcity's outstanding shares, was chairman of the company's board, "a member of [the company's] executive management team," cousins with Solarcity's CEO, and purportedly had the ability to direct the CEO's actions by "instruct[ing the CEO] to swerve into a pothole" to "avoid invisible walls." *Solarcity Corp.*, 2016 WL 54133, at *9.

---

[2] Though Plaintiffs purport to challenge statements by C3 relating to its recognition of revenue from Baker Hughes as purportedly false, Plaintiffs do not challenge C3's underlying financial figures which show that deals brought in by Baker Hughes generated several million in revenues—contradicting the speculative and unreliable hearsay that Plaintiffs' attribute to FE-1. *See* C3 Mot. Argument §§ I.A.3; C3 Reply § I.A.3.

Gibson, Dunn & Crutcher LLP

Unable to distinguish *Solarcity*, Plaintiffs cite two earlier decisions they contend support their Section 20(a) claim against Baker Hughes: *In re UTStarcom, Inc. Securities. Litigation*, 617 F. Supp. 2d 964 (N.D. Cal. 2009) and *In re American Apparel, Inc. Shareholder Litigation*, 2013 WL 10914316 (C.D. Cal. Aug. 8, 2013). Opp. at 46. Both decisions are distinguishable and neither supports Plaintiffs.

Plaintiffs argue that under *UTStarcom*, control is established where a minority shareholder's board designee signs a document containing allegedly false statements. *UTStarcom* established no such rule. There, the shareholder at issue was Softbank—UTStarcom's *largest shareholder* and its largest customer. Softbank's CEO was the founder of UTStarcom and Chairman of UTStarcom's board of director for nearly a decade. And UTStarcom's public filings admitted that Softbank and its related entities "have significant influence over our management and affairs." *See In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d at 979. These allegations go far beyond what Plaintiffs have pled here.

Plaintiffs' reliance on *American Apparel* is likewise unavailing. There, the court held that Lion Capital—one of American Apparel's lenders who had appointed two designees on the company's board—had control over some of the allegedly false and misleading statements. Not only did the two designee directors sign the reports that contained the fraudulent statements, but also the company's CEO and founder "acknowledged [the investor's] influence" and that, through its two board members, the investor "was going to be involved in 'management decisions as far as strategic issues.'" *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *36-37. Plaintiffs here have alleged no such admissions that Baker Hughes could influence or control C3 management.

Although the court in *American Apparel* endorsed the "rationale" that "a director's signature on a misleading financial report is sufficient to demonstrate control ***over the misrepresentation***," nothing in this decision suggests that a director who signs certain company statements has control over other statements he did not sign. *Id.* at *36. This limitation forecloses Plaintiffs' claim against Baker Hughes because, as noted above, Plaintiffs do not allege that any of the statements made in C3's Registration Statement or its 2021 annual report were actually false or misleading and the Amended Complaint alleges no facts whatsoever that Baker Hughes was aware of any of the alleged misstatements made by Mr. Siebel (let alone that it was involved in making those statements), nor does it allege that Baker Hughes was aware of the statement by Mr. Abbo (¶ 130) and in C3's 10-Q filed on

Gibson, Dunn &
Crutcher LLP

September 1, 2021, which was signed only by Defendants Siebel and Barter (¶ 144).  In fact, Plaintiffs apparently acknowledge that the Amended Complaint "fails to allege Baker Hughes' knowledge of Siebel's [allegedly] false statements."  Opp. at 43; *see also* BH Mem. at 12.  It goes without saying that Baker Hughes could not have had "specific control over the preparation and release" of statements that it was not even aware of.  *See Solarcity Corp.*, 2016 WL 54133, at \*9.

Because Plaintiffs do not and cannot allege that Baker Hughes controlled C3 or controlled any allegedly false or misleading statement by C3 or its executives, their Section 20(a) claim should be dismissed with prejudice.

**C.      Plaintiffs Fail To State a Claim Under Section 20A Against Baker Hughes.**

Plaintiffs attempt to maintain a Section 20A insider trading claim against Baker Hughes because it sold a small portion of its C3 stock in the months after the IPO—eight months before the end of the Class Period, and before nearly half of the challenged statements were even made.  But the Amended Complaint fails to allege any basis for such a claim, as Plaintiffs' Opposition only confirms.  Plaintiffs' Section 20A claim should therefore be dismissed.

**1.      Plaintiffs Fail To Plead A Predicate Violation By Baker Hughes.**

The parties apparently agree that "there can be no insider trading liability under Section 20A without an underlying" act of insider trading in violation of the Exchange Act.  *In re Netflix, Inc. Sec. Litig.*, 964 F. Supp. 2d 1188, 1199 (N.D. Cal. 2013); *see also* BH Mem. at 10; Opp. at 43.  And there is no dispute that the only possible predicate violation asserted against Baker Hughes in the Amended Complaint is under Section 20(a). Opp. at 43.  Plaintiffs' Section 20A claim therefore fails as a matter of law because Plaintiffs' Section 20(a) "control person" claim is based on the theory that Baker Hughes somehow "control[ed] the contents" of C3's statements and is liable for C3's alleged misstatements and omissions—not on insider trading.  BH Mem. at 11; *see also Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at \*27 (C.D. Cal. July 1, 2008) (dismissing Section 20A claim where Section 20(a) claim did not "relate[] to insider trading").  This is sufficient to resolve this claim in Baker Hughes' favor.

Plaintiffs try to distinguish *Batwin*, but their efforts fail.  Plaintiffs do not dispute that on its face, their Section 20(a) claim (Count IV) relates to the Individual Defendants' and Baker Hughes'

Gibson, Dunn & Crutcher LLP

supposed control over C3's alleged misstatements and omissions.  Opp. at 43; *see also* ¶¶ 248-54. Plaintiffs instead suggest that it is enough that the ***Individual Defendants*** named with Baker Hughes under Count IV are also alleged to have engaged in insider trading.  Opp. at 43.  That does not suffice. To plead a Section 20A claim against Baker Hughes, Plaintiff must plead a predicate act of insider trading ***by Baker Hughes***.  *See In re Netflix, Inc. Sec. Litig.*, 964 F. Supp. 2d at 1199 (dismissing Section 20A claim where plaintiff failed to allege a violation of Section 10(b) by the defendant); *see also Ferreira v. Funko Inc.*, 2021 WL 8820650, at *38 (C.D. Cal. Oct. 22, 2021) ("Without a predicate violation by these particular Defendants, Plaintiffs' Section 20A claim against them fails.").  Because Plaintiffs do not do so, Plaintiffs' Section 20A claim should be dismissed for this threshold reason.

### 2.    Plaintiffs Also Fail to Allege Scienter.

Plaintiffs' Section 20A claim fails for the additional, independent reason that Plaintiffs do not plead "a strong inference" of scienter in connection with any trades by Baker Hughes as required under the PSLRA.  15 U.S.C. § 78u-4(b)(2)(A).

"'Scienter' as used in the federal securities laws means the 'intent to mislead investors' or deliberate recklessness to 'an obvious danger of misleading investors.'"  BH Mem. at 13-14; *Glazer Capital Management, L.P. v. Forescount Techs., Inc*., 63 F.4th 747, 765 (9th Cir. 2023) (quoting *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1059 (9th Cir. 2014)).  Plaintiffs concede that the Amended Complaint does not allege any facts supporting scienter specific to Baker Hughes.  Opp. at 43. Plaintiffs instead contend that the "Complaint alleges Baker Hughes' scienter through the scienter allegations against Simonelli."  *Id*.  At the same time, Plaintiffs' Opposition asserts that "Plaintiffs can therefore impute Baker Hughes' intent on Simonelli."  Opp. at 35.  Which is it?  Plaintiffs cannot identify particularized allegations in the Amended Complaint that establish scienter as to either Baker Hughes or Simonelli, and this circular logic does not suffice.

Plaintiffs likewise concede that there are only two categories of information that investors were allegedly misled about:  (1) the supposed truth about C3's access to the Baker Hughes salesforce and (2) that C3 had allegedly "secretly reorganized its direct salesforce."  Opp. at 42.  Neither category supports a finding of scienter as to Mr. Simonelli, let alone Baker Hughes.

Gibson, Dunn & Crutcher LLP

BAKER HUGHES'S REPLY ISO MOTION TO DISMISS WITH PREJUDICE
CASE NO. 4:22-CV-01413-HSG

*First*, to the extent Plaintiffs "allege[] Baker Hughes' scienter through the scienter allegations against Simonelli," this theory fails for the straightforward reason that Plaintiffs do not identify any facts showing Mr. Simonelli had a role in Baker Hughes' challenged stock sales aside from being listed as the "reporting person" in Baker Hughes' accompanying SEC Form 4 submissions.  Opp. at 53 n.18. Specifically, the Amended Complaint alleges no facts showing that Mr. Simonelli was involved in the decision to sell C3 stock.  So Plaintiffs do not and cannot explain how Mr. Simonelli can establish Baker Hughes' scienter with respect to these sales.

*Second*, the Amended Complaint does not allege that Baker Hughes or Mr. Simonelli were aware of allegedly misleading statements related to C3's access to the Baker Hughes salesforce at the time of Baker Hughes' purported insider stock sales in April 2021.  The Amended Complaint identifies a single statement relating to Baker Hughes' salesforce that Baker Hughes was aware of *before* any Baker Hughes stock sales:  the disclosure in C3's Registration Statement that C3 and Baker Hughes were "jointly marketing and selling a range of Enterprise AI solutions to address the entire value of upstream, mid-stream, and downstream activity under the BHC3 brand to oil and gas companies globally with the active engagement of Baker Hughes, which has a 12,000-person sales organization." ¶ 75.  But as explained in more detail below and in C3's briefs, Plaintiffs do not and cannot allege that this statement was actually false or misleading.  *See infra* § II.C.3; C3 Mot. at 11; C3 Reply § I.A.[3]

By comparison, as Plaintiffs apparently acknowledge,[4] the Amended Complaint does not allege that Baker Hughes or Mr. Simonelli were even aware of Mr. Siebel and Mr. Abbo's statements concerning C3's partnership with Baker Hughes between February 24, 2021 and November 29, 2021. *See* ¶¶ 124-53; *see also* BH Mem. at 13.  Without knowledge of these allegedly misleading statements, Plaintiffs do not and cannot explain how Baker Hughes or Mr. Simonelli could have intentionally or

---

[3] *See also* BH Mem. at 12.  Though Plaintiffs allege Mr. Simonelli also signed C3's 2021 10-K (¶ 140)—along with C3's other nine directors—it was filed two months *after* Baker Hughes's alleged insider sales and cannot give rise to a Section 20A claim.  BH Mem. at 12; *see also Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1208 (N.D. Cal. 2008) (dismissing 20A claim and noting that "Plaintiffs fail to identify any specific material nonpublic information in the possession of any Defendant at the time of a specific trade").  Any argument for scienter premised on C3's 10-Q filed on September 1, 2021—which was signed only by Defendants Siebel and Barter (¶ 144)—fails for this reason too.

[4] *See* Opp. at 43 (tacitly conceding that the Amended Complaint "fails to allege Baker Hughes' knowledge of Siebel's [allegedly] false statements").

recklessly misled investors. *See Metzler Invest. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008) ("[M]anagement's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of ***specific information conveyed to management and related to the fraud***."); *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 849 (N.D. Cal. Sept. 25, 2019) (no scienter where "Plaintiffs [did] not allege that Sandberg knew about whitelisting or was provided detailed information about it"). Plaintiffs' first category therefore fails to establish scienter as to Baker Hughes.

*Second*, Plaintiffs do not allege that Baker Hughes (or Mr. Simonelli) intended to mislead investors about any reorganization of C3's direct salesforce *in July 2021* (¶ 191) when Baker Hughes sold C3 shares three months earlier in April 2021. BH Mem. at 13. Plaintiffs' Section 20A claim should thus be dismissed for failure to plead any basis for scienter—much less "a strong inference" as required under the PSLRA.[5]

3.    <u>Plaintiffs Fail To Allege Any Facts That Baker Hughes Traded C3 Stock While in Possession of Material Nonpublic Information.</u>

Baker Hughes' Memorandum explained that Plaintiffs' Section 20A claims should be dismissed because the Amended Complaint does not plead with any "specificity" what material, nonpublic information Baker Hughes purportedly had when it traded, as required by the PSLRA. BH Mem. at 11-13. In response, Plaintiffs concede that the only purportedly material information in Baker Hughes' possession when it traded was the supposed "truth about C3's access to the Baker Hughes salesforce." Opp. at 43 (internal quotation marks omitted). As a threshold matter, Plaintiffs thus concede that Baker Hughes did not have any material nonpublic information "concerning C3's true business and financial condition" (¶ 260) at the time it traded. This makes sense, as the adverse business developments that Plaintiffs allege were undisclosed—C3's reorganization of its salesforce in July and November 2021

---

[5] For the reasons set out in Baker Hughes's Memorandum, Plaintiffs' conclusory allegations that Baker Hughes's trading was "suspicious" also do not suffice, nor can Plaintiffs plausibly claim that Baker Hughes's April 22, 2021 stock sale is suspicious because Plaintiffs concede it was a non-discretionary sale under a Rule 10b5-1 plan. BH Mem. at 14. Plaintiffs' contention that 10b5-1 plans cannot be considered at the motion to dismiss stage (Opp. at 43) is wrong. *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1069 (N.D. Cal. 2012) (finding on a motion to dismiss that non-discretionary sales made under 10b5-1 trading plan are not indicative of fraud).

Gibson, Dunn & Crutcher LLP

(¶ 191) and the amendment of the Reseller Agreement in October 2021 (¶ 150)—all occurred months later.  BH Mem. at 13.

Because the only purportedly material information in Baker Hughes' possession when it traded relates to the Baker Hughes salesforce, Plaintiffs must—but do not—allege with specificity why Baker Hughes would know that information that it allegedly had *about its own salesforce* would have purportedly materially altered the "'total mix' of information" available to C3's investors about *C3's business*.  *See In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 836 (9th Cir. 2022).  To be material, an omission "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."  *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1055 (N.D. Cal. 2019).

As noted above, the Amended Complaint identifies just one statement to investors with any connection to Baker Hughes or Mr. Simonelli relating to Baker Hughes' salesforce that predates Baker Hughes' allegedly insider stock sales in April 2021:  the disclosure in C3's Registration Statement that C3 and Baker Hughes were "jointly marketing and selling a range of Enterprise AI solutions to address the entire value of upstream, mid-stream, and downstream activity under the BHC3 brand to oil and gas companies globally with the active engagement of Baker Hughes, which has a 12,000-person sales organization."  ¶ 75; BH Mem. at 12-13.  But Plaintiffs allege no facts showing that this statement was false or misleading nor do they explain what material information this statement omitted about C3's access to the Baker Hughes salesforce.  *See* C3 Mot. at 11; C3 Reply § I.A.  Plaintiffs' conclusory contention that this statement somehow created a misleading "impression" that "the full 12,000-person Baker Hughes salesforce was engaged with C3" (Opp. at 20) is contradicted by the statement itself and does not come close to Plaintiff's burden to plead "a strong inference" of scienter.  BH Mem. at 13-14; *see also In re Nektar Therapeutics*, 34 F.4th at 836 (dismissing complaint that did "not allege with specificity" why misrepresentation was material).

### 4.    Plaintiffs Fail to Allege That Baker Hughes Traded Contemporaneously With Plaintiffs.

The contemporaneity requirement of Section 20A is intended to "ensure[] that only private parties *who have traded with someone* who had an unfair advantage will be able to maintain insider

Gibson, Dunn & Crutcher LLP

trading claims." *See Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993) (emphasis added). As explained in Baker Hughes' Memorandum, trades predating the alleged insider's sale cannot meet the contemporaneity requirement because it is "impossible" that a plaintiff traded with the insider for those sales. BH Mem. at 14-16. Plaintiffs do not dispute this limitation. Opp. at 40-43. Courts likewise have held that "shares purchased below the defendant's sale price cannot satisfy the contemporaneity requirement, because it is impossible that those trades occurred with defendant at an unfair advantage." *See SEB Inv. Mgmt. AB*, 485 F. Supp. 3d at 1136 (citing cases "consistently" recognizing this limitation).

Plaintiffs do not identify any potentially contemporaneous trades where a Plaintiff purchased shares for the same or a greater price than the price at which Baker Hughes sold. Nor can they, as shown in Baker Hughes' Memorandum. BH Mem. at 15-16. Plaintiffs instead argue that their lower-priced purchases were somehow contemporaneous because they were at an "unfair advantage." Opp. at 42. But as a threshold matter, Plaintiffs acknowledge that no Plaintiff purchased shares on the same date as Baker Hughes' sales, but instead traded—at minimum—a few days apart. Opp. at 42; BH Mem. at 15. As a result, the Amended Complaint does not plead contemporaneity even if Plaintiffs' lower-priced purchases could be relevant. *See Buban v. O'Brien*, 1994 WL 324093, at *2-4 (N.D. Cal. June 22, 1994) (trades separate by three days not contemporaneous).

Regardless, Plaintiffs' self-serving conclusion that their trades were at an "unfair advantage" does not meet the strict pleading burden of the PSLRA. 15 U.S.C. § 78u-4(b)(2)(A). It also misconstrues the purpose of the contemporaneity requirement. Plaintiffs suggest that they traded with Baker Hughes "at an unfair advantage" because they were allegedly at an "informational disadvantage" when certain Plaintiffs and Baker Hughes traded in April 2021. Opp. at 42. As discussed above, Plaintiffs fail to allege that Baker Hughes actually possessed any material nonpublic information at the time of its challenged trades. But even if Plaintiffs could allege they were at some "informational disadvantage" (which they do not), Plaintiffs' argument improperly merges the contemporaneity requirement with the separate requirement that a defendant possess material nonpublic information when it traded.

The contemporaneity requirement is a distinct element of Section 20A and developed "as a proxy for the traditional requirement of contractual privity between plaintiffs and defendant." *See Buban*, 1994 WL 324093, at *3-. As the court in *Buban* explained, "[s]ince identifying the party in actual privity with the insider is virtually impossible in transactions occurring on an anonymous public market, the contemporaneousness standard was developed to give plaintiffs a more feasible avenue by which to sue insiders. . . . While an actual trade between plaintiff and defendant need not be expressly shown, harm to the plaintiff is a necessary factor. ***Such harm may be found where it appears the plaintiff might, in fact, have traded with the defendant***." *Id.* at *3 (emphasis added).

In other words, the "harm" or "unfair advantage" exists where—but only where—it is possible that the plaintiff traded with the defendant. Applying this rationale, the *Buban* court found it was "manifest that plaintiff could not have traded with defendant" where plaintiff purchased shares at a lower price than defendant's sale price because "the purchasers of defendant's shares paid $1.50 more than did plaintiff" making it "clear that plaintiff could not have traded with defendant." *Id.*; *see also SEB Inv. Mgmt. AB*, 485 F. Supp. 3d at 1136 (citing *Buban* and agreeing that "Plaintiff's 10 purchases at prices below Hogan's $367.48 sale price may not satisfy the contemporaneity requirement").[6] Applying this same logic, the fact that Plaintiffs purchased their shares for a lower price than the price at which Baker Hughes sold means they could not have traded with Baker Hughes and so "cannot satisfy the contemporaneity requirement." *See SEB Inv. Mgmt. AB*, 485 F. Supp. 3d at 1136. Plaintiffs' section 20A claim fails for this reason too and should be dismissed.

---

[6] The decision in *Lamartina v. VMware, Inc.*, 2023 WL 2763541 (N.D. Cal. Mar. 31, 2023)—the only authority that Plaintiffs cite to support their assertion that their lower priced trades could be contemporaneous—is distinguishable because the decision does not meaningfully address the meaning of "unfair advantage" in the context of the contemporaneity requirement and instead focuses on whether a four-day trading gap (that spanned a weekend with two non-trading days) was sufficient to preclude a Section 20A claim. *Id.* at *19. Moreover, unlike here, the complaint in *Lamartina* included specific allegations that defendant was trading based on inside information, including that the defendant "sold no VMware stock before the Class Period began, even though his exercisable shares vested as early as 2014—followed by 17 sales within a year during the Class Period"—which totaled $23.4 million, and that "on several occasions [he] sold shares of VMware stock at inflated prices 'just days after [ ] important operating meetings.'" *Id.* at *4, 15. The Amended Complaint alleges no similar facts and Plaintiffs' conclusory allegation that Baker Hughes' trading was "suspicious" does not suffice. *See* BH Mem. at 14.

BAKER HUGHES'S REPLY ISO MOTION TO DISMISS WITH PREJUDICE
CASE NO. 4:22-CV-01413-HSG

Gibson, Dunn & Crutcher LLP

## III. CONCLUSION

For the foregoing reasons, and because no amendment can cure all the defects, each of Plaintiffs' claims against Baker Hughes should be dismissed with prejudice.

Dated: August 23, 2023

                                    GIBSON, DUNN & CRUTCHER LLP


                                    By:   /s/ Jessica Valenzuela
                                          Jessica Valenzuela

                                    *Attorneys for Defendant Baker Hughes Company*

Gibson, Dunn &
Crutcher LLP