Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman (*pro hac vice*)
Catherine Y.N. Gannon (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
catherineg@hbsslaw.com

*Lead Counsel and Counsel for*
*Lead Plaintiff Mark Samarghandi*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE RECKSTIN FAMILY TRUST, *et al.*, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>C3.AI, INC., *et al.*,<br><br>       Defendants. | No. 4:22-cv-01413-HSG<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE [PROPOSED] THIRD AMENDED COMPLAINT**<br><br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Courtroom: 2, 4th Floor<br>Hearing Date: January 23, 2025<br>Hearing Time: 2:00 p.m. |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ........................................................................................................ 2

      A.    Plaintiffs may amend the TAC to include the Scienter Amendment. ..................... 2

      B.    The Court may also grant leave to include the Control Person
            Amendment in the proposed TAC. ................................................................. 5

      C.    The Stock Trade Ammendment, reflecting information from
            previously pled complaints and briefing materials, can also be
            included in the proposed TAC. ..................................................................... 7

III.  CONCLUSION ..................................................................................................... 8

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*In re Apollo Grp., Inc. Sec. Litig.*,
2011 WL 5101787 (D.Ariz. Oct. 27, 2011) ............................................................................. 3

*In re Charles Schwab Corp. Sec. Litig.*,
257 F.R.D. 534 (N.D. Cal. 2009) ........................................................................................... 6

*In re Connetics Corp. Sec. Litig.*,
542 F. Supp. 2d 996 (N.D. Cal. 2008) .................................................................................. 3

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987)................................................................................................. 5

*Evanston Police Pension Fund v. McKesson Corp.*,
411 F. Supp. 3d 580 (N.D. Cal. 2019) .................................................................................. 2

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000)................................................................................................. 6

*In re Immune Response Sec. Litig.*,
375 F. Supp. 2d 983 (S.D. Cal. 2005) .................................................................................. 6

*In re Intuitive Surgical Sec. Litig.*,
2017 WL 4355072 (N.D. Cal. Sept. 29, 2017) ...................................................................... 2

*Jaeger v. Zillow Grp., Inc.*,
644 F. Supp. 3d 857 (W.D. Wash. 2022)................................................................................ 7

*Johns v. Bayer Corp.*,
2010 WL 2573493 (S.D. Cal. June 24, 2010)........................................................................ 2

*Kyung Cho v. UCBH Holdings, Inc.*,
890 F. Supp. 2d 1190 (N.D. Cal. 2012) ................................................................................ 3

*Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*,
2024 WL 3708800 (D. Ariz. Aug. 7, 2024) ........................................................................... 6

*Lillis v. Apria Healthcare*,
2012 WL 4760908 (S.D. Cal. Oct. 5, 2012) ......................................................................... 2

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
2011 WL 4389689 (C.D. Cal. May 5, 2011) ......................................................................... 2

*Murphy v. Precision Castparts Corp.*,
2020 WL 4040827 (D. Or. July 17, 2020) ............................................................................ 6

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004)................................................................................ 3

*Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*,
   2023 WL 4418886 (N.D. Cal. May 24, 2023) ........................................................ 3

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*,
   2004 WL 5326262 (N.D. Cal. May 27, 2004) ........................................................ 8

*S.E.C. v. Todd*,
   642 F.3d 1207 (9th Cir. 2011)................................................................................ 6

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
   335 F.R.D. 276 (N.D. Cal. 2020)............................................................................ 8

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016)................................................................................ 5

*In re VeriFone Holdings, Inc. Sec. Litig.*,
   704 F.3d 694 (9th Cir. 2012).............................................................................. 2, 4

*Webb v. Solarcity Corp.*,
   884 F.3d 844 (9th Cir. 2018).................................................................................. 3

## I.    INTRODUCTION

Plaintiffs seek leave to make a handful of amendments, exceedingly limited in nature, and precisely refined to fill the evidentiary gaps identified by this Court in its February 22, 2024 Order. ECF No. 154. More specifically, the proposed Third Amended Class Action Complaint, ECF No. 181-2 ("TAC") would: (1) add additional factual allegations showing that Defendants either knew or should have known that C3 did not have access to Baker Hughes' full 12,000-person salesforce, TAC ¶ 174 ("Scienter Amendment"); (2) update the control person allegations to incorporate a single sentence from the Joint Venture Agreement ("JVA") (a document already judicially noticed in this case and for which Defendants are already seeking incorporation by reference),[1] TAC ¶ 34 ("Control Person Amendment"); (3) display previously pled information regarding contemporaneous trades by Plaintiffs and Defendants in an easier-to-read, chart-based format, TAC ¶ 132 ("Stock Trade Amendment"); and (4) include an updated statement-by-statement chart containing the information required by 15 U.S.C. § 78u-4(b)(1), TAC, Appendix A.

In response, Defendants do not assert bad faith on the part of Plaintiffs. Nor can Defendants point to any concrete prejudice caused by the filing of the proposed TAC. *See* Defs.' Opp'n to Mot. for Leave (ECF No. 186) ("Opp.") at 1. Additionally, discovery has not yet started and there is no history of a repeated failure to cure the complaint.[2] Moreover, Defendants concede (as they must) that it was impossible to file the proposed TAC before July 18, 2024, when plaintiffs in the *Pankow* matter unsealed their complaint. *Id.* And yet, Defendants oppose leave to amend in a not-so-subtle attempt to delay these proceedings.[3] For the reasons below, the Court should dismiss their concerns and grant Plaintiffs' motion for leave to file the TAC.

---

[1] ECF No. 154 at 7 (judicial notice); ECF No. 167-1 at 4 (incorporation by reference).

[2] Plaintiffs filed the Amended Class Action Complaint (ECF No. 71) ("FAC") as a matter of course and the Second Amended Class Action Complaint (ECF No. 158) ("SAC") after the Court granted leave to amend to fill certain evidentiary gaps. Plaintiffs seek to file the proposed TAC to include the newly revealed *Pankow* allegations, which clearly address the Court's previous direction.

[3] Defendants took more than a month to inform Plaintiffs of their intent to oppose the motion and later asked to extend their opposition briefing period to six weeks (for a motion of less than ten pages). In contrast, to mitigate any unnecessary work related to Defendants' reply briefs, Plaintiffs informed Defendants within days of their intent to seek leave to amend. ECF No. 181.

## II.   ARGUMENT

**A.     Plaintiffs may amend the TAC to include the Scienter Amendment.**

This Court previously concluded that amendment of the FAC was *not* futile and specifically directed Plaintiffs to plead additional facts supporting their scienter allegations. ECF No. 154 at 45. Plaintiffs followed the Court's direction in supplementing their scienter allegations in the SAC and then again in the proposed TAC when the *Pankow* information became publicly available. ECF No. 181 at 2-3. Nevertheless, Defendants contend that the Scienter Amendment is futile and should be excluded. Opp. at 6-7. But denial of leave to amend based solely on futility is exceedingly rare in this Circuit. *See Lillis v. Apria Healthcare*, 2012 WL 4760908, at *1 (S.D. Cal. Oct. 5, 2012) (collecting cases). And Defendants fail to justify any break from the ordinary here.

First, Defendants suggest that it is improper to rely upon allegations made in a complaint from a different case. Opp. 5-6. Defendants are wrong. Allegations reflecting information from other complaints are routinely allowed in district courts across the country. *See In re Intuitive Surgical Sec. Litig.*, 2017 WL 4355072, at *4 (N.D. Cal. Sept. 29, 2017) ("Plaintiffs also rely on public documents filed in a derivative action to establish the Board's knowledge of and involvement with … reporting issues"); *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 593 (N.D. Cal. 2019) (collecting cases). The Ninth Circuit has also expressly relied upon complaints from other cases incorporated into an operative complaint without issue. *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 707 (9th Cir. 2012).

Defendants also erroneously assert that the Scienter Amendment does not have the proper foundation. Opp. at 6-7. But Defendants do not dispute that Plaintiffs' counsel contacted the counsel representing the *Pankow* plaintiffs to discuss the complaint before moving for leave to amend. *Id.* These actions are sufficient to establish foundation. *See Johns v. Bayer Corp.*, 2010 WL 2573493, at *2 (S.D. Cal. June 24, 2010) (denying motion to strike as counsel had contacted the attorney who filed the source complaint to discuss the basis for his claims); *Evanston Police Pension Fund*, 411 F. Supp. 3d at 593 (collecting cases). And Defendants' cited cases actually confirm that counsel's approach was reasonable under the circumstances. For instance, in *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *20 (C.D. Cal. May 5, 2011), the

district court found that, like here, proper "investigation" includes "contacting the attorneys whose allegations they copied to discuss the basis for the claims." Similarly, the district court in *Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, 2023 WL 4418886, at *5 (N.D. Cal. May 24, 2023), dismissed counsel's independent corroboration efforts as they took place *after* filing of the complaint. Here, Plaintiffs' counsel contacted the *Pankow* counsel *before* filing for leave to amend. And the rest of Defendants' cases are so highly distinguishable that they are of little value. For example, *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008), is distinguishable because, unlike here, plaintiffs relied entirely on another complaint as the sole basis for their scienter allegations. And in both *In re Apollo Grp., Inc. Sec. Litig.*, 2011 WL 5101787, at *10 n.5 (D. Ariz. Oct. 27, 2011), and *Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1203 (N.D. Cal. 2012), the courts specifically relied on the reasoning in *Connetics*.

Second, Defendants contend that Plaintiffs must expressly allege facts showing that Siebel actually discussed the contents of the slide at the Board meeting. Opp. at 6. Not so. The Ninth Circuit only requires that Plaintiffs make a showing reflecting a strong inference of scienter—and not an irrefutable one. *Webb v. Solarcity Corp.*, 884 F.3d 844, 850 (9th Cir. 2018). And courts routinely rule that a strong inference of scienter can be established from showing that a defendant had timely access to specific information. "The most direct way to show both that a statement was false when made and that the party making the statement knew that it was false is via contemporaneous reports or data, available to the party, which contradict the statement." *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004). Here, similarly, the Court can properly draw the inference that Defendants were exposed to the onboarding information either from a presentation made at the May 25, 2024 board of directors meeting that Defendants attended or in the preparatory materials provided to Defendants.

Next, Defendants attempt to distort the plain meaning of the board materials by claiming that the board's discussion of onboarding "10 qualified sales executives in direct quota carrying roles" at Baker Hughes by July 31 refers not to ten salespeople, or sales managers, but to ten senior corporate executives at the highest levels. This reading is implausible. First, it requires that the Court assume that Siebel could dictate the highest-level personnel decisions at Baker Hughes—a

much larger company than C3. Second, the slide states that the sales executives were to have "direct quota carrying roles." This term typically refers to positions where the individual is personally and directly responsible for achieving a specific sales target. Again, it is implausible to think that C3 would be in a position to mandate any personal sales goals to the highest-level executives at Baker Hughes. Third, the goal was to hire ten sales executives in less than two months. Two months could represent a reasonable timeframe for hiring highly skilled salespeople or managers; but it is not a reasonable timeframe for identifying, hiring, and then onboarding ten senior-level executives of the caliber described in Defendants' opposition—as those types of hiring negotiations are exceedingly extensive and complex.

Fourth, Defendants disregard the fact that the proposed TAC states that Simonelli, the CEO of Baker Hughes, was—at the time of the May 25 Board meeting—a member of the Board of Directors and also present at the meeting. TAC ¶ 174. Therefore, to the extent Siebel spoke as though he had access to the full 12,000-person Baker Hughes salesforce, despite the Board materials that suggest otherwise, Simonelli could have corrected him at that meeting.

Finally, Defendants' scienter futility discussion erroneously isolates the May 25 meeting from the many other scienter allegations already included in the SAC—such as how Siebel himself signed the JVA, which specifically enumerates the number of employees committed to the venture. *See* SAC ¶¶ 20, 41, 56, 105-126, 169-184. As this Court well knows, Defendants' isolation tactic is prohibited by both the Supreme Court and the Ninth Circuit, which have each mandated that this Court adopt a holistic approach to a scienter analysis, which necessitates an inquiry as to "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d at 701 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007)). Here, since Defendants do not even attempt to perform such a holistic analysis of all scienter allegations in the proposed TAC, their futility claim must fail.

**B.   The Court may also grant leave to include the Control Person Amendment in the proposed TAC.**

The proposed TAC bolsters the allegations of Baker Hughes' control of C3 by citing to a provision in the JVA that states that C3 may not make any public statements about the relationship between the parties without prior written approval by Baker Hughes. TAC ¶ 34. This is the same JVA that has already been judicially noticed in this case and for which Defendants have moved to incorporate by reference. *See* ECF No. 154 at 7 (judicial notice); 167-1 at 4 (incorporation by reference). In other words, *Defendants on one hand argue that the entire JVA should be incorporated by reference into the operative complaint, yet also seek to bar Plaintiffs from incorporating into the operative complaint a single sentence from the very same document.* This position strains credulity. Nevertheless, Defendants attempt to justify their request on grounds of untimeliness and futility.[4] Neither argument has merit.

First, Defendants' opposition fails to identify any cognizable prejudice that Defendants would incur due to Plaintiffs' purported delay in moving to amend paragraph 34. Opp. 8-9. This is fatal to their claim because the Ninth Circuit regularly instructs that "delay alone is not sufficient to justify the denial of a motion requesting leave to amend." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *see also United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1167 (9th Cir. 2016) ("Undue delay by itself is insufficient to justify denying leave to amend, and the record here does not support any additional ground—such as prejudice or bad faith—that would justify the denial."). Nor does the need for Defendants to re-brief certain issues constitute prejudice: "In the absence of bad faith, … litigation expenses incurred before a motion to amend is filed do not establish prejudice." *United Healthcare*, 848 F.3d at 1184. Moreover, each of Defendants' cited cases refer to either *pro se* plaintiffs or plaintiffs who attempted to assert new claims or case theories. Opp. at 9 n.2, 11-12. Thus, they are of no guidance here where Plaintiffs simply wish to supplement a limited set of factual allegations previously requested by the Court. ECF No. 181.

---

[4] Defendants are wrong to suggest that Plaintiffs omitted discussion of the Control Person Amendment with the "hope" it would go unnoticed. Opp. at 1. The body of Plaintiffs' motion summarizes the most substantive issues worthy of the Court's attention and was never intended to identify and discuss all proposed edits. And as Defendants admit, the edit to paragraph 34 was clearly identified in the accompanying redlined document—which is the typical document that parties in litigation use to identify the exhaustive list of proposed changes. *Id.* at 8.

Defendants' contention that they were prejudiced by the interrupted briefing on the prior motion to dismiss thus fails as a matter of law.

Second, the Control Person Amendment is not futile because it is well established in this Circuit that authority over a particular statement establishes control person liability with respect to that statement. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (reversing dismissal and finding that a complaint alleged control person liability where the defendant had "authority over the process of preparing and releasing the financial statements"); *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011) (overturning grant of summary judgment, holding that "actual authority over the preparation and presentation to the public of financial statements is sufficient to demonstrate control"). *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 555 (N.D. Cal. 2009) ("the authority to sign and certify the contents of a registration statement implies the authority to effectuate changes to that statement by withholding certification"); *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1031-32 (S.D. Cal. 2005) ("the authority to control the contents of IRC's quarterly reports, press releases and presentations to securities analysts"). Moreover, the Ninth Circuit has instructed that "in order to make out a prima facie case [of control person liability], it is not necessary to show actual participation or the exercise of actual power." *Howard*, 228 F.3d at 1065.

Defendants attempt to side-step this binding authority with a variety of excuses. Each fail. First, Defendants claim that the JVA only gives Baker Hughes the right to review and approve written, but not oral, statements made by C3. Opp. at 10-11. But Defendants do not point to anything in the JVA that so limits Baker Hughes' rights the way they contend. Nor is it the case, as Defendants claim, that control person liability cannot apply to oral statements. *See Murphy v. Precision Castparts Corp.*, 2020 WL 4040827, at *25 (D. Or. July 17, 2020) (complaint dismissed because, under the facts alleged, the complaint failed to establish that control person liability could not apply to oral statements). And though Defendants cite a single, thirty-year-old case for the proposition that control person liability is *per se* barred for oral statements, multiple, more recent cases reach the opposite conclusion. *See Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, 2024 WL 3708800, at *18 (D. Ariz. Aug. 7, 2024) (finding control person liability for

statements made at earnings call); *Jaeger v. Zillow Grp., Inc.*, 644 F. Supp. 3d 857, 875 (W.D. Wash. 2022) (same).

Second, Defendants nonetheless state that Siebel is not a party to the JVA, and therefore the JVA does not control his statements or those of other C3 officers. But it is simply implausible to argue that a contract binding a corporation into a joint venture would not also bind the CEO acting in his official capacity when speaking in public about the status of the venture.

Finally, Baker Hughes erroneously contends that the control person claims are time barred. Opp. at 10. Plaintiffs initially voluntarily dismissed the Securities Act control person claim against Baker Hughes because, in the FAC, Plaintiffs alleged that the Registration Statement made statements that were misleading for failing to disclose the size of the Baker Hughes sales force selling C3's product. SAC ¶¶ 74-75. However, the Court dismissed those statements, while allowing to proceed a statement regarding the revenue from deals brought in by Baker Hughes. ECF No. 154 at 14-20. As such, Plaintiffs were not put on notice about the lack of deals from Baker Hughes at the same time they were put on notice about the true size of the sales force. As such, Baker Hughes' time calculation for measuring the statute of limitations is unsupported and incorrect.

## C.    The Stock Trade Ammendment, reflecting information from previously pled complaints and briefing materials, can also be included in the proposed TAC.

The proposed TAC includes four stock charts that compare Plaintiffs' contemporaneous trades with those of Defendants. TAC ¶ 132. But as Defendants themselves note, these charts only summarize information and allegations pulled directly from previous complaints. Opp. at 11-12. Defendants also admit that these charts were previously affixed to Plaintiffs' briefing materials. *Id.* at 11. So, *there is simply no new information or allegations in these charts*. *Id.* Still, Defendants contend that the charts should be excluded from the proposed TAC on account of timeliness and futility. But, again, Defendants claim no concrete prejudice, and Plaintiffs already explained that Defendants' timeliness objections are meritless in the absence of prejudice. *See supra*, Section II.B.

As for futility, Defendants suggest that these amendments are futile because they show that in some instances, Plaintiffs traded at lower prices than Defendants. Opp at 12. For instance, on

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE
[PROPOSED] THIRD AMENDED COMPLAINT – 7                                    Case No. 4:22-cv-01413-HSG

August 16, 2021, Plaintiff Samarghandi purchased shares at $46.40 and $48, above the $46.22 Siebel sold his shares for that same day. And Plaintiff Zavalanski purchased shares on March 15, 2021, for $89.65, the same price that Abbo sold on March 11, 2021. But that is no bar to sustaining the insider trading claims in the Ninth Circuit. "Plaintiffs ... have alleged that they made at least one trade contemporaneously with at least one of Defendants' trades during the Class Period. So there is no requirement that Plaintiffs establish a contemporaneous trade for each and every one of Defendants' trades during the Class Period." *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, 2004 WL 5326262, at *5 (N.D. Cal. May 27, 2004) (granting class certification for § 20A claim where plaintiff showed at least one contemporaneous trade with defendants); *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 285 (N.D. Cal. 2020) (holding that plaintiff with viable § 20A claim based on one insider trade gives plaintiff standing as a class representative to assert a § 20A claim that encompasses other insider trades). Indeed, as Defendants concede, the charts show that in some instances Plaintiffs traded at higher prices, and therefore these trades are sufficient to establishing standing. As such, the Stock Trade Amendment, as reflected in the four charts prepared by Plaintiffs reflecting previously pled information, may be included in the proposed TAC.

### III.    CONCLUSION

The Court should grant leave to Plaintiffs so that they may file the proposed TAC.

DATED: December 10, 2024                    Respectfully Submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Reed R. Kathrein*
Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
reed@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman (*pro hac vice*)
Catherine Y.N. Gannon (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
catherineg@hbsslaw.com

*Lead Counsel and Counsel for*
*Lead Plaintiff Mark Samarghandi*

Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
**THE ROSEN LAW FIRM, P.A.**
Los Angeles, CA 90071
Telephone: (213) 785-2610
lrosen@rosenlegal.com

Jonathan Stern (*pro hac vice*)
**THE ROSEN LAW FIRM, P.A.**
275 Madison Ave., 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
jstern@rosenlegal.com

*Counsel for Additional Plaintiffs Sharon L.*
*Zavalanski, David Linder, and Elizabeth Wensel*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE
[PROPOSED] THIRD AMENDED COMPLAINT – 9                    Case No. 4:22-cv-01413-HSG