GIBSON, DUNN & CRUTCHER LLP
JESSICA VALENZUELA, SBN 220934
    JValenzuela@gibsondunn.com
310 University Avenue
Palo Alto, California 94301-1744
Telephone:    650.849.5300
Facsimile:     650.849.5333

GEORGE B. ADAMS III, SBN 321904
    GAdams@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:    415.393.8200
Facsimile:     415.393.8306

*Attorneys for Defendant*
*Baker Hughes Company*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE RECKSTIN FAMILY TRUST, et al.,<br><br>                Plaintiffs,<br><br>v.<br><br>C3.AI, INC., et al.,<br><br>                Defendants. | CASE NO. 4:22-cv-01413-HSG<br><br>**BAKER HUGHES'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT WITH PREJUDICE AND JOINDER IN C3 DEFENDANTS' AND LORENZO SIMONELLI'S MOTIONS TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><u>**Hearing**</u>**:**<br>Date:           June 26, 2025<br>Time:          2:00 p.m.<br>Place:         Courtroom 2, 4th Floor<br><br>Judge:        Hon. Haywood S. Gilliam, Jr.<br>Action Filed:   March 4, 2022 |

# TABLE OF CONTENTS

Page

STATEMENT OF ISSUES TO BE DECIDED ...............................................................................1

I. INTRODUCTION .......................................................................................................................2

II. BACKGROUND ........................................................................................................................3

    A.    Overview of Baker Hughes's Reseller Agreements With C3........................................3

    B.    C3's December 2020 IPO And Siebel's Alleged Statements About the Baker Hughes Sales Force Following the IPO. ...................................................................4

    C.    Baker Hughes Sells A Small Portion Of Its C3 Shares In April 2021. .......................4

    D.    The Alleged Corrective Disclosures. ..........................................................................5

    E.    Procedural History. .....................................................................................................5

III. ARGUMENT .............................................................................................................................6

    A.    Plaintiffs Fail To Plead Control-Person Claims Against Baker Hughes Under Section 15 and Section 20(a). ......................................................................................6

        1.    Plaintiffs' Section 15 Claim Is Untimely. ......................................................6

        2.    Plaintiffs Fail To Plead A Primary Violation By C3. ....................................7

        3.    Plaintiffs Fail to Plead Any Facts That Baker Hughes Controlled C3. ..........7

    B.    Plaintiffs Fail to State a Claim Under Section 20A Against Baker Hughes...............11

        1.    Plaintiffs Fail To Plead A Predicate Violation Of The Exchange Act By Baker Hughes..............................................................................................11

        2.    Plaintiffs Fail To Plead That Baker Hughes Traded C3 Stock While In Possession of Material, Nonpublic Information. ..........................................12

        3.    Plaintiffs Fail to Allege That Any Plaintiff Traded Contemporaneously With Baker Hughes........................................................................................14

IV. CONCLUSION ........................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Arrowhead Rsch. Corp. Sec. Litig.*,
   2016 WL 6562066 (C.D. Cal. Mar. 29, 2016) ............................................................... 11, 12

*Bao v. Solarcity Corp.*,
   2016 WL 54133 (N.D. Cal. Jan. 5, 2016) ................................................................... 3, 8, 10

*In re Bare Escentuals, Inc. Sec. Litig.*,
   745 F. Supp. 2d 1052 (N.D. Cal. 2010) ................................................................................ 8

*Batwin v. Occam Networks, Inc.*,
   2008 WL 2676364 (C.D. Cal. July 1, 2008) ................................................................... 3, 12

*Brodsky v. Yahoo! Inc.*,
   592 F. Supp. 2d 1192 (N.D. Cal. 2008) .............................................................................. 13

*Buban v. O'Brien*,
   1994 WL 324093 (N.D. Cal. June 22, 1994) ........................................................... 3, 14, 15

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
   880 F. Supp. 2d 1045 (N.D. Cal. 2012) .............................................................................. 14

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................................... 11, 12, 13

*Dexia Holdings, Inc. v. Countrywide Fin. Corp.*,
   2012 WL 1798997 (C.D. Cal. Feb. 17, 2012) ....................................................................... 7

*Ferreira v. Funko Inc.*,
   2021 WL 8820650 (C.D. Cal. Oct. 22, 2021) ..................................................................... 11

*Golub v. Gigamon Inc.*,
   372 F. Supp. 3d 1033 (N.D. Cal. 2019), aff'd, 994 F.3d 1102 (9th Cir. 2021) ..................... 8

*Greenberg v. Sunrun, Inc.*,
   233 F. Supp. 3d 764 (N.D. Cal. 2017) .................................................................................. 7

*In re Gupta Corp. Sec. Litig.*,
   900 F. Supp. 1217 (N.D. Cal. 1994) ........................................................................... 3, 8, 9

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) ........................................................................................... 8, 9

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ............................................................................................ 12

*Macomb Cnty. Employees' Ret. Sys. v. Align Tech., Inc.*,
   39 F.4th 1092 (9th Cir. 2022) ............................................................................................. 12

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................................ 8

*Murphy v. Precision Castparts Corp.*,
    2020 WL 4040827 (D. Or. July 17, 2020) ................................................................................ 9

*In re Netflix, Inc. Sec. Litig.*,
    964 F. Supp. 2d 1188 (N.D. Cal. 2013) ............................................................................ 3, 12

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ....................................................................................... 12, 13, 14

*In re Openwave Sys. Sec. Litig.*,
    528 F. Supp. 2d 236 (S.D.N.Y. 2007) ................................................................................. 11

*In re Pixar Sec. Litig.*,
    450 F. Supp. 2d 1096 (N.D. Cal. 2006) ............................................................................... 14

*Purple Mountain Tr. v. Wells Fargo & Co.*,
    432 F. Supp. 3d 1095 (N.D. Cal. 2020) ............................................................................... 10

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017) ............................................................................................. 13

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ................................................................................................. 7

*Ryan v. FIGS, Inc.*,
    2024 WL 187001 (C.D. Cal. Jan. 17, 2024) ........................................................................ 12

*Sabbag v. Cinnamon*,
    2010 WL 8470477 (N.D. Cal. Dec. 10, 2010) .................................................................. 6, 7

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
    485 F. Supp. 3d 1113 (N.D. Cal. 2020) ........................................................................... 3, 15

*In re Silver Lake Grp., LLC Sec. Litig.*,
    108 F.4th 1178 (9th Cir. 2024) ............................................................................................ 12

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
    2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ............................................................ 7, 8, 9

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ................................................................................................. 7

*United States v. Smith*,
    155 F.3d 1051 (9th Cir. 1998) ............................................................................................. 12

*Xiaojiao Lu v. Align Tech., Inc.*,
    417 F. Supp. 3d 1266 (N.D. Cal. 2019) ......................................................................... 13, 15

**Statutes**

15 U.S.C. § 77m .......................................................................................................................... 6

15 U.S.C. § 78t-1(a) .................................................................................................................. 12

**Rules**

Fed. R. Civ P. 15(c)(1)(C) ................................................................................................................ 7

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 26, 2025, at 2:00 p.m., or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Courtroom 2 – 4th Floor, Defendant Baker Hughes Company ("Baker Hughes") will and hereby does move for an order dismissing Plaintiffs' Third Amended Complaint, ECF No. 198 ("TAC"), pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") for failure to state a claim against Baker Hughes under Section 15 of the Securities Act of 1933 ("Securities Act"), Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Section 20A of the Exchange Act (the "Motion"). This Motion is based on this Notice, the supporting Memorandum of Points and Authorities included below, the Motions to Dismiss and supporting Memorandums of Points and Authorities of the C3 Defendants and Lorenzo Simonelli, along with the C3 Defendants' Request for Judicial Notice, supporting declaration, and exhibits thereto, all records in this action, and any additional material and arguments as may be considered in connection with the hearing on the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Plaintiffs' claim under Section 15 of the Securities Act should be dismissed against Baker Hughes because it is barred by the one-year statute of limitations.

2. Whether Plaintiffs' claim under Section 15 of the Securities Act should be dismissed for failure to plead a primary violation of the Securities Act.

3. Whether Plaintiffs' claim under Section 15 of the Securities Act should be dismissed for failure to plead that Baker Hughes controlled C3.ai, Inc.

4. Whether Plaintiffs' claim under Section 20(a) of the Exchange Act should be dismissed for failure to plead a primary violation of the Exchange Act.

5. Whether Plaintiffs' claim under Section 20(a) of the Exchange Act should be dismissed for failure to plead that Baker Hughes controlled C3.ai, Inc.

6. Whether Plaintiffs' claim under Section 20A of the Exchange Act should be dismissed for failure to plead a predicate violation of the Exchange Act by Baker Hughes.

8. Whether Plaintiffs' claim under Section 20A of the Exchange Act should be dismissed for failure to plead that Baker Hughes traded while in possession of material, nonpublic information.

9. Whether Plaintiffs' claim under Section 20A of the Exchange Act should be dismissed because no named Plaintiff traded contemporaneously with Baker Hughes.

## I. INTRODUCTION

This Court dismissed all claims against Baker Hughes in the first amended complaint ("FAC"). ECF No. 154. Plaintiffs have now had two opportunities to amend.[1] Yet Plaintiffs have added just one new allegation directed at Baker Hughes, concerning its reseller agreement with C3. This agreement is irrelevant and does not move the needle on any of Plaintiffs' claims against Baker Hughes. What remains are the same recycled conclusory and speculative allegations that the Court previously found inadequate. All claims against Baker Hughes continue to fail as a matter of law. The TAC should be dismissed for the same reasons set forth in the motions to dismiss filed by C3.ai, Inc. ("C3") and Lorenzo Simonelli, and Baker Hughes joins those motions in full. The claims against Baker Hughes also should be dismissed for at least four additional reasons.

*First*, Plaintiffs' Section 15 control person claim is barred by the one-year statute of limitations. Plaintiffs admit that the purported "truth" about Defendants' alleged misstatements was disclosed no later than December 2, 2021. Plaintiffs first asserted a Securities Act claim against Baker Hughes on February 15, 2023, more than 14 months later. ¶¶ 145, 157–59.[2] When Baker Hughes pointed out this fatal defect in the FAC, Plaintiffs appropriately withdrew their Section 15 claim. Plaintiffs now seek to revive it in the TAC.

*Second*, Plaintiffs' control person claims under Section 15 of the Securities Act and Section 20(a) of the Exchange Act also fail because the TAC does not plead that Baker Hughes is a "control person" of C3. Indeed, the TAC does not contain a ***single fact*** showing Baker Hughes controlled C3 in any way. That Baker Hughes had a minority stake in C3 and a representative on C3's board are not

---

[1] Plaintiffs filed a second amended complaint ("SAC") on April 4, 2024. ECF. No. 158. Defendants moved to dismiss the SAC on May 17, 2024. ECF Nos. 167, 170, 171. On September 27, 2024, before the motions were heard, Plaintiffs filed a motion for leave to file a third amended complaint. ECF No. 181. The Court granted leave on February 13, 2025. ECF No. 197.

[2] Citations in the form of "¶ _" or "¶¶ _" refer to the paragraphs of the TAC (ECF No. 198).

sufficient to establish that Baker Hughes exercised day-to-day management over C3's affairs. *See Bao v. Solarcity Corp.*, 2016 WL 54133, at *9 (N.D. Cal. Jan. 5, 2016); *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994). Plaintiffs' allegation that a reseller agreement gave Baker Hughes the right to approve certain press releases and public statements by C3 (¶ 34) is entirely beside the point. Other than one line in C3's registration statement, the TAC challenges only oral, unscripted statements by C3's CEO. Nothing in the reseller agreement gives (or could possibly give) Baker Hughes the right to review much less control these live statements.

*Third*, Plaintiffs' Section 20A claim for insider trading fails as a matter of law because Plaintiffs do not allege a separate underlying or "predicate" trading violation of the Exchange Act by Baker Hughes. *See In re Netflix, Inc. Sec. Litig.*, 964 F. Supp. 2d 1188, 1199 (N.D. Cal. 2013).

*Fourth*, even if Plaintiffs could plead such predicate violation—which it cannot—Plaintiffs fail to plead any other element of a Section 20A claim. Among other things, the TAC does not identify the purported material, nonpublic information about C3 that Baker Hughes allegedly possessed when it sold C3 stock. That is fatal. *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *27 (C.D. Cal. July 1, 2008). Nor do Plaintiffs plead that Baker Hughes sold stock contemporaneously with Plaintiffs' purchases. That is fatal too. *See SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1136 (N.D. Cal. 2020). No Plaintiff traded on the same day as Baker Hughes, or even the day after. And Plaintiffs' purchases not only came too late but were made at prices lower than Baker Hughes' sales prices, which shows that Plaintiffs could not have traded with Baker Hughes, much less to their disadvantage. *See Buban v. O'Brien*, 1994 WL 324093, at *3 (N.D. Cal. June 22, 1994).

All claims against Baker Hughes should be dismissed for these reasons.

## II.  BACKGROUND[3]

Baker Hughes incorporates the facts set out in the motion to dismiss filed contemporaneously by C3 ("C3 Motion"), and briefly recounts the allegations relevant to Baker Hughes's motion below.

### A.   Overview of Baker Hughes's Reseller Agreements With C3.

Baker Hughes is one of the world's largest oil field services companies. ¶ 8. The TAC alleges that, in June 2019, Baker Hughes entered into an agreement (the "Reseller Agreement") with C3. ¶ 50.

---

[3] By summarizing Plaintiffs' allegations, Baker Hughes does not concede that the allegations are true.

Under the Reseller Agreement, Baker Hughes purchased a subscription to C3's software for Baker Hughes' own operations. *Id.* It also acquired (i) the exclusive right to resell C3's software in the oil and gas industry, and (ii) a non-exclusive right to resell C3's software in other industries. *Id.* In return, Baker Hughes agreed that it would guarantee revenues to C3 for three years: $50 million, $100 million and $170 million, respectively, for C3's fiscal years ending on April 30, 2020, 2021 and 2022. ¶ 51.

In June 2020, Baker Hughes and C3 extended the Reseller Agreement to 2024. ¶ 52. The parties modified Baker Hughes's revenue commitments in FY 2021 and 2022 to $53.3 million and $75 million, respectively. *Id.* The amendment also added a $125 million revenue commitment for FY 2023, and $150 million for FY 2024. *Id.* These commitments were absolute—if Baker Hughes did not generate enough sales to meet the annual revenue commitments, it was required to pay the difference. *Id.* At the same time, Baker Hughes also purchased stock in C3 and appointed its CEO (Mr. Simonelli) to C3's board of directors. ¶ 53. Mr. Simonelli served on C3's board until December 17, 2021. ¶ 61.

**B.     C3's December 2020 IPO And Siebel's Alleged Statements About the Baker Hughes Sales Force Following the IPO.**

C3's initial public offering was December 9, 2020. ¶ 64. According to the TAC, Baker Hughes owned a 14.76% stake in C3 before the IPO, which was reduced to 11.65% after the IPO. ¶ 54.

In connection with the IPO, C3 publicly filed a registration statement (the "Registration Statement") with the SEC. ¶ 1. The TAC claims that just one statement in the Registration Statement was misleading: that, for fiscal year 2020, C3 "recognized as revenue the full value of the first year of the direct subscription agreement and the value of deals brought in by Baker Hughes through the reseller arrangement." ¶ 66. The TAC further alleges that after the IPO, C3's CEO Tom Siebel said in live interviews and Q&A sessions between February 24, 2021 and November 29, 2021 at various industry conferences and on one earnings call that C3 was working with a 12,000-person salesforce at Baker Hughes. ¶¶ 105–26. Plaintiffs do not challenge any statement by Baker Hughes.

**C.     Baker Hughes Sells A Small Portion Of Its C3 Shares In April 2021.**

On April 7, 2021, Baker Hughes sold 873,431 shares of C3 common stock at a price of $64.25/share. ¶ 130. Baker Hughes sold additional shares on April 9, 2021 (189,188 shares at $60.86/share) and April 22, 2021 (170,000 shares at $67.99/share). *Id.* The TAC concedes that Baker

Hughes's April 22, 2021 sale was made according to a Rule 10b5-1 trading plan dated March 22, 2021. *Id*. Altogether, Baker Hughes's sales represented 11 percent of its total investment in C3. ¶ 54.

### D. The Alleged Corrective Disclosures.

On March 1, 2021, C3 announced third quarter fiscal 2021 results. ¶ 148. The next day, on March 2, 2021, C3 filed a Quarterly Report on Form 10-Q with the SEC, disclosing (among other results) that for the nine months ending January 31, 2021, the Company recognized total revenue of $21.6 million related to its joint venture with Baker Hughes. *Id.* C3 announced its first quarter fiscal 2022 results on September 1, 2021, and the next day filed a Quarterly Report on Form 10-Q with the SEC, disclosing that for the three months ending July 31, 2021, the Company recognized total revenue of $16.1 million related to its joint venture with Baker Hughes. ¶ 152.

On December 1, 2021, C3 announced its results for the second quarter of FY 2022. ¶ 158. On a conference call that same day, Siebel disclosed that C3 had reorganized the Baker Hughes-C3 ("BHC3") salesforce. ¶ 159. Analyst reports published after this announcement on December 2, 2021, discussed how the BHC3 sales team was restructured in July 2021 to a "sales model" again in November 2021 to a more traditional model. ¶¶ 164–65. Plaintiffs contend that these disclosures revealed the "truth" of C3's purported fraud to investors. ¶ 157.

### E. Procedural History.

This lawsuit was filed on March 4, 2022. ECF No. 1. Baker Hughes was not named as a defendant. *Id.* Nearly a year later, on February 15, 2023, Lead Plaintiff Mark Samarghandi ("Lead Plaintiff") filed an Amended Class Action Complaint naming Baker Hughes as a defendant for the first time. ECF No. 71. Baker Hughes moved to dismiss on May 1, 2023. ECF No. 109.

On February 22, 2024, the Court granted Baker Hughes' motion to dismiss in full. ECF No. 154. The Court observed that Plaintiffs had "withdraw[n] their Section 15 claims against Baker Hughes," making that claim moot. *Id.* at 22 n.15. The Court further dismissed Plaintiffs' Section 20(a) control-person claim, agreeing with Defendants that "the absence of a well-pled predicate violation of the Exchange Act sinks this claim." *Id.* at 43.

With respect to Plaintiffs' insider trading claims under Section 20A, the Court held that the failure "to plead a primary violation of securities laws" meant that Plaintiffs' "insider trading claims

1  must also fail." *Id.* at 44.  The Court also explained that "unless and until a primary violation of the securities laws is properly pled, it need not decide the bounds of the 'contemporaneous' requirement . . . ." *Id.* at 44 n.31.

On April 4, 2024, Plaintiffs filed the SAC.  ECF No. 158.  It did not add a single new allegation that related in any way to Plaintiffs' claims against Baker Hughes.  *See, e.g.*, *id.* ¶¶ 19–24 (summarizing amendments).  Defendants moved to dismiss the SAC on May 17, 2024.  ECF Nos. 167, 170, 171.

On September 27, 2024, while briefing on Defendants' motions to dismiss was ongoing, Plaintiffs filed a motion for leave to file a third amended complaint.  ECF No. 181.  The Court granted leave on February 13, 2025 (ECF No. 197), and Plaintiffs filed the TAC on February 14, 2025.  Baker Hughes now moves again on the same grounds to dismiss all claims against it with prejudice.

### III.  ARGUMENT

**A.  Plaintiffs Fail To Plead Control-Person Claims Against Baker Hughes Under Section 15 and Section 20(a).**

Plaintiffs' control person claims fail as a matter of law and should be dismissed for three reasons.  First, the TAC admits that Plaintiffs' claim under Section 15 was filed more than a year after the supposed "truth" about Defendants' alleged misstatements was disclosed.  ¶¶ 145, 157–60.  It is therefore untimely and barred by the one-year statute of limitations.  *See* 15 U.S.C. § 77m.  Second, Plaintiffs fail to plead an underlying primary violation by any other Defendant, which forecloses their control person claims against Baker Hughes under Section 15 and Section 20(a).  Third, the TAC fails to allege even one specific act of control purportedly exercised by Baker Hughes over C3 or Siebel, thus the control-person claims against Baker Hughes under Section 15 or Section 20(a) fail.

1.  <u>Plaintiffs' Section 15 Claim Is Untimely.</u>

As a threshold matter, Plaintiffs' Section 15 claim is untimely because it was filed after the one-year statute of limitations had expired.  *See* 15 U.S.C. § 77m.  The TAC alleges that the "truth" about Defendants' alleged misstatements was disclosed no later than December 2, 2021.  ¶¶ 157–60; *see also* ¶ 145 (alleging that a series of disclosures "[t]hroughout the Class Period" ending on December 2, 2021 purportedly revealed the "true state of C3's business.").  Thus, by Plaintiffs' own admission, the one-year statute of limitations began to run no later than this date.  *Sabbag v. Cinnamon*, 2010 WL 8470477,

at *3–4 (N.D. Cal. Dec. 10, 2010) (dismissing claim under Section 14(a) of the Exchange Act as time-barred where "[p]laintiffs themselves allege that '[defendant] had finally disclosed the truth'" more than a year before filing the amended complaint).  Plaintiffs waited to sue Baker Hughes until February 15, 2023—more than fourteen months later.

Plaintiffs' earlier-filed claims against other defendants do not cure their timeliness problem.  Claims against newly added defendants do not relate back save in narrow circumstances not present here.  Fed. R. Civ P. 15(c)(1)(C); *see also, e.g.*, *Dexia Holdings, Inc. v. Countrywide Fin. Corp.*, 2012 WL 1798997, at *3 (C.D. Cal. Feb. 17, 2012) (dismissing Section 15 claim against defendant not named in earlier action as time barred); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1411 (9th Cir. 1996) (dismissing as time-barred Section 11 claim against defendant named for first time in amended complaint).[4]

### 2. Plaintiffs Fail To Plead A Primary Violation By C3.

For all the reasons set forth in the C3 Motion and Simonelli Motion, Plaintiffs fail to plead any claim under Section 10(b) or Section 11.  *See* C3 Mot. Argument §§ I-II; Simonelli Mot. § III.A–B.  As a result, Plaintiffs' secondary control-person claims against Baker Hughes fail as a matter of law for lack of a primary violation.  *See In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012); *Greenberg v. Sunrun, Inc.*, 233 F. Supp. 3d 764, 772 (N.D. Cal. 2017).

### 3. Plaintiffs Fail to Plead Any Facts That Baker Hughes Controlled C3.

Plaintiffs' control-person claims against Baker Hughes also fail because the TAC "does not provide even one specific act of control" purportedly exercised by Baker Hughes over C3 or Siebel.  *See, e.g.*, *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000) (dismissing Section 20(a) claim based on inferences and "circumstantial evidence of control").  Rather, the TAC offers only conclusions and circular arguments that Baker Hughes—a minority shareholder—somehow controlled C3.  (¶¶ 88, 213).  The TAC says nothing at all about purported control over Siebel—who made all but one of the challenged statements.

#### a. The C3 Registration Statement.

---

[4] Apparently recognizing their claim is time-barred, Plaintiffs withdrew the Section 15(a) claim after Baker Hughes filed its motion to dismiss.  ECF No. 154 at 22 n.15.  Why they seek to revive it now is a mystery.

To plead control of C3, Plaintiffs must allege specific facts showing that Baker Hughes was "active in the day-to-day affairs" of the company or exercised "specific control" over the challenged statement or some activity to which the statement related. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1067 n.13 (9th Cir. 2000); *see also In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1081 (N.D. Cal. 2010) (dismissing Section 15 and 20(a) control-person claims where plaintiffs did not "plead specific facts establishing that these persons exercised a 'significant degree of day to day operational control' over the company, as the law requires"). Plaintiffs plead no such facts. Rather, they rely on two boilerplate allegations: (1) Baker Hughes owned 14.76% of C3 at the time of the IPO, which dropped to 11.65% after the IPO (¶¶ 54, 89) and (2) Baker Hughes designated its CEO (Simonelli) to serve as one of C3's ten directors (¶¶ 53, 89). Neither allegation suffices to plead control.

*First*, it is well-settled that an investor's "position as a minority shareholder . . . does not establish control person liability." *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. at 1243. That Baker Hughes held less than a 15% equity stake does not support an inference that it controlled C3 "management and policies"—nor does it show that Baker Hughes "exercised a significant degree of day-to-day operational control" over C3 "amounting to the power to dictate [its] conduct or operations." *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000) (internal quotation marks omitted). Indeed, even a far greater ownership interest would be insufficient to establish control. *See Solarcity Corp.*, 2016 WL 54133, at *9 (30% equity interest insufficient to establish control); *In re Splash Tech.*, 2000 WL 1727405, at *16 (same for 20% ownership); *Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1053 (N.D. Cal. 2019), aff'd, 994 F.3d 1102 (9th Cir. 2021) (same for 15.3% equity interest).

*Second*, the fact that Baker Hughes' CEO was a C3 director is also not sufficient to establish that Baker Hughes controlled C3. *See In re Gupta Corp. Sec. Litig.*, 900 F. Supp. at 1243 (no presumption of control from status as outside director, nor for minority shareholder with agent on Board). *Splash* is instructive. There, plaintiffs brought a Section 20(a) claim against an investor, Radius, that had a 20% equity interest. Plaintiffs alleged several close ties between the two companies: Radius's CEO and chairman served on Splash's board, Splash was previously an operating division of Radius, and the majority of Splash's employees were former employees of Radius. *In re Splash Tech.*

Gibson, Dunn & Crutcher LLP

*Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *15–16. The court held that these allegations did "not prove sufficient" to state a control-person claim against Radius. *Id.* at *16.

Plaintiffs' boilerplate allegations of control fall well short of the inadequate facts pled in *Splash*. Moreover, the outcome does not change even if Simonelli were a control person of C3 (which, to be clear, the TAC does not adequately plead), because Plaintiffs do not allege that Baker Hughes somehow controlled C3 through Simonelli. Plaintiffs do not even allege that Baker Hughes controlled **Simonelli** in the first place. Instead, they allege the opposite: that Simonelli was a "controlling person of Baker Hughes." ¶ 227. Any suggestion, therefore, that Baker Hughes controlled C3 through Simonelli is circular and makes no sense. Plaintiffs' Section 15 and Section 20(a) claims based on the Registration Statement should therefore be dismissed with prejudice.

          b.      *Siebel's Unscripted Oral Statements.*

Plaintiffs' claim that Baker Hughes controlled the eleven challenged statements that were made orally by Siebel in unscripted interviews, during Q&A sessions at industry conferences, or on earnings calls is even weaker. ¶¶ 105–27; *see also* ECF No. 154 at 37 (identifying Siebel as "hav[ing] made" these eleven statements); ECF No. 198-1 at 2–13 (Plaintiffs' appendix admitting same). As an initial matter, control person liability does not even extend to oral statements by individuals. "[S]tatements attributable to specific individuals are presumed to be the actions of those individuals only. Accordingly, they are not actionable against other defendants under any theory of liability." *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. at 1243).

In any event, to be liable as a control person, Baker Hughes must have "exercised actual power or control over the **primary violator**"—who Plaintiffs allege was Siebel. *Howard*, 228 F.3d at 1065 (emphasis added). The TAC's conclusory assertion that Baker Hughes "acted as a controlling person of C3" does not suffice. (¶¶ 88, 213). The TAC does not allege—even in conclusory fashion—that Baker Hughes had the ability to control Siebel during these events, that it had any input or influence over his words, or that Baker Hughes was even aware of Siebel's statements or was present when they were made. Under these circumstances, Baker Hughes cannot be liable as the TAC does not allege that it "had any meaningful control over what words came out of [Seibel's] mouth during [earnings] calls." *See Murphy v. Precision Castparts Corp.*, 2020 WL 4040827, at *25 (D. Or. July 17, 2020).

Plaintiffs' allegation that the Reseller Agreement required written approval by Baker Hughes of certain press releases and public statements *by C3* is not sufficient to establish that Baker Hughes had *actual* control over Siebel's oral statements. The relevant provision in the Reseller Agreement provided that "neither Party will issue any press release or public statements regarding the terms and conditions of this Agreement, and/or the details of the relationship between the Parties contemplated hereby, without the prior written approval of the other Party (not to be unreasonably withheld, conditioned or delayed)." *See* Ex. A § 13.6.[5] The Reseller Agreement does not (and logically cannot) enable Baker Hughes to approve Siebel's live, unscripted remarks during events that Baker Hughes did not attend. *See e.g.*, *In re Splash Tech.*, 2000 WL 1727405, at *16 (contrasting facts suggesting the "possibility of control" over a company's management and policies (which are insufficient to plead control) with specific allegations that constitute "particular evidence of control").

*Solarcity* is particularly instructive here. There, the plaintiff alleged that Solarcity's chairman, Elon Musk, was liable as a control person for its allegedly false and misleading financial statements. *Solarcity Corp.*, 2016 WL 54133, at *9. Plaintiff pled that, in addition to chairing the company's board, Musk owned 30% of Solarcity, was the cousin of Solarcity's CEO, and signed Solarcity's financial statements. *Id.* The Solarcity CEO even admitted that Musk could direct the CEO's actions by "instruct[ing the CEO] to swerve into a pothole" to "avoid invisible walls." *Id.* The court held that these allegations "fall short" of pleading control. *Id.*

The allegations here pale in comparison to those held insufficient in *Solarcity*. *See also Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D. Cal. 2020) (dismissing Section 20(a) claim against board chair and officers based on "barebones allegations" of control based on "their positions and their power"). The TAC does not allege that Baker Hughes could control Siebel, that it had any input or influence over his words, or that Baker Hughes undertook "even one specific act of control" over Siebel's unscripted statements. *See In re Splash Tech.*, 2000 WL 1727405, at *16. Plaintiffs' control person claims should be dismissed.

---

[5] Citations to "Ex." refer to the exhibits attached to the Declaration of Harry A. Olivar, Jr. submitted by the C3 Defendants in connection with their motion to dismiss the TAC and Request for Judicial Notice filed therewith.

**B.      Plaintiffs Fail to State a Claim Under Section 20A Against Baker Hughes.**

Plaintiffs allege that when Baker Hughes sold a small percentage of its C3 stockholdings in April 2021 after the post-IPO lockup period expired, it engaged in insider trading in violation of Section 20A.  To plead a Section 20A claim against Baker Hughes, Plaintiffs must allege with specificity that (1) Baker Hughes committed a separate underlying violation (a "predicate violation") of the Exchange Act, (2) by "purchasing or selling a security while in possession of material, nonpublic information," and (3) one or more Plaintiffs traded "contemporaneously" with Baker Hughes.  *See In re Arrowhead Rsch. Corp. Sec. Litig.*, 2016 WL 6562066, at *11 (C.D. Cal. Mar. 29, 2016); *see also* ECF No. 154 at 44.  Plaintiffs however, do not plead **a single element**.

1.      Plaintiffs Fail To Plead A Predicate Violation Of The Exchange Act By Baker Hughes.

Claims pursuant to Section 20A are derivative.  To plead a Section 20A claim, Plaintiffs must—but do not—state a claim for an underlying predicate violation of the Exchange Act.  The Court dismissed the Section 20A claim against Baker Hughes in the FAC for precisely this reason, finding that it "fails to plead a primary violation of the securities laws."  *See* ECF No. 154 at 44.  The TAC suffers the same defect, and the Court should dismiss the 20A claim again.

Unlike the primary violation required to plead a claim under Section 20(a)—which can be pled against a different (allegedly controlled) defendant—the predicate violation underlying a Section 20A claim must be committed by the **same defendant** against whom the 20A claim is brought.  *Ferreira v. Funko Inc.*, 2021 WL 8820650, at *38 (C.D. Cal. Oct. 22, 2021) ("Without a predicate violation by these particular Defendants, Plaintiffs' Section 20A claim against them fails.").[6]  Plaintiffs' Section 10(b) claim against C3, Siebel and Simonelli, even if adequately pled (which it is not), therefore cannot serve as the predicate violation for Plaintiffs' Section 20A claim against Baker Hughes.

The Section 20(a) claim against Baker Hughes, even if it were sufficiently pled (which it is not), also cannot serve as the predicate violation for a Section 20A claim.  First, the predicate violation "must be an act of insider trading, not just trading while simultaneously committing a free-floating '34 Act violation."  *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1202 (C.D. Cal. 2008).

---

[6] *See also In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 256 (S.D.N.Y. 2007) ("Plaintiff failed entirely to allege any underlying Exchange Act violations as to defendants Snyder, Peters, and Wilkinson.  The Section 20A claims against them are therefore dismissed, as well." (emphasis added)).

Thus, to prevail on a Section 20A claim, "'[a] plaintiff[ ] must first allege a violation of § 10(b) or Rule 10b-5.'" *Macomb Cnty. Employees' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1100 n.2 (9th Cir. 2022) (quoting *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002)); *In re Netflix, Inc. Sec. Litig.*, 964 F. Supp. 2d at 1199 ("[T]here can be no insider trading liability under Section 20A without an underlying violation of Section 10(b)."). Plaintiffs do not allege any Section 10(b) claim against Baker Hughes at all, much less a Section 10(b) insider trading claim. And even if a violation of some other provision of the Exchange Act could suffice—which it does not—Plaintiffs' Section 20(a) control person claim also cannot serve as the requisite predicate violation. Only a claim "for control person liability **relate[d] to insider trading**" can serve as a predicate violation for a Section 20A claim. *See Batwin*, 2008 WL 2676364, at *27 (emphasis added); *see also In re Countrywide*, 588 F. Supp. 2d at 1202. Plaintiffs' Section 20(a) "control person" claim is based solely on the theory that Baker Hughes controlled the contents of the challenged statements. ¶¶ 212–14. That is insufficient. *See Ryan v. FIGS, Inc.*, 2024 WL 187001, at *14 (C.D. Cal. Jan. 17, 2024) (dismissing Section 20A insider trading claim where plaintiffs failed to plead a predicate insider trading claim).

### 2. Plaintiffs Fail To Plead That Baker Hughes Traded C3 Stock While In Possession of Material, Nonpublic Information.

Plaintiffs' Section 20A claim should also be dismissed because the TAC fails to plead that Baker Hughes was in possession of material, nonpublic information about C3 when it sold C3 stock. *In re Arrowhead Rsch. Corp. Sec. Litig.*, 2016 WL 6562066, at *11; *see also* 15 U.S.C. § 78t-1(a) (identifying the purchase or sale of "a security while in possession of material, nonpublic information" as an element of Section 20A). Nor do Plaintiffs plead a "strong inference" that Baker Hughes acted with scienter—i.e., the intent to deceive, manipulate, or defraud—with respect to any such information as required to state a Section 20A claim. *See In re Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th 1178, 1191 (9th Cir. 2024) ("In the insider trading context, a plaintiff must show … that the defendant acted with scienter."); *see also United States v. Smith*, 155 F.3d 1051, 1068 (9th Cir. 1998) ("This court has expressly held that 'scienter' is a necessary element of an insider trading violation.").

To plead possession of material non-public information, the TAC must "'allege specifically what information [a defendant] obtained, when and from whom he obtained it, and how he used it for his own advantage.'" *In re Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th at 1191 (quoting *Neubronner*

*v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). The TAC comes nowhere close. Plaintiffs make no specific allegations as to what Baker Hughes purportedly knew when it sold C3 stock. Instead, the TAC references an amorphous group of "20A Defendants" that all supposedly knew: (1) the non-specific "truth about C3's access to the Baker Hughes salesforce" (¶ 217), and (2) unidentified "adverse information concerning C3's true business and financial condition" (¶ 221). This lack of specificity regarding what material, nonpublic information Baker Hughes had, or how it obtained such information, defeats any claim of insider trading. *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1282–83 (N.D. Cal. 2019).

But even if these broad categories of supposed inside information were sufficiently detailed, the TAC still fails to plead a Section 20A violation because it lacks allegations establishing that Baker Hughes acted with scienter. As to "the truth of C3's access to Baker Hughes salesforce," the TAC does not allege that Baker Hughes would know that such information was non-public or material to C3's investors. *See Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017) (information is material if it significantly alters the total mix of information available to stockholders concerning their investment). As set forth above, the TAC does not allege even that Baker Hughes was aware of Siebel's statements about Baker Hughes salesforce. Without well-pled facts that Baker Hughes "intentionally misled the markets," the Section 20A claim fails. *In re Countrywide*, 588 F. Supp. 2d at 1203. As to information about C3's "true business and financial condition," the TAC does not allege what such information was, nor how Baker Hughes acted with fraudulent intent. Plaintiffs admit that C3 publicly disclosed financial and operating results on March 2, 2021 (¶ 148), shortly ***before*** Baker Hughes sold stock in April 2021. Plaintiffs do not claim that these financial results from March 2021 were inaccurate. *See Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1208 (N.D. Cal. 2008) (dismissing 20A claim where "Plaintiffs fail to identify any specific material nonpublic information in the possession of any Defendant at the time of a specific trade.").[7] Plaintiffs' Section 20A claim should be dismissed for this reason too.

---

[7] To the extent information about C3's "financial condition" relates to the salesforce reorganization in July and November 2021 (¶ 100) and the amendment of the Reseller Agreement in October 2021 (¶ 99), these events occurred months *after* Baker Hughes's alleged insider sales in April 2021. Baker Hughes could not trade on inside information that only existed after it sold stock in April 2021.

In an effort to satisfy the scienter element, Plaintiffs imply that Baker Hughes' stock sales were "suspicious." (¶¶ 137, 142). Stock sales by themselves can never satisfy the element of scienter. *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1069 (N.D. Cal. 2012). For "suspicious" sales to contribute to an inference of scienter, the "level of trading [must be] dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Id.* (internal quotation marks omitted). Plaintiffs allege **nothing** about Baker Hughes' prior history of trading in C3 stock. Nor is the amount of Baker Hughes sales—just 11% of its total holdings—probative of anything. *See, e.g.*, *In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1104–05 (N.D. Cal. 2006) ("Standing alone, the sale of almost 25% over a five month period is not suspicious.").[8] As this Court has already found, these "vague" and "thinly pled" allegations do not give rise to a strong inference of scienter. *See* ECF No. 154 at 37–38.

3.  Plaintiffs Fail to Allege That Any Plaintiff Traded Contemporaneously With Baker Hughes.

In any event, Plaintiffs do not have standing to maintain a Section 20A claim because they did not trade "contemporaneously" with Baker Hughes. Section 20A is structured to "ensure[] that only private parties who have traded with someone who had an unfair advantage will be able to maintain insider trading claims." *See Neubronner*, 6 F.3d at 670. Section 20A is designed to compensate shareholders who could in theory have purchased directly from insiders with material, nonpublic information. The contemporaneity element is "a proxy for the traditional requirement of contractual privity between plaintiffs and defendant." *See Buban*, 1994 WL 324093, at *3. "Since identifying the party in actual privity with the insider is virtually impossible in transactions occurring on an anonymous public market, the contemporaneousness standard was developed to give plaintiffs a more feasible avenue by which to sue insiders … While an actual trade between plaintiff and defendant need not be expressly shown, harm to the plaintiff is a necessary factor. ***Such harm may be found where it appears the plaintiff might, in fact, have traded with the defendant***." *Id*. at *3 (emphasis added).

In other words, the "harm" or "unfair advantage" addressed by Section 20A exists only where it is possible that the plaintiff traded directly with the defendant. Accordingly, courts in the Ninth

---

[8] Moreover, Baker Hughes' April 22, 2021 non-discretionary stock sale under a Rule 10b5-1 plan (¶¶ 130, 142) "negate[s] an inference of scienter." *City of Royal Oak Ret. Sys.*, 880 F. Supp. 2d at 1069.

Circuit generally require a plaintiff to have purchased shares on the ***same day*** or the day after the insider sales. *See Buban*, 1994 WL 324093, at *2–4 (trades separated by three days not contemporaneous). And the overwhelming majority of "courts have consistently held that shares purchased ***below*** the defendant's sale price cannot satisfy the contemporaneity requirement, because it is impossible that those trades occurred with defendant at an unfair advantage." *See SEB Inv. Mgmt. AB*, 485 F. Supp. 3d at 1136 (citing cases); *Buban*, 1994 WL 324093, at *3 (finding it was "manifest that plaintiff could not have traded with defendant" where "the purchasers of defendant's shares paid $1.50 more than did plaintiff" making it "clear that plaintiff could not have traded with defendant"). Likewise, trades predating the alleged insider's sale cannot meet the contemporaneous requirement because it is "impossible" that a plaintiff traded with the insider for those sales. *See SEB Inv. Mgmt. AB*, 485 F. Supp. 3d at 1136; *Xiaojiao Lu*, 417 F. Supp. 3d at 1283 (same).

Plaintiffs' Section 20A claim must be dismissed because no Plaintiff traded contemporaneously with Baker Hughes. Baker Hughes sold C3 stock on just three days: April 7, April 9, and April 22, 2021. ¶¶ 130, 132. Plaintiffs' own chart (¶ 132) shows that no Plaintiff purchased shares on those dates. And in every case, Plaintiffs purchased their shares ***for a lower price than*** the price at which Baker Hughes sold, meaning that Plaintiffs did not trade with Baker Hughes, much less at an unfair disadvantage. *See SEB Inv. Mgmt. AB*, 485 F. Supp. 3d at 1136.

## IV. CONCLUSION

For the foregoing reasons, all of Plaintiffs' claims against Baker Hughes in the TAC fail once again and should be dismissed with prejudice.

Dated: March 25, 2025

GIBSON, DUNN & CRUTCHER LLP

By: _____
Jessica Valenzuela

*Attorneys for Defendant Baker Hughes Company*