Harry A. Olivar, Jr. (Cal. Bar No. 143089)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
harryolivar@quinnemanuel.com

Michael B. Carlinsky (admitted *pro hac vice*)
David Myre (Cal. Bar No. 304600)
Jesse Bernstein (admitted *pro hac vice*)
Jacob J. Waldman (admitted *pro hac vice*)
Leigha Empson (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
295 Fifth Avenue
New York, NY 10016
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
davidmyre@quinnemanuel.com
jessebernstein@quinnemanuel.com
jacobwaldman@quinnemanuel.com
leighaempson@quinnemanuel.com

*Attorneys for the C3 Defendants*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE RECKSTIN FAMILY TRUST, *et al.*, <br><br> Plaintiff, <br><br> vs. <br><br> C3.AI, INC., *et al.*, <br><br> Defendants. | Case No. 4:22-cv-01413-HSG <br><br> **THE C3 DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** <br><br> Judge: Hon. Haywood S. Gilliam, Jr. <br> Courtroom: 2, 4th Floor |

## TABLE OF CONTENTS

**Page**

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

ARGUMENT ...................................................................................................................................... 2

I.    PLAINTIFFS HAVE FAILED TO PLEAD SECURITIES ACT CLAIMS ........................ 2

    A.    Plaintiffs Do Not Plead An Actionable Misstatement Or Omission ......................... 2

    B.    Negative Causation Requires Dismissal .................................................................... 4

II.   PLAINTIFFS HAVE FAILED TO PLEAD EXCHANGE ACT CLAIMS ......................... 5

    A.    Plaintiffs' New Allegations Demonstrate There Was No Material
        Misstatement ............................................................................................................... 5

    B.    Plaintiffs Do Not Plead A Strong Inference Of Scienter .......................................... 6

        1.    Plaintiffs Have Failed To Plead Intent To Defraud........................................ 6

        2.    Plaintiffs Have Not Adequately Alleged Motive ...................................... 11

    C.    Plaintiffs Have Failed To Plead Loss Causation...................................................... 13

    D.    Plaintiffs Have Failed To Plead A Section 20A Claim............................................ 14

III.  PLAINTIFFS HAVE FAILED TO PLEAD CONTROL PERSON LIABILITY .............. 15

CONCLUSION ................................................................................................................................ 15

THE C3 DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE TAC

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Alfasigma USA, Inc. v. First Databank, Inc.*,
525 F. Supp. 3d 1088 (N.D. Cal. 2021) ............................................................................... 2

*Atlas v. Accredited Home Lenders Holding Co.*,
556 F. Supp. 2d 1142 (S.D. Cal. 2008) ............................................................................. 15

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
566 F. App'x 93 (2d Cir. 2014) ........................................................................................... 6

*In re BofI Holding, Inc. Sec. Litig.*,
2017 WL 2257980 (S.D. Cal. May 23, 2017) ................................................................... 15

*Brown v. Ambow Educ. Holding Ltd.*,
2014 WL 523166 (C.D. Cal. Feb. 6, 2014) ......................................................................... 5

*Burns v. UP Fintech Holding Ltd.*,
2025 WL 936539 (S.D.N.Y. Mar. 27, 2025) ..................................................................... 10

*Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*,
964 F. Supp. 2d 1128 (N.D. Cal. 2013) ............................................................................ 14

*Chu v. Sabratek Corp.*,
100 F. Supp. 2d 827 (N.D. Ill. 2000) ................................................................................ 11

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ............................................................................................... 8

*City of Pontiac Gen. Emps. Ret. Sys. v. First Solar Inc.*,
2023 WL 155861 (D. Ariz. Jan. 11, 2023) ....................................................................... 13

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) .................................................................... 7

*In re Countrywide Fin. Corp. Deriv. Litig.*,
554 F. Supp. 2d 1044 (C.D. Cal. 2008) ............................................................................ 12

*Curry v. Yelp Inc.*,
2015 WL 7454137 (N.D. Cal. Nov. 24, 2015) .................................................................... 6

*Espy v. J2 Global, Inc.*,
99 F.4th 527 (9th Cir. 2024) ....................................................................................... 1, 2, 3

*Evanston Police Pension Fund v. McKesson Corp.*,
411 F. Supp. 3d 580 (N.D. Cal. 2019) .......................................................................... 9, 15

*In re Finjan Holdings, Inc.*,
   58 F.4th 1048 (9th Cir. 2023)................................................................................................... 3

*Garbini v. Prot. One, Inc.*,
   49 F. App'x 169 (9th Cir. 2002)............................................................................................... 5

*Gasner v. Bd. of Supervisors*,
   103 F.3d 351 (4th Cir. 1996)..................................................................................................... 6

*Geinko v. Padda*,
   2002 WL 276236 (N.D. Ill. Feb. 27, 2002)............................................................................... 9

*Glazer Cap. Mgmt., LP v. Magistri*,
   549 F.3d 736 (9th Cir. 2008)..................................................................................................... 7

*Golden v. Google LLC*,
   2023 WL 5154513 (N.D. Cal. Aug. 10, 2023)......................................................................... 3

*Hampton v. Aqua Metals, Inc.*,
   2020 WL 6710096 (N.D. Cal. Nov. 16, 2020)......................................................................... 11

*Hildes v. Arthur Andersen LLP*,
   734 F.3d 854 (9th Cir. 2013)..................................................................................................... 5

*In re Intuitive Surgical Sec. Litig.*,
   2017 WL 4355072 (N.D. Cal. Sept. 29, 2017)......................................................................... 9

*In re Intuitive Surgical Sec. Litig.*,
   65 F. Supp. 3d 821 (N.D. Cal. 2014) ....................................................................................... 12

*Johns v. Bayer Corp.*,
   2010 WL 2573493 (S.D. Cal. June 24, 2010) ......................................................................... 9

*Lamontagne v. Tesla, Inc.*,
   2024 WL 4353010 (N.D. Cal. Sept. 30, 2024).......................................................................... 12

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002).................................................................................................. 10

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
   2011 WL 4389689 (C.D. Cal. May 5, 2011)............................................................................ 9

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008).................................................................................................. 12

*Mulderrig v. Amyris, Inc.*,
   492 F. Supp. 3d 999 (N.D. Cal. 2020) .............................................................................. 7, 8

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004).................................................................................................. 12

THE C3 DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE TAC

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
    730 F.3d 1111 (9th Cir. 2013) .................................................................................... 14

*In re Optionable Sec. Litig.*,
    577 F. Supp. 2d 681 (S.D.N.Y. 2008) ....................................................................... 10

*Osher v. JNI Corp.*,
    256 F. Supp. 2d 1144 (S.D. Cal. 2003) ..................................................................... 12

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) .................................................................................... 10

*Rok v. Identiv, Inc.*,
    2017 WL 35496 (N.D. Cal. Jan. 4, 2017), *aff'd sub nom. Cunningham v.
    Identiv, Inc.*, 716 F. App'x 663 (9th Cir. 2018) .......................................................... 4

*SEB Inv.t Mgmt. AB v. Align Tech., Inc.*,
    485 F. Supp. 3d 1113 (N.D. Cal. 2020) ..................................................................... 15

*In re Shoretel Inc., Sec. Litig.*,
    2009 WL 248326 (N.D. Cal. Feb. 2, 2009) .................................................................. 4

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ........................................................................................ 4

*Thomas v. Magnachip Semiconductor Corp.*,
    167 F. Supp. 3d 1029 (N.D. Cal. 2016) ..................................................................... 14

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ......................................................................... 7

*In re VeriFone Holdings, Inc. Sec. Litig.*,
    704 F.3d 694 (9th Cir. 2012) ........................................................................................ 9

*Wenger v. Lumisys, Inc.*,
    2 F. Supp. 2d 1231 (N.D. Cal. 1998) ........................................................................ 12

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994) .................................................................................. 5, 13

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ............................................................................ 3, 10, 15

**Rules/Statutes**

17 C.F.R. § 240.10b5-1(c)(1)(i)(B) ................................................................................... 13

Federal Rule of Civil Procedure 8 ....................................................................................... 2

Federal Rule of Civil Procedure 9(b) .................................................................................. 2

THE C3 DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE TAC

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs' Third Amended Complaint ("TAC") has the same fatal flaws that led to dismissal of the Exchange Act claims and introduces flaws that doom the Securities Act claims as well.

*First*, Plaintiffs' Section 11 claim fails on two elements. As the Ninth Circuit recently confirmed in *Espy v. J2 Global, Inc.*, 99 F.4th 527 (9th Cir. 2024), Plaintiffs' allegations as to the single remaining statement at issue improperly rely on hearsay from a confidential witness who lacks personal knowledge. Plaintiffs' claim is further debunked by the facts set forth in C3's audited financial statements in its 2022 Form 10-K, the accuracy of which Plaintiffs do not dispute and of which this Court can and should take judicial notice. Further, Plaintiffs now plead that investors' alleged losses were caused by corrective disclosures entirely unrelated to the remaining alleged misstatement, and therefore negative causation is clear on the face of the TAC.

*Second*, Plaintiffs fail to allege material misstatements. Plaintiffs argue—based on new allegations that the JVA required Baker Hughes to commit a minimum number of salespeople to the parties' Joint Venture—that this minimum commitment was sufficient to inform Siebel that not all 12,000 Baker Hughes salespeople were selling C3 products. But the JVA has been public since the beginning of the Class Period, which means it informed investors of the same thing, and therefore Siebel's unscripted statements about the number of Baker Hughes salespeople were immaterial hyperbole.

*Third*, Plaintiffs' limited additional allegations are insufficient to remedy Plaintiffs' scienter deficiency. The Opposition effectively concedes that Plaintiffs failed to verify allegations concerning a single sentence contained within an entire C3 board package that were lifted nearly verbatim from a separate complaint in a separate litigation. In any event, the single sentence that Plaintiffs rely on is not the type of contrary internal information necessary to plead scienter. Nor does Siebel's signature on the JVA, which contained Baker Hughes' minimum commitment requirement, demonstrate his intent to later mislead investors with statements regarding the size of the Baker Hughes joint venture. The Opposition's attempt to cobble together "circumstantial" scienter allegations cannot fill the gaps in the prior pleading, because each such allegation is the type routinely rejected by courts. And Plaintiffs' allegations about stock sales fail to plead motive

(which by itself would be insufficient in any event), because Plaintiffs cannot allege prior trading history against which to compare Siebel's Class Period trading.

*Fourth*, Plaintiffs cannot adequately allege loss causation with the now-glaring disconnect between the remaining misstatements regarding the number of Baker Hughes salespeople selling C3 products and either the corrective disclosure concerning the structure of the Joint Venture or "disappointing" financial results.

*Fifth*, Plaintiffs ignore that none of their allegedly "contemporaneous" sales supports their 20A cause of action, either because the Plaintiff's purchase price was *lower* than the corresponding sale, or the sale took place pursuant to a 10b5-1 plan, which defeats scienter.

*Finally*, Plaintiffs simply cannot plead Abbo was a control person by alleging his name was on a C3 patent and that he served as CEO *ten years* before the Class Period.

The defects in the TAC compound the prior ones and call for dismissal with prejudice.

## ARGUMENT

### I.    PLAINTIFFS HAVE FAILED TO PLEAD SECURITIES ACT CLAIMS

The Opposition does not dispute that Plaintiffs' Section 11 claim sounds in fraud, subjecting it to Rule 9(b)'s heightened pleading standard.  Mot. 8.  Regardless, Plaintiffs fail to plead that the single remaining alleged misstatement supporting this cause of action was materially misleading even under Rule 8, much less the heightened standard of Rule 9(b).

#### A.    Plaintiffs Do Not Plead An Actionable Misstatement Or Omission

Plaintiffs have failed to plead that C3's statement that it "recognized as revenue . . . the value of deals brought in by Baker Hughes through the reseller arrangement" in the Fiscal Year ending April 30, 2020 ("Fiscal Year 2020") was false.  Mot. 8-10.  Plaintiffs respond that the Court previously found this statement was adequately pleaded.  But the Court noted that allegations about FE-1—the sole basis for Plaintiffs' falsity claim—were "few," and that pleading sufficiency was "a close question."  2024 Order at 19.  The Ninth Circuit's recent decision in *Espy v. J2 Global, Inc.*, 99 F.4th 527 (9th Cir. 2024), and C3's audited financial statements in its 2022 Form 10-K ("2022 10-K") now resolve that "close question" in Defendants' favor.  *See Alfasigma USA, Inc. v. First Databank, Inc.*, 525 F. Supp. 3d 1088, 1095 (N.D. Cal. 2021) (Gilliam, J.) (Court can revisit rulings).

*First*, Plaintiffs continue to rely entirely on FE-1, who allegedly heard *someone else* say that Baker Hughes had brought in no deals during Fiscal Year 2020.  ¶ 56.  But *Espy* rejected anonymous former employee allegations that "relie[d] on secondhand information" where the former employee did not have "personal knowledge" of the facts alleged.  99 F.4th at 537; *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996-1000 (9th Cir. 2009) (confidential witnesses "report[ed] only unreliable hearsay").  "Secondhand information," however, is all FE-1 offers here.

Plaintiffs claim that *Espy* merely rejected a CW's "opinions" of a defendant's management practices.  Opp. 11.  In fact, *Espy* rejected the former employee's allegations not only because some allegations were opinions, but because, as here, they relied on "secondhand information," particularly as to "the extent of [a defendant's] due diligence," *Espy*, 99 F.4th at 537, which was a matter of fact, not opinion.  *See also* Mot. 9-10 (citing consistent authority).

*Second*, the audited, unchallenged financial statements in the 2022 10-K include a line item showing Baker Hughes did, in fact, bring in deals for Fiscal Year 2020.  Mot. 10.  Plaintiffs claim the Court had already decided the 2020 10-K did not contradict FE-1's allegations.  Opp. 10-11.  In fact, the 2024 Order does not refer to the 2022 10-K and declined to draw inferences based on the Registration Statement.  2024 Order at 19-20.  The Court can thus examine Statement #3 in light of the 2022 10-K, which unlike the Registration Statement, requires no inferences, but instead includes a separate line item showing the monetary value of the deals brought in by Baker Hughes.  Mot. 10.

Plaintiffs argue that, regardless, the 2022 10-K cannot contradict "well-pleaded" allegations in the TAC.  Opp. 12-13.  But FE-1's hearsay allegations are *not* well-pleaded, particularly in light of *Espy*.  And even if they were, the Ninth Circuit elevates a plaintiff's allegations over a judicially noticeable document only where "***specific facts*** alleged in the complaint contradict specific facts" in that document.  *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023) (where "a general conclusion in a complaint contradicts specific facts retold in a document . . . subject to judicial notice, those specific facts are controlling.").  By contrast, Plaintiffs here make only vague, general, hearsay allegations, while the authentic, *audited*, and unchallenged 2022 10-K includes a specific line item providing the exact dollar value of Baker Hughes' deals in Fiscal Year 2020.  *See also Golden v. Google LLC*, 2023 WL 5154513, at *2 (N.D. Cal. Aug. 10, 2023) (Gilliam, J.) ("The

THE C3 DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE TAC

Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.") (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).  And there is no question that the 2022 10-K is judicially noticeable.  *See* ECF No. 201-1 (Request for Judicial Notice) at 3-4.

### B.      Negative Causation Requires Dismissal

As the Opposition concedes, the TAC does not identify any specific disclosure that "corrected" the Registration Statement's supposedly false claim that Baker Hughes brought in deals during Fiscal Year 2020.  Rather, Plaintiffs allege only a December 1, 2021 statement by Siebel about reorganizing the Joint Venture, which has nothing to do with Baker Hughes' deal production in Fiscal Year 2020 and so "cannot rationally be inferred as disclosing the alleged misstatement[.]" *See In re Shoretel Inc., Sec. Litig.*, 2009 WL 248326, at \*6 (N.D. Cal. Feb. 2, 2009) (no Section 11 claim where corrective disclosure did not "disclos[e] the alleged misstatements or misleading omissions").  And the TAC establishes negative causation on its face because Plaintiffs plead that the *only* cause of the decline in C3 stock price is the above, unrelated disclosure.  Mot. 11.[1]

Plaintiffs argue that the December 1, 2021 corrective disclosure encompasses the alleged misstatement because the disclosure "touches upon" the Joint Venture, and because C3 allegedly restructured the Joint Venture due to poor sales.  Opp. 13-14.  But the alleged misstatement in the Registration Statement—that C3 "recognized . . . revenue [from] deals brought in by Baker Hughes"—is not a general statement about the viability of the Joint Venture.  ¶ 66.  Nor does it "touch upon" the alleged corrective disclosure, which, contrary to the Opposition's expansive characterization, is pleaded only as a disclosure "that C3 did not have full access and assistance of Baker Hughes' 12,000-person salesforce."  ¶ 159; *see Rok v. Identiv, Inc.*, 2017 WL 35496, at \*20 (N.D. Cal. Jan. 4, 2017) (disclosure reclassifying certain expenses as executive compensation did not "satisfy the loss causation requirement" because the disclosure did not show that executive compensation statements were false), *aff'd sub nom. Cunningham v. Identiv, Inc.*, 716 F. App'x 663

---

[1] Plaintiffs do not dispute their failure to allege a link between the sole remaining challenged statement in the Registration Statement and C3's March 2021 and September 2021 disclosures.

THE C3 DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE TAC

(9th Cir. 2018).[2]  The alleged December 1, 2021 corrective disclosure "do[es] not reasonably reveal *anything* about the purported misrepresentation[]" that Baker Hughes brought in deals for Fiscal Year 2020.  *Brown v. Ambow Educ. Holding Ltd.*, 2014 WL 523166, at *15 (C.D. Cal. Feb. 6, 2014) (emphasis added).  The TAC negates loss causation, and the Section 11 claim should be dismissed.

## II.      PLAINTIFFS HAVE FAILED TO PLEAD EXCHANGE ACT CLAIMS

### A.      Plaintiffs' New Allegations Demonstrate There Was No Material Misstatement

Plaintiffs' defense of their Exchange Act claims relies in large part on the finding in the 2024 Opinion that Plaintiffs adequately alleged Siebel made misleading statements about the number of Baker Hughes salespeople committed to the Joint Venture.  Unlike the FAC that was the subject of the 2024 Opinion, however, the TAC newly alleges that the JVA—which had been public since the beginning of the Class Period—required Baker Hughes to commit a minimum number of salespeople to the Joint Venture.  *See, e.g.*, ¶¶ 20, 171; Mot. 12-13.  And Plaintiffs argue that this minimum commitment requirement, *on its own*, shows that Baker Hughes had not committed its entire 12,000-person salesforce.  Opp. 2 ("Given that Siebel knew that Baker Hughes had only committed to a minimum number of employees . . . by definition Siebel knew that only a subset of (i.e. ***not*** 'all 12,000') Baker Hughes employees were selling C3 products . . . ."); *id.* at 1 ("The TAC also pleads that Siebel, himself, signed the [JVA] before the Class Period, which disclosed that only a minimum number, or in other words a subset, of Baker Hughes 12,000 employees are actually at C3's disposal.") (citing ¶ 171).  Plaintiffs' allegations and argument here demonstrate why "it would be obvious that Siebel's statements that Baker Hughes' full sales team was offering C3 products could not have been literally true."  *See* 2024 Order at 28.

Plaintiffs offer two responses concerning the new allegations, both of which fail.  *First*,

---

[2] Plaintiffs' authority (Opp. 13) involved far closer connections between misstatement and disclosure.  *See Garbini v. Prot. One, Inc.*, 49 F. App'x 169, 170 (9th Cir. 2002) (allegations of "improper amortization of customer accounts and the goodwill associated with them" caused the defendant to underreport net losses, and disclosing revised net losses caused the stock price drop); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1422-23 (9th Cir. 1994) (corrective disclosures concerned financial issues, which were directly related to alleged accounting errors); *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 856 (9th Cir. 2013) (not addressing "corrective disclosures" at all, but misrepresentations on which plaintiff relied to enter into a merger agreement).

Plaintiffs argue that the JVA's public content cannot "transform" Siebel's statements into puffery. Opp. 15-16. Plaintiffs miss the point: Siebel's statements have not been "transform[ed]" into puffery; rather, in the context of the total mix of information in the market, including the JVA, Siebel's statements were not materially misleading because no investor would have understood Siebel to be claiming the entirety of Baker Hughes' salesforce was selling C3 products. *See, e.g.*, *Curry v. Yelp Inc.*, 2015 WL 7454137, at *6 (N.D. Cal. Nov. 24, 2015) (statement regarding authenticity of reviews not misleading in "total mix" of information available to investors through disclosures); *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 358-59 (4th Cir. 1996) (misrepresentations immaterial absent "a substantial likelihood . . . that the disclosure of the allegedly false facts . . . would have been viewed by a reasonable investor as having significantly altered the total mix of information made available").

*Second*, Plaintiffs argue that, because the specific minimum commitment in the JVA was redacted, the public version of the JVA was insufficient to make Siebel's statements not materially misleading. Opp. 16. But, as noted above, Plaintiffs themselves argue that the mere fact of a minimum commitment—regardless of the specific threshold—was sufficient to indicate Baker Hughes had not committed its entire salesforce to selling C3 products. And there is no dispute that this information had been public since the beginning of the Class Period.

### B.    Plaintiffs Do Not Plead A Strong Inference Of Scienter

Plaintiffs' emphasis on scattered scienter allegations misses the forest for the trees: When all public information—including the publicly available JVA—and the context of Siebel's statements are considered, the most compelling inference is that Siebel did not intend to mislead investors regarding the Baker Hughes salesforce. Mot. 24-25; *In re Bank of Am. AIG Disclosure Sec. Litig.*, 566 F. App'x 93, 94 (2d Cir. 2014) (affirming dismissal for lack of scienter where more plausible inference was defendants "did not think there was any need for public disclosure" in light of, among other things, existing disclosures). The only compelling inference is that Siebel's unscripted statements did not, and were not intended to, deceive investors.

### 1.    Plaintiffs Have Failed To Plead Intent To Defraud

Taken as a whole, the TAC does not plead a strong inference that Siebel or C3 intended to

defraud investors. Mot. 14-21. The Opposition falls back on a theory that Siebel acted recklessly and makes defensive assurances that the Court may still find Plaintiffs' "vague or ambiguous" allegations sufficient. Opp. 16-17. But even recklessness—which Plaintiffs do not plead—requires, at a minimum, "specific facts indicating no less than a degree of recklessness that *strongly suggests actual intent.*" *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 743 (9th Cir. 2008) (emphasis added). Plaintiffs do not clear that bar.

**Pankow *Derivative Allegations:*** Plaintiffs borrowed, from a complaint in a separate action, the allegation that a May 2021 package of materials for a C3 board meeting included a PowerPoint with a slide that included one sentence mentioning a goal to "[d]rive [Baker Hughes] to onboard 10 qualified sales executives in direct quota carrying roles by July 31." ¶ 174; Opp. 18-21. The pasted-in allegations cannot give rise to a strong inference of scienter here. Mot. 17-19.

*First*, Plaintiffs jump from the mere existence of the sentence quoted above to the contention that "Siebel *discussed* the size of Baker Hughes' salesforce." ¶ 174 (emphasis added). But neither the *Pankow* complaint nor the TAC provides *facts* about what the directors actually discussed (at a board meeting or anywhere else), much less particularized allegations that the directors discussed the specific sentence identified in the TAC. Plaintiffs' contention that Siebel (or the board) *must have* read, discussed, or even been aware of a specific sentence based on nothing more than Siebel having a large stack of papers is pure speculation and does not suffice to plead scienter. *See City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *19 (N.D. Cal. Dec. 17, 2019) (no scienter where plaintiffs failed to plead that defendants had considered document at issue); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 816 (N.D. Cal. 2019) ("Scienter cannot be established where—as here—the [complaint] fails to allege that any of the Individual Defendants even read or heard of the internal reports.").[3] Plaintiffs' authority (Opp. 21) is distinguishable—indeed, it proves Defendants' point—as it involved allegations that defendants *actually reviewed* the contrary information allegedly in their possession. *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d

---

[3] Puzzlingly, Plaintiffs try to distinguish *City of Sunrise* (Opp. 20 n.10) by claiming FE-1 had personal knowledge of the relevant events. But the TAC never claims FE-1 had knowledge of, nor *attended*, the May 2021 board meeting, or had knowledge of the size of Baker Hughes' salesforce.

999, 1026 (N.D. Cal. 2020) (defendants "were themselves reviewing the revenue numbers monthly or weekly"). In fact, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017), affirmed *dismissal* for failure to plead scienter because, although defendants allegedly had access to certain data, "[p]laintiff does not allege that Prescott or Arola *personally accessed the data room*[.]" *Id.* at 620 (emphasis added).

Plaintiffs argue that "Defendants do not challenge the existence of the May 25, 2021 PowerPoint presentation or claim that Plaintiffs have misstated what was written" and "do not assert that Siebel was never provided the PowerPoint slide." Opp. 2. These are red herrings. Of course Defendants do not argue Plaintiffs' allegations are false at this stage, when allegations are taken as true. But it remains Plaintiffs' burden to plead with particularity that Siebel was *aware* of the purported contrary facts in the document identified in the *Pankow* complaint, and Plaintiffs do not.

*Second*, Plaintiffs argue that a goal to onboard "10 qualified sales executives" would have alerted Siebel that not all 12,000 Baker Hughes salespeople were selling C3 products because, if they had been, hiring just 10 more salespeople would not have been addressed by C3's board. Opp. 18-19. Not only is this speculation and thus insufficient on its face to plead scienter, but it relies on substituting the word "salespeople" for the word "executives." A statement regarding onboarding *executives* says nothing about the number of *salespeople* selling C3 products. Mot. 19. Plaintiffs also claim that "executives" would not be "quota carrying" and that it would take longer than two months to hire them. Opp. 21. But Plaintiffs cannot engage in rank, self-serving conjecture and speculation and argue they have created a factual issue appropriate for resolution later in the case (Opp. 21); Plaintiffs must first provide particularized, non-speculative allegations to satisfy the PSLRA, which they have failed to do. *See* Mot. 13-14. Plaintiffs' speculation shows only that the sentence at issue is *not* the type of contrary internal information—such as specific financial figures—that can be used to plead with particularity that public statements were knowingly (or recklessly) false. *See, e.g. Mulderrig*, 492 F. Supp. 3d at 1026 (defendants personally reviewed "revenue numbers monthly or weekly") (cited at Opp. 21).

*Third*, this allegation fails for the independent reason that Plaintiffs cannot lift it from a separate complaint without a reasonable inquiry. Mot. 17. Plaintiffs claim they fulfilled this

obligation because they "discuss[ed] the complaint" with Pankow's counsel (Opp. 19), who "stand by" it (¶ 174). But Plaintiffs do not allege *what* they discussed, or even that they discussed the specific allegation they copied into the TAC. Indeed, their "inquiry" was meaningless, because obviously plaintiffs pursuing another action "stand by" their complaint. Plaintiffs' "investigation" is insufficient to support their copied allegations. *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *20 (C.D. Cal. May 5, 2011); Mot. 17-18 (collecting authority).

Plaintiffs' authority itself confirms the inadequacy of their "investigation." In *Johns v. Bayer Corp.*, 2010 WL 2573493 (S.D. Cal. June 24, 2010), plaintiffs filed a declaration detailing their investigative steps, including the filing attorney's independent review of certain studies cited in the complaint. *Id.* at *1.[4] By contrast, Plaintiffs here do not claim even to have seen the documents cited in the *Pankow* complaint, nor to have had substantive conversations with Pankow's counsel, much less about the allegations they copied. *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 589-93 (N.D. Cal. 2019) and *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 706–07 (9th Cir. 2012) similarly offer no support, as plaintiffs there borrowed allegations from complaints filed by government agencies after substantial investigations. And in *In re Intuitive Surgical Sec. Litig.*, 2017 WL 4355072 (N.D. Cal. Sept. 29, 2017), plaintiffs relied on *admissions* in summary judgment motions, *not* allegations in a complaint.[5]

***Baker Hughes JVA:*** Plaintiffs' allegations that Siebel knew he was misleading the market because he executed the JVA, which required Baker Hughes to commit a minimum number of salespeople to the Joint Venture, fail from multiple angles. Mot. 14-16. Plaintiffs continue to argue that the JVA "contained specific information on the size . . . of the JVA." Opp. 22. Not so. The JVA laid out only a minimum commitment, it did not inform Siebel of the actual number of Baker Hughes salespeople selling C3 products. Mot. 15. Lacking facts, Plaintiffs again try to shift their

---

[4] *Bayer* also explains that "relying on other complaints would create a loophole in Rule 11 whereby 'two plaintiffs could file separate actions each relying on the allegations in the other's complaint and both would state a claim for fraud[.]'" *Id.* (citing *Geinko v. Padda*, 2002 WL 276236, at *6 n.8 (N.D. Ill. Feb. 27, 2002)).

[5] *In re Intuitive Surgical Sec. Litig.*, Second Amended Class Action Complaint for Violations of the Federal Securities Laws, No. 5:13-cv-01920-EJD, ECF No. 213 ¶ 210 (N.D. Cal. Jan. 26, 2017).

burden by arguing *Defendants* must show that Siebel had access to information showing Baker Hughes was exceeding its minimum commitment. Opp. 22-23. In fact, it is Plaintiffs' burden to allege that Siebel possessed information that was *contrary* to his public statements, which their minimal allegations about the JVA do not do. Nor can they plead scienter with the assumption, contrary to well-settled authority, that Siebel's signature is sufficient to plead, for purposes of scienter, his awareness of specific line items in the JVA. *See, e.g.*, *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002).

**Plaintiffs' "Circumstantial" Allegations:** Recognizing the weakness of their grab-bag of scienter allegations, Plaintiffs claim that combining them somehow suffices. Opp. 23-24. But quantity cannot compensate for lack of quality where each allegation—on its own or combined—is the type routinely rejected by courts. Mot. 17, 19-20. To start, the Court has already rejected (2024 Order at 32) allegations of "Siebel's direct participation" in day-to-day management, as well as assertions that he "attended weekly sales calls" where he received unidentified "reports and data." Opp. 23-24. And the Opposition ignores entirely (Mot. 19-20) that the CNBC Article asserting Siebel's "intense oversight" (Opp. 23) post-dates the Class Period, is not particularized as to what Siebel oversaw, and relies on allegations about anonymous, purported former employees that lack "sufficient particularity to establish their reliability and personal knowledge." *Zucco*, 552 F.3d at 995; *Burns v. UP Fintech Holding Ltd.*, 2025 WL 936539, at *7 (S.D.N.Y. Mar. 27, 2025) ("[T]he articles provide no basis for believing that the unidentified source is likely to have known the relevant facts.") (quoting *In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 690 (S.D.N.Y. 2008)).

**Core Operations:** The TAC still fails to plead this scienter theory, which is "not easy" even under the best of circumstances (let alone here). Mot. 20-21 (quoting *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014)). Notably, the Court already declined to accept this theory on the basis of allegations concerning Baker Hughes' importance to C3. 2024 Order at 34; *see also* Opp. 25. And the TAC still fails to allege "that Siebel admitted any involvement with the minutiae of Baker Hughes' C3-focused salesforce." 2024 Order at 34; Mot. 21. Plaintiffs point to the *Pankow* allegations and the fact that Siebel signed the JVA (Opp. 26), but those do not suffice for the reasons above (*supra* at 7-10) and are not "admissions"

of involvement in the business minutiae. Mot. 21. Finally, Plaintiffs concede that the TAC "does not contain witness statements that Siebel was specifically involved in producing pertinent false reports." Mot. 21 (quoting 2024 Order at 34). The facts alleged simply do not provide context in which a core operations theory of scienter can survive.

## 2. Plaintiffs Have Not Adequately Alleged Motive

Plaintiffs also still fail to plead any motive to commit fraud. Mot. 21-24. Continuing to rely on stock sales, Plaintiffs argue they have overcome the 2024 Opinion by alleging that (i) Siebel's C3 stock sales deviated from his history of trades in the stock of *other companies*; and (ii) Siebel sold a significant percentage of his C3 stock. Opp. 27-29. These allegations likewise fail.

*First*, the Motion made clear that Plaintiffs' theory concerning trading in *other* companies is completely unsupported by logic, much less actual law. Mot. 22. Undeterred, the Opposition cites cases completely out of context (or simply misstates their findings). Plaintiffs cite (Opp. 29) *Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at *16 (N.D. Cal. Nov. 16, 2020) for the proposition that they "need only plead 'a meaningful trading history for purposes of comparison.'" But *Hampton* itself is plainly discussing trading patterns around a *single stock* and found that the "absence of sales . . . contradict[ed] any inference of scienter," and there is no indication that case or the quoted statement endorses Plaintiffs' authority-free theory. Plaintiffs also mischaracterize *Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827 (N.D. Ill. 2000), claiming it holds that "where plaintiffs, 'through no fault of their own, cannot show that the individual defendants' stock sales were drastically out of line with prior sales' because of a lock-up, [the] complaint adequately alleged scienter." Opp. 29 (quoting *Chu*, 100 F. Supp. 2d at 841). This, too, is completely wrong: *Chu* held the challenged stock sales *did not* support an inference of scienter, and, again, nowhere endorses Plaintiffs' theory that trading history in other companies' stock is relevant. *Id*. at 841-42.

*Second*, as the C3 Defendants' Motion demonstrated, Siebel's stock sales, made after the lock-up period expired and well before the alleged corrective disclosure, were not suspiciously timed. Mot. 23. Plaintiffs substitute rhetoric for facts, asserting "Siebel rushed as fast as he could to sell his C3 shares and stopped all trading right before the truth was revealed." Opp. 28. In reality, Siebel's last non-10b5–1 sale occurred on June 10, 2021—more than *five months* before the

December 1, 2021 alleged corrective disclosure. ¶¶ 130, 158-59; *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1251 (N.D. Cal. 1998) (sales did not "appear unusual" when they did not occur "at suspicious times, such as immediately before a negative earnings announcement").[6]

Plaintiffs' arguments regarding Siebel's "convoluted" lock-up arrangement (Opp. 28-29) also miss the mark; in sum, Plaintiffs allege that Siebel engaged in the common practice of selling a portion of his equity after the lock-up period expired. Mot. 23. Plaintiffs do not actually explain why the conditions of the lock-up period raise any inference of scienter. *Id.* If anything, the very existence of a lock-up period **negates** such an inference. *See Osher v. JNI Corp.*, 256 F. Supp. 2d 1144, 1165 (S.D. Cal. 2003) (it is unclear "why defendants—if they were so eager to rid themselves of [] stock—would have entered into the lock-up agreements in the first place").

*Third*, Plaintiffs cannot allege scienter by pointing to the size of Siebel's stock sales. Siebel's holdings remained relatively stable during the Class Period. Mot. 23 n.17. And, because the timing of the sales was not suspicious, their size does not raise an inference of scienter. *Lamontagne v. Tesla, Inc.*, 2024 WL 4353010, at *15 (N.D. Cal. Sept. 30, 2024) (sale of 44% of holdings not suspicious where sales "were not linked to any purported misstatement or corrective disclosure"). Indeed, the sales in Plaintiffs' authorities were suspicious for reasons beyond mere percentage of stock sold. *See Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004) ("[I]n his first stock sales in five years, [defendant] sold more than twenty-nine million shares of Oracle stock for almost $900 million" approximately "one month prior to the March 1 report of lower-than-expected sales"); *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1068 (C.D. Cal. 2008) (defendant "actively amended and modified his 10b5–1 plans," including to "double the number of shares" on the "date on which Countrywide stock reached an all time high").

*Finally*, as Plaintiffs themselves plead, many alleged sales were made under Rule 10b5-1 plans, which prevent a seller from utilizing inside information. Mot. 23-24; *see also Metzler Inv.*

---

[6] *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821 (N.D. Cal. 2014) is inapposite, as defendants there allegedly sold stock immediately before announcing a major change to the company's reporting practices, and plaintiff alleged that defendants' "trading practices were inconsistent with past history." *Id.* at 838-39. Plaintiffs here cannot allege the same.

*GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 n.11 (9th Cir. 2008) ("Sales according to pre-determined plans may 'rebut [ ] an inference of scienter'") (quoting *In re Worlds of Wonder*, 35 F.3d at 1427-28). Rather than address this point and the supporting caselaw, Plaintiffs argue it is "improper" to cite a Rule 10b5-1 plan without disclosing the date the plan was adopted. Opp. 28.[7] But Plaintiffs do not allege a single fact indicating Siebel adopted the 10b5-1 plans after becoming aware of adverse information, assuming he ever did. And even Rule 10b5-1 trading plans adopted during a class period can eliminate an inference of scienter. *City of Pontiac Gen. Emps. Ret. Sys. v. First Solar Inc.*, 2023 WL 155861, at *9 (D. Ariz. Jan. 11, 2023) (Rule 10b5-1 plans formed during the class period "rebut a strong inference of scienter"). Plaintiffs cite no contrary authority.

## C.     Plaintiffs Have Failed To Plead Loss Causation

Plaintiffs' attempt to plead loss causation in connection with both the December 1, 2021 corrective disclosure about reorganizing the Joint Venture and the announcement of "disappointing" RPO metrics in March and September 2021 should be rejected as insufficient. Mot. 25-27.

*First*, the Court already rejected Plaintiffs' argument that the alleged misrepresentations regarding the size of the Baker Hughes sales force caused C3's purportedly disappointing financial results. Mot. 25; 2024 Order at 39-41. Plaintiffs try to remedy their prior failings by attempting to link the "disappointing" RPO metrics to Baker Hughes' failure to earn proportionate amounts of its minimum revenue commitments for the relevant quarters, even though there is no requirement of proportionate revenue recognition. Opp. 32; ¶¶ 148, 152. Plaintiffs do not allege any connection between the reported RPO numbers in March and September 2021, and the JVA or the size of the Baker Hughes' salesforce, or even to Oil and Gas. Plaintiffs' allegations regarding the revenue C3 recognized from the JVA for certain quarters do not provide the missing connection between the RPO metrics and the alleged misstatements.

Plaintiffs argue that while "there might be other factors unrelated to the Baker Hughes

---

[7] Plaintiffs argue it is improper not to disclose the date of a 10b5-1 plan, but cite only 17 C.F.R. § 240.10b5-1(c)(1)(i)(B) (Opp. 28), which merely requires a plan to specify the dates *of the trades*, not that public filings disclose the date of the plan.

partnership that led to the drop in share prices" in March and September 2021, they are not required to plead that Defendants' alleged misstatements were the "sole" cause of the decline. Opp. 33-34. Under a materialization of the risk theory, they are, however, required to plead that "it was the very facts about which the defendant lied" that caused the stock price to decline. *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1120 (9th Cir. 2013) (quotation omitted). Plaintiffs have not alleged such a connection between the size of the Baker Hughes salesforce and the disclosures regarding slowed RPO growth. Plaintiffs' cited cases are distinguishable on this ground. *See Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*, 964 F. Supp. 2d 1128, 1146 (N.D. Cal. 2013) (defendant's resignation accompanied by a statement regarding his past conduct "revealed the falsity of [his] prior statements"); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1046 (N.D. Cal. 2016) (stock price declined "after [defendant] revealed the effects of its accounting errors on its financial results" that were subject of misstatements).

*Second*, Plaintiffs failed to plead the alleged December 1, 2021 corrective disclosure (about salesforce structure) is connected to any alleged misstatement (about salesforce size). Mot. 26-27.

**D.      Plaintiffs Have Failed To Plead A Section 20A Claim**

Plaintiffs' Opposition largely ignores the fatal flaws in its 20A claim. Mot. 27-28. *First*, Plaintiffs fail to plead a predicate Section 10(b) violation. 2024 Order at 43-44.

*Second*, Plaintiffs' alleged trades are not contemporaneous with Defendants' sales. Notably, the TAC alleges transactions up to a week apart are contemporaneous (¶ 132), while the Opposition says contemporaneous means within four days (Opp. 35). The Court need not resolve this, as recent authority holds only trades within a day or two of one another are "contemporaneous." Mot. 27-28.

*Third*, even accepting Plaintiffs' four-day period, none of the trades supports a claim under 20A. Critically, every alleged purchase within *four* days of a sale was (i) at a price lower than the sale, (ii) pursuant to a 10b5-1 plan, or (iii) by Zavalanski.[8] *See* Mot. 27-28. As to pricing, Plaintiffs

---

[8] Plaintiffs ignore that the 2024 Order rejected 20A claims for purchases by Plaintiff Zavalanski (¶ 132) because only Lead Plaintiff Samarghandi and Plaintiff Linder assert such claims. Mot 28 n.20 (citing 2024 Order at 44 n.31). The same outcome is warranted here.

claim that "Defendants try to argue that because some of Plaintiffs' purchases were at *higher* prices than Defendants' sales," the sales are inactionable.  Opp. 36 (emphasis added).  But the C3 Defendants argue the *opposite*: because Plaintiffs' purchases were at *lower* prices than Defendants' allegedly contemporaneous sales, Plaintiffs were not disadvantaged in their purchases and cannot assert a claim under Section 20A.  Mot. 28.  Plaintiffs' additional argument that "getting a higher price is good news for a seller, for a buyer, it is bad news" is therefore irrelevant.  Opp. 36.[9]  Plaintiffs then argue that the 10b5-1 plans were enacted "*only after* [Defendants] were in possession of the alleged material, non-public information" (Opp. 36), which conflicts with their argument that, in fact, they do not know *when* the plans were enacted.  *Supra* at 12-13.  And Plaintiffs' authority (Opp. 36) notes only that 10b5-1 plans may be discounted where there were "unusual 10b5-1 plan modifications," *Evanston Police*, 411 F. Supp. at 605 n.3, which is not alleged here.

### III.     PLAINTIFFS HAVE FAILED TO PLEAD CONTROL PERSON LIABILITY

Without a primary violation, Plaintiffs' control person claims should be dismissed.  Mot. 28-29.  Regardless, Plaintiffs fail to plead Abbo was a control person.  Mot. 29 (citing 2024 Order at 23).  Plaintiffs claim they have alleged his "day-to-day involvement" at C3 (Opp. 37), but allegations that Abbo was an inventor on a C3 patent, and once spoke at a conference (¶ 36), cannot show actual control over C3 or any alleged misstatements.  Mot. 29.  Nor do allegations that Abbo was C3's CEO *ten years before* the Class Period, or a director before the Class Period (Opp. 39) plead "actual power or control over" C3.  *Zucco*, 552 F.3d at 990.  And Plaintiffs' authority (Opp. 38) is inapposite.  *See Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1157-58 (S.D. Cal. 2008) (alleging "control over the company's day-to-day operations" and that defendants "exercised that control to cause Accredited to engage in the alleged primary violations under Section 10(b)"); *In re BofI Holding, Inc. Sec. Litig.*, 2017 WL 2257980, at *29 (S.D. Cal. May 23, 2017) (defendants had authority to control public statements).

### CONCLUSION

For the foregoing reasons, the TAC should be dismissed with prejudice.

---

[9] Plaintiffs misread *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113 (N.D. Cal. 2020), which involved plaintiff-purchasers and defendant-sellers.  *Id.* at 1136.

DATED:  June 9, 2025

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

*/s/ Harry A. Olivar, Jr.*
Harry A. Olivar, Jr. (Cal. Bar No. 143089)
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
harryolivar@quinnemanuel.com

Michael B. Carlinsky (admitted *pro hac vice*)
David Myre (Cal. Bar No. 304600)
Jesse Bernstein (admitted *pro hac vice*)
Jacob J. Waldman (admitted *pro hac vice*)
Leigha Empson (admitted *pro hac vice*)
295 Fifth Ave.
New York, NY 10016
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
davidmyre@quinnemanuel.com
jessebernstein@quinnemanuel.com
jacobwaldman@quinnemanuel.com
leighaempson@quinnemanuel.com

*Attorneys for the C3 Defendants*

Case No. 4:22-cv-01413-HSG
THE C3 DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE TAC