GIBSON, DUNN & CRUTCHER LLP
JESSICA VALENZUELA, SBN 220934
   JValenzuela@gibsondunn.com
310 University Avenue
Palo Alto, California 94301-1744
Telephone:   650.849.5300
Facsimile:   650.849.5333

GEORGE B. ADAMS III, SBN 321904
   GAdams@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:   415.393.8200
Facsimile:   415.393.8306

*Attorneys for Defendant*
*Baker Hughes Company*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE RECKSTIN FAMILY TRUST, et al., | CASE NO. 4:22-cv-01413-HSG |
| Plaintiffs, | **BAKER HUGHES'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT WITH PREJUDICE AND JOINDER IN C3 DEFENDANTS' AND LORENZO SIMONELLI'S REPLIES** |
| v. | |
| C3.AI, INC., et al. | |
| Defendants. | |

**Hearing:**
Date:     June 26, 2025
Time:     2:00 p.m.
Place:    Courtroom 2, 4th Floor

Judge:    Hon. Haywood S. Gilliam, Jr.
Action Filed:  March 4, 2022

Gibson, Dunn &
Crutcher LLP

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT .................................................................................................................... 2

    A.    Plaintiffs' Control Person Claims Under Sections 15 and 20(a) Fail As a Matter of Law.......................................................................................................... 2

        1.    Plaintiffs' Section 15 Claim Is Untimely. ........................................................ 2

        2.    Plaintiffs Fail To Plead A Primary Violation By C3. ...................................... 4

        3.    Plaintiffs Fail To Plead Any Facts That Baker Hughes Controlled C3 or Siebel.............................................................................................................. 4

    B.    Plaintiffs Fail To State a Claim Under Section 20A Against Baker Hughes................ 8

        1.    Plaintiffs Fail To Plead A Predicate Violation By Baker Hughes. ................... 8

        2.    Plaintiffs Also Fail To Plead That Baker Hughes Traded C3 Stock While In Possession of Material, Nonpublic Information Or Did So With The Required Scienter.............................................................................. 9

        3.    Plaintiffs Fail to Allege That Baker Hughes Traded Contemporaneously With Plaintiffs.................................................................. 11

III. CONCLUSION ............................................................................................................... 12

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re American Apparel, Inc. Shareholder Litigation*,
2013 WL 10914316 (C.D. Cal. Aug. 8, 2013)................................................................5, 6

*In re Arrowhead Rsch. Corp. Sec. Litig.*,
2016 WL 6562066 (C.D. Cal. Mar. 29, 2016) ...............................................................8, 10

*Bao v. Solarcity Corp.*,
2016 WL 54133 (N.D. Cal. Jan. 5, 2016) ...............................................................1, 4, 5, 8

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002).....................................................................................11

*Buban v. O'Brien*,
1994 WL 324093 (N.D. Cal. June 22, 1994) ...............................................................2, 11

*In re Charles Schwab Corp. Sec. Litig.*,
257 F.R.D. 534 (N.D. Cal. 2009).....................................................................................7

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) .........................................................................10

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008)........................................................................9, 10

*Ferreira v. Funko Inc.*,
2021 WL 8820650 (C.D. Cal. Oct. 22, 2021) ....................................................................9

*In re Gupta Corp. Sec. Litig.*,
900 F. Supp. 1217 (N.D. Cal. 1994) .............................................................................2, 6

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000).................................................................................4, 7, 8

*In re Immune Response Sec. Litig.*,
375 F. Supp. 2d 983 (S.D. Cal. 2005)...........................................................................7, 8

*Lamartina v. VMware, Inc.*,
2023 WL 2763541 (N.D. Cal. Mar. 31, 2023)...................................................................11

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993).............................................................................................9

*In re Peregrine Sys., Inc. Sec. Litig.*,
2005 WL 8158825 (S.D. Cal. Mar. 30, 2005) ....................................................................5

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021)......................................................................................10

*Purple Mountain Tr. v. Wells Fargo & Co.*,
432 F. Supp. 3d 1095 (N.D. Cal. 2020) ...........................................................................8

Gibson, Dunn &
Crutcher LLP

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
845 F.3d 1268 (9th Cir. 2017)................................................................................................10

*S.E.C. v. Todd*,
642 F.3d 1207 (9th Cir. 2011)..................................................................................................7

*Sabbag v. Cinnamon*,
2010 WL 8470477 (N.D. Cal. Dec. 10, 2010) .........................................................................3

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
485 F. Supp. 3d 1113 (N.D. Cal. 2020) ..................................................................................11

*In re Silver Lake Grp., LLC Sec. Litig.*,
108 F.4th 1178 (9th Cir. 2024)........................................................................................9, 10, 11

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ...........................................................1, 4, 7, 8

*In re UTStarcom, Inc. Sec. Litig.*,
617 F. Supp. 2d 964 (N.D. Cal. 2009) ..................................................................................5, 6

*In re Volkswagen "Clean Diesel" Marktng., Sales Pracs., & Prods. Liab. Litig.*,
258 F. Supp. 3d 1037 (N.D. Cal. 2017) ...................................................................................5

*Xiaojiao Lu v. Align Tech., Inc.*,
417 F. Supp. 3d 1266 (N.D. Cal. 2019) ...................................................................................9

*York Cnty. on Behalf of Cnty. of York Ret. Fund v. HP, Inc.*,
65 F.4th 459 (9th Cir. 2023)..............................................................................................3, 4

**Statutes**

15 U.S.C. § 77m................................................................................................................2, 3

15 U.S.C. § 78t–1(a) ...............................................................................................................9

Gibson, Dunn & Crutcher LLP

# I. INTRODUCTION

Plaintiffs' opposition ("Opposition") makes one thing clear: Plaintiffs' ill-conceived claims against Baker Hughes are an afterthought. Out of their forty-five page Opposition, Plaintiffs dedicate little more than four pages to their claims against Baker Hughes. And those arguments rest on conclusory allegations and the same strained speculation that the Court previously found inadequate: that Baker Hughes, a minority investor in C3 with an arm's length business relationship, somehow "controlled" C3 and its executives and is secondarily liable for any purported fraud on C3's part. Plaintiffs' claims against Baker Hughes are all meritless for the reasons set out in C3's and Simonelli's briefing, and in Baker Hughes's opening memorandum ("BH Mem.").

*First*, Plaintiffs cannot revive their previously withdrawn claim against Baker Hughes under Section 15 of the Securities Act of 1933 ("Securities Act"). This claim is time barred on the face of the Third Amended Complaint ("TAC"). Plaintiffs' contention that the Court already found their Securities Act claims were timely (Opp. at 14–15) is misleading and wrong. The Court's prior order addressed the relation back of Section 11 claims against ***other defendants***, all of whom—unlike Baker Hughes—were named in the original complaint. That decision does not say anything about the timeliness of Plaintiffs' Section 15 claim against Baker Hughes. The TAC is clear that the purported truth of the alleged false statement in the Registration Statement was known more than a year before any Securities Act claim was brought against Baker Hughes.

*Second*, Plaintiffs' control person claims under Section 15 of the Securities Act and Section 20(a) of the Exchange Act also fail because Plaintiffs do not come close to pleading that Baker Hughes is a "control person" of C3 or of C3's CEO Tom Siebel. Plaintiffs do not identify a single fact pled in the TAC showing Baker Hughes controlled C3 or Seibel in any way, let alone that Baker Hughes had ultimate authority over the content of any challenged statement. As to C3, Plaintiffs rely solely on the fact that Baker Hughes was a minority stockholder with a single designee on the C3 board. *See Bao v. Solarcity Corp.*, 2016 WL 54133, at *9 (N.D. Cal. Jan. 5, 2016). This is not sufficient to plead Baker Hughes' control over the contents of the registration statement. BH Mem. at 8–9; *see also In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000). Moreover, the TAC says nothing at all about purported control over Siebel—who made all other challenged

Gibson, Dunn &
Crutcher LLP

statements orally during events that Baker Hughes did not attend.  The TAC does not allege—even in conclusory fashion—that Baker Hughes had the ability to control Siebel during these events, that it had any input or influence over his words, or that Baker Hughes was even aware of Siebel's statements.  In any event, Plaintiffs ignore clear law from this Court barring control person liability for oral statements by individuals.  *See In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1242 (N.D. Cal. 1994).

*Third*, Plaintiffs do not plead any element of Section 20A.  Plaintiffs admit that they do not plead a predicate insider trading violation **by Baker Hughes**.  Opp. at 35.  Nor can Plaintiffs identify any purported material, nonpublic information about C3 that Baker Hughes allegedly possessed when it sold C3 stock.  *Id.* at 36.  Plaintiffs likewise fail to plead that Baker Hughes sold stock contemporaneously with Plaintiffs' purchases; rather, Plaintiffs' purchases were long after Baker Hughes' sales and at lower prices.  *See Buban v. O'Brien*, 1994 WL 324093, at *3 (N.D. Cal. June 22, 1994).  Each of these failures are fatal on their own and foreclose Plaintiffs' Section 20A claim.

All claims against Baker Hughes should be dismissed in their entirety and with prejudice.

## II. ARGUMENT

### A.    Plaintiffs' Control Person Claims Under Sections 15 and 20(a) Fail As a Matter of Law.

Plaintiffs' control person claims fail as a matter of law and should be dismissed for three reasons.  First, the TAC admits that the supposed "truth" about Defendants' alleged misstatements was disclosed no later than December 2, 2021.  ¶¶ 145, 157–60.  Plaintiffs do not and cannot walk back this admission, which establishes that their Section 15 claim against Baker Hughes, first filed on February 15, 2023, is untimely and barred by the one-year statute of limitations.  *See* 15 U.S.C. § 77m.  Second, Plaintiffs fail to plead an underlying primary violation by any other Defendant, which forecloses their control person claims against Baker Hughes under Section 15 and Section 20(a).  Third, Plaintiffs fail to identify a single fact pled in the TAC showing Baker Hughes controlled C3 or Siebel in any way.  Plaintiffs' Section 15 and Section 20(a) claims should be dismissed for each of these reasons.

1.    Plaintiffs' Section 15 Claim Is Untimely.

Claims under Section 15 of the Securities Act must be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . ."  *See* 15 U.S.C. § 77m.  Here, the TAC alleges that the "truth"

Gibson, Dunn &
Crutcher LLP

about Defendants' alleged misstatements was disclosed no later than December 2, 2021. ¶¶ 157–60; *see also* ¶ 145 (alleging that a series of disclosures "[t]hroughout the Class Period" ending on December 2, 2021 purportedly revealed the "true state of C3's business."). Thus, by Plaintiffs' own admission, the one-year statute of limitations began to run no later than December 2, 2021, yet Plaintiffs waited to sue Baker Hughes until February 15, 2023—more than fourteen months later. BH Mem. at 6–7. Their Section 15 claim against Baker Hughes is therefore untimely.

Plaintiffs' Opposition ignores this admission in the TAC. Instead, Plaintiffs argue that the Court held Plaintiffs' claims were timely in its February 22, 2024 order (the "February 2024 Order") granting Defendants' first motions to dismiss in part. Opp. at 14–15. That is wrong, as the Court did not address the timeliness of Section 15 claims against Baker Hughes at all. In fact, Plaintiffs ***voluntarily withdrew the claim***—belatedly recognizing that it was barred by the statute of limitations. *See* Dkt. 154 at 22 n.15. The February 2024 Order concerned whether certain of Plaintiffs' Section 11 claims related back to "previously named part[ies]" under Rule 15(c)—i.e., Defendants C3, Siebel, Barter, and Simonelli. Dkt. 154 at 10–12, 14 n.12. But Baker Hughes was not named in the original complaint filed by Lead Plaintiff on March 4, 2022. The Court's February 2024 Order says nothing about the timeliness of claims against Baker Hughes.

Plaintiffs criticize Baker Hughes for "disregard[ing]" the Ninth Circuit's decision in *York County on Behalf of County of York Retirement Fund v. HP, Inc.*, 65 F.4th 459, 465 (9th Cir. 2023), which Plaintiffs cite for the proposition that a securities fraud claim is not "discovered" until a plaintiff can plead that claim, including the required element of scienter, with sufficient detail to overcome a motion to dismiss. Opp. at 14–15. This opinion does not save Plaintiffs' untimely claim because—as noted above—all that is required for a Section 15 claim is discovery of the supposed "truth" and Plaintiffs admit that the truth was known no later than December 2, 2021. ¶¶ 145, 157–60; *see also Sabbag v. Cinnamon*, 2010 WL 8470477, at *3–4 (N.D. Cal. Dec. 10, 2010) (dismissing claim under Section 14(a) of the Exchange Act as time-barred where "[p]laintiffs themselves allege that '[defendant] had finally disclosed the truth'" more than a year before filing the amended complaint). By contrast, in *HP*, plaintiff's "claim was not 'discovered' until the issuance of [an] SEC order," which

BAKER HUGHES'S REPLY ISO MOTION TO DISMISS WITH PREJUDICE
CASE NO. 4:22-CV-01413-HSG

Gibson, Dunn &
Crutcher LLP

"reveal[ed] that ostensibly innocuous statements were actually intentional misrepresentations." *HP, Inc.*, 65 F.4th at 467.

Plaintiffs' Section 15 claim against Baker Hughes should therefore be dismissed.

2.    <u>Plaintiffs Fail To Plead A Primary Violation By C3.</u>

For all the reasons set forth in C3 and Simonelli's Motions and Replies, Plaintiffs fail to plead any claim under Section 10(b) or Section 11. *See* C3 Mot. Argument §§ I–II; Simonelli Mot. § III.A–B; C3 Reply Argument §§ I–II; Simonelli Reply §§ II.A.1, II.B.1-2. As a result, Plaintiffs' secondary control person claims against Baker Hughes fail as a matter of law for lack of a primary violation. *See* BH Mem. at 7.

3.    <u>Plaintiffs Fail To Plead Any Facts That Baker Hughes Controlled C3 or Siebel.</u>

Plaintiffs' Opposition recycles the same conclusory and circular arguments raised before that Baker Hughes—a minority shareholder with a single board designee—somehow controlled C3 with respect to one challenged statement in the Registration Statement and that it controlled Siebel when he made eleven challenged statements orally during interviews, Q&A sessions at industry conferences, or on earnings calls. Opp. at 40–42; *see also* ¶¶ 105–27. But Plaintiffs still do not identify any allegation in the TAC of a "specific act of control" exercised by Baker Hughes over either C3 or Siebel. *See In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *16. Plaintiffs' Section 15 and Section 20(a) control claims should be dismissed.

a.    *The C3 Registration Statement.*

To plead control of C3 with respect to the single challenged statement in the Registration Statement, Plaintiffs must allege specific facts showing that Baker Hughes was "active in the day-to-day affairs" of C3 or had "actual authority" over the Registration Statement. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065–67 n.13 (9th Cir. 2000). As explained in Baker Hughes's opening memorandum, under well-settled case law, Plaintiffs' allegations that Baker Hughes owned 14.7% of C3 at the time of the IPO—dropping to 11.65% after the IPO—and designated its CEO (Simonelli) to serve as one of C3's ten directors, do not suffice to plead control. BH Mem. at 8–9; *see also Solarcity Corp.*, 2016 WL 54133, at *9 (outside director's status as chairman of board with 30% equity interest

BAKER HUGHES'S REPLY ISO MOTION TO DISMISS WITH PREJUDICE
CASE NO. 4:22-CV-01413-HSG

Gibson, Dunn &
Crutcher LLP

insufficient to establish control); *In re Splash Tech.*, 2000 WL 1727405, at *16 (same for investor with 20% equity interest and board designee).

Plaintiffs contend that "Simonelli's signing" of the allegedly false Registration Statement, "membership on the audit committee, and Simonelli's status as Baker Hughes's CEO" distinguish this case from those cited in Baker Hughes's opening memorandum (BH Mem. at 8–9) and are sufficient additional allegations to plead control of C3. Opp. at 40–41. Plaintiffs' allegations—all of which relate to Simonelli and not Baker Hughes—are inadequate to plead that Simonelli controlled C3. *See* Simonelli Mot. § III.C.2; Simonelli Reply § II.B.3. But even if they were sufficient as to Simonelli (which they are not), these allegations cannot suffice to make **Baker Hughes** a control person of C3. The TAC does not even allege that Baker Hughes controlled Simonelli in the first place—let alone that Baker Hughes controlled the contents of the Registration Statement through Simonelli. Instead, it alleges the opposite: that Simonelli was a "controlling person of Baker Hughes." ¶ 227; BH Mem. at 9. Plaintiffs' claim that Baker Hughes controlled C3 through Simonelli is circular and makes no sense.

Plaintiffs attempt to avoid *Solarcity* with distinctions that make no difference here. For example, they point to the fact that Mr. Musk was not on the Audit Committee, and thus did not control statements about finance and accounting matters. Opp. at 40. But here, Plaintiffs do not allege an accounting restatement or other GAAP violation, so Simonelli's membership on the Audit Committee is irrelevant to whether he controlled the alleged false statements. Moreover, the fact that Simonelli "signed or authorized the signing of" the IPO Registration Statement (¶ 38) is true of all outside directors, and it does not on its own establish control by Simonelli, let alone by Baker Hughes. *See* Simonelli Mot. § III.C.2 (citing *In re Volkswagen "Clean Diesel" Marktng., Sales Pracs., & Prods. Liab. Litig.*, 258 F. Supp. 3d 1037, 1048 (N.D. Cal. 2017); *In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *75 (S.D. Cal. Mar. 30, 2005)).

Finally, Plaintiffs cite two decisions pre-dating *Solarcity* that they contend support their Section 15 and Section 20(a) claims against Baker Hughes: *In re UTStarcom, Inc. Securities Litigation*, 617 F. Supp. 2d 964 (N.D. Cal. 2009) and *In re American Apparel, Inc. Shareholder Litigation*, 2013 WL 10914316 (C.D. Cal. Aug. 8, 2013). Opp. at 40. Both decisions are distinguishable and neither supports Plaintiffs.

Gibson, Dunn &
Crutcher LLP

Plaintiffs argue that under *UTStarcom*, control is established where a minority shareholder is the largest shareholder and a large customer, and its board designee signs a document containing allegedly false statements. *Id.*; *In re UTStarcom*, 617 F. Supp. 3d at 979–80 (noting defendant was the company's third-largest customer). *UTStarcom* established no such rule, as there were other alleged facts not present here that established control. There, the shareholder at issue was Softbank. Softbank's CEO was the founder of UTStarcom and Chairman of UTStarcom's board of directors for nearly a decade. And UTStarcom's public filings admitted that Softbank and its related entities "have significant influence over our management and affairs[.]" *Id.* at 979. Baker Hughes was not C3's largest shareholder (*see* Ex. B. at 154) and the other allegations of control in *UTStarcom* go far beyond what Plaintiffs have pled here.

Plaintiffs' reliance on *American Apparel* is likewise unavailing. There, the court held that Lion Capital—one of American Apparel's lenders who had two designees on the company's board—had control over allegedly false and misleading statements. *See In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *36–37. The court held that Lion Capital controlled American Apparel through its board designees based on "the totality of plaintiffs' allegations" and not simply because the designees signed the challenged financial statements. *See id.* This included that the company's CEO and founder "acknowledged Lion Capital's influence" and that, through its two board members, Lion Capital "was going to be involved in 'management decisions as far as strategic issues.'" *Id.* ("***This acknowledgment of Lion Capital's control***, coupled with the fact that its board designees signed the 2009 report, are sufficient to survive a motion to dismiss." (emphasis added)). Plaintiffs do not and cannot point to any such admissions of control here. Plaintiffs' Section 15 and Section 20(a) claims based on the Registration Statement should therefore be dismissed with prejudice.

   b.   *Siebel's Oral Statements.*

Plaintiffs' claim that Baker Hughes controlled Siebel's oral statements is even more far-fetched. BH Mem. at 9–10; Opp. at 41–42.

As Baker Hughes explained in its opening memorandum, control-person liability does not apply to oral statements by individuals because "oral statements attributable to identified individuals . . . are presumed to be the actions of those individuals only. Accordingly, they are not actionable against other

defendants under any theory of liability." *See In re Gupta Corp. Sec. Litig.*, 900 F. Supp. at 1242; BH Mem. at 9. Plaintiffs ignore this precedent entirely. Opp. at 41–42. Instead, in asserting that Baker Hughes controlled Siebel's oral statements, Plaintiffs cite four cases addressing control over written statements. Opp. at 41; *see S.E.C. v. Todd*, 642 F.3d 1207, 1224 (9th Cir. 2011) (addressing CEO's control over management representation letter confirming a 10–Q report and written press release reporting financial results); *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 555 (N.D. Cal. 2009) (addressing fund trustees' control over registration statement); *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1031 (S.D. Cal. 2005) (addressing control of CEO and chairman over company's quarterly reports, press releases and analyst presentations); *Howard*, 228 F.3d at 1065 (addressing CEO's control over company's financial reporting).

In any event, even if Baker Hughes could control oral statements, the TAC must plead that Baker Hughes had "actual authority" over Siebel. *Howard*, 228 F.3d at 1065; *see also* BH Mem. at 9; Opp. at 41. Baker Hughes's opening memorandum explained that the TAC does not allege—even in conclusory fashion—that Baker Hughes had any authority to control Siebel's unscripted statements. BH Mem. at 9. In response, Plaintiffs point to the Reseller Agreement between Baker Hughes and C3, which they claim "gives Baker Hughes the right to approve any public statements about the Joint Venture." *Id*. at 41. However, the Reseller Agreement only addresses certain "press release or public statements." *See* Ex. A § 13.6; BH Mem. at 10. Specifically, the relevant provision states:

> 13.6 Publicity. Subject to applicable law, (a) the Parties agree to make a joint market announcement no later than thirty (30) days following the Effective Date and (b) thereafter, neither Party will issue any press release or public statements regarding the terms and conditions of this Agreement, and/or the details of the relationship between the Parties contemplated hereby, without the prior written approval of the other Party (not to be unreasonably withheld, conditioned or delayed).

Ex. A § 13.6. The TAC does not allege that Baker Hughes was alerted in advance that Siebel would be speaking about C3's partnership with Baker Hughes, that Baker Hughes was given drafts of the statements, that it had the ability to provide input, or that Baker Hughes was even aware of Siebel's statements or was present when they were made. The Reseller Agreement does not (and logically cannot) give Baker Hughes authority over Siebel's live remarks during events that Baker Hughes was not aware of and did not attend. Plaintiffs must do more than suggest the "possibility of control;" the

TAC must identify "particular evidence" that Baker Hughes had the authority to control Siebel's unscripted statements. *See In re Splash Tech.*, 2000 WL 1727405, at \*16 (no control where plaintiffs relied on "circumstantial evidence" and did not "allege that x individual in Splash provided Berger y press release on z date with the request that Berger determine whether the disclosure was sufficient[]"); *see also Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D. Cal. 2020) (dismissing Section 20(a) claim against board chair and officers based on "barebones allegations" of control based on "their positions and their power"). As in *Splash* and *Purple Mountain*, Plaintiffs here fail to identify facts demonstrating control.

The cases Plaintiffs rely upon all involve complaints that, unlike here, allege a defendant's specific authority or control over the challenged statements. *See, e.g.*, *In re Immune Response*, 375 F. Supp. 2d at 1031 ("The Complaint contains numerous allegations regarding Carlo and Moss's involvement in misleading press releases."); *Howard*, 228 F.3d at 1066-67 (finding control pled as to CEO who "signed off on the statements as correct," but not against director as to whom there was "no specific indication that [he] supervised or had any responsibility for the preparation of the financial statements"). Because the TAC does not and cannot allege any "specific facts" demonstrating Baker Hughes had "specific control" over Siebel's oral statements (*see Solarcity Corp.*, 2016 WL 54133, at \*9), Plaintiffs' control person claims should be dismissed.

**B.      Plaintiffs Fail To State a Claim Under Section 20A Against Baker Hughes.**

To plead a Section 20A claim for insider trading against Baker Hughes, Plaintiffs must allege with specificity that (1) Baker Hughes committed a separate underlying violation (a "predicate violation") of the Exchange Act, (2) by "purchasing or selling a security while in possession of material, nonpublic information," and (3) one or more Plaintiffs traded "contemporaneously" with Baker Hughes. *See In re Arrowhead Rsch. Corp. Sec. Litig.*, 2016 WL 6562066, at \*11 (C.D. Cal. Mar. 29, 2016); *see also* ECF No. 154 at 44. The TAC does not plead a single element, as Plaintiffs' Opposition only confirms.

1.      Plaintiffs Fail To Plead A Predicate Violation By Baker Hughes.

The parties apparently agree that, to prevail on a Section 20A claim, Plaintiffs must state an independent predicate violation of Section 10(b) by Baker Hughes. BH Mem. at 11–12; Opp. at 35.

Gibson, Dunn & Crutcher LLP

They do not. Specifically, Plaintiffs admit that a Section 20A claim requires "an independent violation of another provision of the securities laws" and the *only* such violation identified by Plaintiffs is "an independent violation of Section 10(b)." Opp. at 35.[1] This admission dooms Plaintiffs' Section 20A claim. As explained in Baker Hughes's opening memorandum, the predicate violation underlying a Section 20A claim must be committed by the *same defendant* against whom the 20A claim is brought. *See* BH Mem. at 11; *Ferreira v. Funko Inc*., 2021 WL 8820650, at *38 (C.D. Cal. Oct. 22, 2021) ("Without a predicate violation by these particular Defendants, Plaintiffs' Section 20A claim against them fails."). Plaintiffs' Section 10(b) claim is against C3, Siebel, and Simonelli. Even if it were adequately pled (which it is not), it cannot serve as the predicate violation for Plaintiffs' Section 20A claim against Baker Hughes. Their Section 20A claim should be dismissed for this threshold reason.

2.    Plaintiffs Also Fail To Plead That Baker Hughes Traded C3 Stock While In Possession of Material, Nonpublic Information Or Did So With The Required Scienter.

The TAC also fails to allege specific facts showing that Baker Hughes sold C3 stock while in possession of material, nonpublic information about C3. *See In re Countrywide Fin. Corp. Sec. Litig*., 588 F. Supp. 2d 1132, 1202 (C.D. Cal. 2008) (quoting 15 U.S.C. § 78t–1(a)); *see also* BH Mem. at 11–12. Nor does it plead facts supporting a "strong inference" that Baker Hughes acted with scienter— i.e., the intent to deceive, manipulate, or defraud. *See In re Silver Lake Grp., LLC Sec. Litig*., 108 F.4th 1178, 1191 (9th Cir. 2024) ("In the insider trading context, a plaintiff must show … that the defendant acted with scienter.").

As explained in Baker Hughes's opening memorandum, to plead possession of material non-public information, the TAC must "'allege specifically what information [Baker Hughes] obtained, when and from whom [Baker Hughes] obtained it, and how [Baker Hughes] used it for [its] own advantage.'" *In re Silver Lake Grp., LLC Sec. Litig*., 108 F.4th at 1191 (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). The TAC comes nowhere close. BH Mem. at 12–14. Plaintiffs cannot cite a single paragraph in the TAC that alleges what specific information Baker Hughes

---

[1] Baker Hughes demonstrated in its opening brief that Plaintiffs' Section 20(a) control person claim cannot serve as the basis for the predicate violation required under Section 20A. BH Mot. at 11–12. Plaintiffs do not dispute, and hence have conceded, this point.

Gibson, Dunn & Crutcher LLP

purportedly knew when it sold C3 stock.  Opp. 36–37.  Instead, Plaintiffs assert generally that Baker Hughes must have been aware of the size of its own salesforce dedicated to selling C3 products.  *Id.* That does not suffice.  The TAC's lack of specificity regarding what material, nonpublic information Baker Hughes had, or how it obtained such information, defeats any claim of insider trading.  *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1282–83 (N.D. Cal. 2019).

In addition, the TAC fails to allege that Baker Hughes acted with scienter when it sold C3 stock.  Without well-pled facts in the TAC that Baker Hughes "*actually use[d]* . . . the inside information in deciding to make [a] trade," Plaintiffs' Section 20A claim fails.  *In re Countrywide*, 588 F. Supp. 2d at 1202–03.  Plaintiffs do not identify any allegations showing that Baker Hughes was even aware of Siebel's oral statements about the Baker Hughes salesforce or otherwise knew that information about the size of its own salesforce dedicated to selling C3 products was nonpublic and material to C3's investors—i.e., that it would have "altered the total mix of information made available" to C3's stockholders "concerning their investment."  *See Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017).  Plaintiffs' argument that Baker Hughes should have "assume[d]" that this information was material and nonpublic (Opp. at 36) is unsupported by any legal authority and ignores Plaintiffs' obligation to plead a strong inference of scienter based on "facts" that "strongly suggest[] actual intent" and not "mere motive and opportunity or recklessness."  *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021); *see also In re Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th at 1194 (insider trading actions cannot be based on "inferences and speculation").

Nor do Plaintiffs' conclusory allegations that Baker Hughes's trading was "suspicious" suffice to plead scienter.  Plaintiffs  concede as they must that Baker Hughes traded under a Rule 10b5-1 plan, and hence that its trades were non-discretionary.  BH Mem. at 14 n.8.  Plaintiffs' sole response is that the Court should not consider the Rule 10b5-1 plan at the pleading stage (Opp. at 36). That is wrong.  *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1069 (N.D. Cal. 2012) (ruling on a motion to dismiss that non-discretionary sales made under 10b5-1 trading plan are not indicative of fraud).  Plaintiffs' Section 20A claim should be dismissed for this reason too.

Gibson, Dunn & Crutcher LLP

BAKER HUGHES'S REPLY ISO MOTION TO DISMISS WITH PREJUDICE
CASE NO. 4:22-CV-01413-HSG

3.    Plaintiffs Fail to Allege That Baker Hughes Traded Contemporaneously With Plaintiffs.

As Baker Hughes explained in its opening memorandum, Plaintiffs do not have standing to maintain a Section 20A claim because they did not trade "contemporaneously" with Baker Hughes. *See In re Arrowhead*, 2016 WL 6562066, at *11; BH Mem. at 14–15. Specifically, the "harm" addressed by Section 20A exists (and therefore such a claim can be stated) only where it appears the plaintiff might, in fact, have traded with the defendant at an "unfair advantage." *See SEB Inv. Mgmt. AB v. Align Tech., Inc*., 485 F. Supp. 3d 1113, 1135–36 (N.D. Cal. 2020). Here, Plaintiffs purchased their shares on a different date and for ***a lower price than*** the price at which Baker Hughes sold. Plaintiffs therefore could not have traded with Baker Hughes, much less at an unfair advantage. *See Buban*, 1994 WL 324093, at *3 (finding it was "manifest that plaintiff could not have traded with defendant" where "the purchasers of defendant's shares paid $1.50 more than did plaintiff"); *see also SEB Inv. Mgmt. AB*, 485 F. Supp. 3d at 1136 ("[C]ourts have consistently held that shares purchased below the defendant's sale price cannot satisfy the contemporaneity requirement, because it is impossible that those trades occurred with defendant at an unfair advantage.").

In response, Plaintiffs contend that the Ninth Circuit has imposed no such proximity or pricing requirements. Opp. at 35–37. But Plaintiffs concede that the parties' trades must have been "close in time" to be contemporaneous. Opp. at 35 (quoting *In re Silver Lake Grp., LLC Sec. Litig*., 108 F.4th at 1190); *see also Brody v. Transitional Hosps. Corp*., 280 F.3d 997, 1005 (9th Cir. 2002) ("[S]hareholder must have traded with an insider or have traded at about the same time as an insider to be harmed by the insider's trading."); *Buban*, 1994 WL 324093, at *3–4 (three-day gap not "contemporaneous"). While Plaintiffs argue that a four-day gap is sufficiently close despite *Buban* (Opp. at 35), the TAC alleges that Baker Hughes' sales in some instances were as much as eight days before Plaintiffs' purchases. ¶ 132; *see also* BH Mem. at 14–15.

*Lamartina v. VMware, Inc*., 2023 WL 2763541 (N.D. Cal. Mar. 31, 2023), which Plaintiffs cite for the proposition that a lower-priced trade could be contemporaneous, is distinguishable. *Lamartina* does not meaningfully address the connection between the contemporaneity requirement and the sale price of stock. *Id.* at *19. Moreover, the complaint in *Lamartina* alleged specific facts that created an inference that trading was unfair and based on inside information, including that the defendant made

seventeen sales within a year during the Class Period, with zero sales before then, several of which were made "'just days after [ ] important operating meetings.'"  *Id*. at *4.  By comparison, the TAC alleges no facts at all that Baker Hughes traded at an unfair advantage, let alone that it did so contemporaneously with any Plaintiff.  This is fatal and the Section 20A claim should be dismissed. *See SEB Inv. Mgmt. AB*, 485 F. Supp. 3d at 1136; BH Mem. at 14.

### III. CONCLUSION

For the foregoing reasons, and because no amendment can cure all the defects, each of Plaintiffs' claims against Baker Hughes should be dismissed with prejudice.

Dated: June 9, 2025

GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Jessica Valenzuela*
Jessica Valenzuela

*Attorneys for Defendant Baker Hughes Company*