Sara B. Brody (SBN 130222)
sbrody@sidley.com
Sarah A. Hemmendinger (SBN 298659)
shemmendinger@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone:  (415) 772-1200

Robin E. Wechkin (*pro hac vice*)
rwechkin@sidley.com
SIDLEY AUSTIN LLP
8426 316th Place Southeast
Issaquah, WA 98027
Telephone: (415) 439-1799

*Attorneys for Defendant Lorenzo Simonelli*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE RECKSTIN FAMILY TRUST, et al., | Case No. 4:22-cv-01413-HSG |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | **DEFENDANT LORENZO SIMONELLI'S REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT** |
| C3.AI, INC., et al., | |
| Defendants. | Hon. Haywood S. Gilliam, Jr. Courtroom 2, Fourth Floor Hearing Date:  June 26, 2025 Hearing Time:  2:00 p.m. |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................................1

II.   ARGUMENT ......................................................................................................................3

    A.    Plaintiffs Fail to State an Exchange Act Claim Against Simonelli Based on Siebel's Oral Statements .................................................................................3

        1.    Plaintiffs' Section 10(b) claim is foreclosed by *Janus* .....................................3

        2.    Simonelli is not a Section 20(a) control person as to Siebel's oral statements.......................................................................................................3

    B.    Plaintiffs Fail to State an Exchange Act Claim Against Simonelli Based on Statement #3 .......................................................................................................6

        1.    Plaintiffs' Section 10(b) claim fails on scienter grounds...................................6

        2.    Plaintiffs' Section 10(b) claim fails on loss causation grounds.........................8

        3.    Simonelli is not a Section 20(a) control person as to Statement #3.................10

    C.    Plaintiffs Cannot State a Claim Against Simonelli Under Section 20A......................13

III.  CONCLUSION....................................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Decisions**

*In re BofI Holding, Inc. Sec. Litig.*,
  2017 WL 2257980 (S.D. Cal. May 23, 2017)...............................................................11, 12

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)...................................................................................................10

*Fezzani v. Bear, Stearns & Co., Inc.*,
  384 F. Supp. 2d 618 (S.D.N.Y. 2004)............................................................................5

*In re Gilead Scis., Inc. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ....................................................................................10

*In re Gupta Corp. Sec. Litig.*,
  900 F. Supp. 1217 (N.D. Cal. 1994)...............................................................................4

*In re Hansen Nat. Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) ..........................................................................7

*Janus Capital Grp., Inc. v. First Deriv. Traders*,
  564 U.S. 135 (2011).....................................................................................................1

*Murphy v. Precision Castparts Corp.*,
  2020 WL 4040827 (D. Or. July 17, 2020)........................................................................3

*In re Nektar Therapeutics Sec. Litig.*,
  34 F.4th 828 (9th Cir. 2022) ......................................................................................10

*Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*,
  774 F.3d 598 (9th Cir. 2014) ......................................................................................10

*Papasan v. Dometic Corp.*,
  2017 WL 4865602 (N.D. Cal. Oct. 27, 2017)...................................................................9

*In re Peregrine Sys., Inc. Sec. Litig.*,
  2005 WL 8158825 (S.D. Cal. Mar. 30, 2005) .................................................................12

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
  690 F. Supp. 2d 959 (D. Ariz. 2010) ............................................................................11

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Prod. Liab. Litig.*,
  258 F. Supp. 3d 1037 (N.D. Cal. 2017) .........................................................................12

*Wool v. Tandem Computs., Inc.*,
  818 F.2d 1433 (9th Cir. 1987) ....................................................................................11

ii

**Statutes & Rules**

15 U.S.C. § 77o (Section 15 of the Securities Act) ...........................................................................5, 13

15 U.S.C. § 78j(b) (Section 10(b) of the Exchange Act) ............................................................. *passim*

15 U.S.C. § 78t(a) (Section 20(a) of the Exchange Act) ............................................................. *passim*

15 U.S.C. § 78t-1 (Section 20A of the Exchange Act) ................................................................2, 3, 13

15 U.S.C. § 78u-4(b)(4) ...............................................................................................................10

Fed. R. Civ. P. 9(b) ................................................................................................................5, 10, 13

SIMONELLI'S REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT
CASE NO. 4:22-CV-01413-HSG

## I.    INTRODUCTION

Plaintiffs assert Exchange Act claims against Lorenzo Simonelli, an outside director of C3, based on two sets of statements:  (1) eleven oral statements CEO Tom Siebel made between February and November 2021, and (2) Statement #3, which appears in C3's December 2020 IPO Registration Statement and refers to certain sales made in fiscal year 2020.  Simonelli showed in his opening brief why Plaintiffs' Exchange Act claims fail as to both sets of statements.  Rather than addressing the two sets separately, Plaintiffs lump them together, seemingly to obscure the obvious defects that appear from a particularized analysis.  The Court should reject Plaintiffs' approach and separately analyze these distinct sets of statements—as the Court did in its previous ruling.  Under such an analysis, each of Plaintiffs' Exchange Act claims against Simonelli fails.  Plaintiffs' Securities Act claims fail for the reasons articulated by the C3 Defendants.

Plaintiffs also mischaracterize the Court's prior ruling, suggesting that with the exception of scienter, they prevailed on all elements now at issue.  That is untrue.  The Court did not reach most of the issues Simonelli raises.  Among other things, the Court did not address Statement #3 under the Exchange Act. Multiple issues related to both sets of statements are properly before the Court for the first time.  Plaintiffs ignore most of these issues, and their arguments fail as to the few they address.

**A.    Plaintiffs cannot state an Exchange Act claim against Simonelli based on Siebel's oral statements**

***Section 10(b).***  Simonelli showed in his opening brief that he cannot be liable for Siebel's oral statements under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).  Plaintiffs do not respond, because they have no response.  The matter could not be simpler.  The Court should dismiss Plaintiffs' Section 10(b) claim against Simonelli as to all oral statements.

***Section 20(a).***  Plaintiffs do not contend that courts have extended control person liability to oral statements.  Simonelli has cited two decisions in which courts declined to do so.  This Court should do the same.

Plaintiffs argue that a provision in the Joint Venture Agreement (JVA) between C3 and Baker Hughes, addressing the review of certain public statements, mandates a different result.  It does not.  As Simonelli noted in his opening brief, he is not a party to the JVA—a point to which

Plaintiffs do not respond. Beyond that, the notion that one company (or its CEO) could control unscripted oral statements by the CEO of another company is nonsensical. The Court should dismiss Plaintiffs' Section 20(a) claim against Simonelli as to the eleven challenged oral statements.

**B.    Plaintiffs cannot state an Exchange Act claim against Simonelli based on Statement #3**

*Section 10(b).* With respect to Statement #3, Plaintiffs' Section 10(b) claim fails on scienter and loss causation grounds. The Court ruled against Plaintiffs on scienter in its previous order. Plaintiffs say they have cured the scienter shortfall by means of allegations taken from the *Pankow* complaint, related to a C3 board meeting in May 2021. But as Simonelli argued in his opening brief, those allegations are irrelevant to Statement #3 on both chronological and substantive grounds. Information about sales force deployment allegedly presented to Simonelli in May 2021 has no bearing on his state of mind at the time of the challenged December 2020 Registration Statement, let alone on his intent as to a single sentence in that filing about sales in a period that ended more than a year before the board meeting. Plaintiffs do not respond to this point either.

The disconnect between sales force deployment and Statement #3 also defeats Plaintiffs' loss causation allegations. Plaintiffs argue that the Court has already ruled in their favor on loss causation, but the Court made no loss causation ruling as to Statement #3. Elsewhere in its order, the Court recognized that Statement #3 addresses a topic distinct from sales force deployment. Under the Ninth Circuit's "very facts" loss causation standard, that disconnect is fatal.

*Section 20(a).* Plaintiffs again rely on the review provision in the JVA in seeking to establish Simonelli's control over Statement #3. But again, Simonelli is not a party to the JVA—and the JVA does not extend to regulatory filings in any event. Plaintiffs are silent on both matters.

Plaintiffs also argue that Simonelli's audit committee service establishes control over C3's financial statements. But Statement #3 is not part of C3's financial statements; it is contained in the MD&A section of the Registration Statement. Simonelli made this point too in his opening brief, and Plaintiffs once again ignore it. The Court should dismiss Plaintiffs' Section 20(a) claim.

*Section 20A.* Finally, the Court should dismiss Plaintiffs' Section 20A claim against Simonelli. That claim is predicated on alleged insider trading by Baker Hughes. Baker Hughes shows in its briefs that Plaintiffs fail in multiple ways to establish an insider trading violation.

2

## II.    ARGUMENT

Because Plaintiffs' claims against Simonelli can most fairly be analyzed by considering the two distinct sets of challenged statements separately, we address the oral statements first below, in connection with both Plaintiffs' Section 10(b) claim and Plaintiffs' Section 20(a) claim against Simonelli. We then address Statement #3, again with respect to both the Section 10(b) and the Section 20(a) claims. To aid the Court's analysis, we attach as Exhibit A to this brief a table summarizing the defects in Plaintiffs' claims as to both sets of statements, under both statutory sections. We very briefly address Plaintiffs' Section 20A claim at the end, and rely on Baker Hughes' arguments as to that claim.

### A.    Plaintiffs Fail to State an Exchange Act Claim Against Simonelli Based on Siebel's Oral Statements

#### 1.    Plaintiffs' Section 10(b) claim is foreclosed by *Janus*

Simonelli showed in his opening brief that he cannot be liable under Section 10(b) for Siebel's oral statements. Dkt. 202 at 4-5. *Janus* holds that only "makers" are liable under Section 10(b), and subsequent case law confirms that one corporate officer or director does not "make" the oral statements uttered by another. *Id.* (citing authorities). Plaintiffs do not dispute *Janus'* applicability. They do not discuss the matter at all. Plaintiffs' Section 10(b) claim against Simonelli *undisputedly* fails as to all challenged oral statements.

#### 2.    Simonelli is not a Section 20(a) control person as to Siebel's oral statements

The Court did not reach Plaintiffs' Section 20(a) claims in its previous ruling because Plaintiffs failed to state a claim for a primary Exchange Act violation. Unless Plaintiffs are able to do so by means of the amendments in the TAC, their Section 20(a) claim against Simonelli will fail again for the same reason. But that claim would also fail as to the challenged oral statements even if Plaintiffs were able to plead a primary violation by Siebel, C3, or any other Defendant.

Plaintiffs do not contend that courts have extended control person liability to oral statements. Simonelli cited two decisions rejecting Section 20(a) claims directed at oral statements. Dkt. 202 at 10 (citing *Murphy v. Precision Castparts Corp.*, 2020 WL 4040827, at *25 (D. Or. July 17, 2020),

3

and *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1242-43 (N.D. Cal. 1994)).

Simonelli noted in his opening brief that while *Murphy* was decided on summary judgment, its reasoning applies equally at the pleading stage in this case.  The plaintiff in *Murphy* failed to show that the Section 20(a) defendant there was able to control "what words came out of" the CEO's mouth; Plaintiffs here similarly do not plead any facts supporting the premise that Simonelli could do so.  Dkt. 202 at 10 n.5.  Plaintiffs now say that the Court should disregard *Murphy* because at summary judgment, a Section 20(a) defendant may assert the defense of lack of culpable participation.  Dkt. 204, Plaintiffs' Omnibus Opposition to Defendants' Motion to Dismiss (Opp.) at 42.  That is specious.  *Murphy* contains no reference to a defense of culpable participation.  And Plaintiffs say nothing about *Gupta*.

Applying Section 20(a) to oral statements would be a particularly poor fit with the facts of this case.  As Simonelli has noted, the notion that an outside director can control a CEO's unscripted statements defies common sense.  Dkt. 202 at 11-12.  Plaintiffs do not respond to this point either.

Plaintiffs' major innovation on control in the TAC is their new reliance on the JVA review provision, which states that neither Baker Hughes nor C3 will "issue any press release or public statement" about the terms of the JVA or "'the details of the relationship between the Parties' without 'prior written approval of the other Party.'"  Dkt. 202 at 11 (quoting ¶ 34).  As Simonelli noted, that provision does not provide him with any right or obligation to control Siebel's statements:  Simonelli is not a party to the JVA.  *Id.*[1]

Plaintiffs nevertheless contend that "Simonelli, through Baker Hughes, had the explicit contractual right to approve any public statement by C3 on the Joint Venture, which covers all the false statements identified in the Complaint."  Opp. at 42.  That is false.  Plaintiffs cite no provision in the JVA that confers Baker Hughes' purported contractual right on Simonelli, and there is none.  Plaintiffs do not even contend that as a practical matter, Baker Hughes delegated any right-to-review conferred by the JVA to Simonelli, its CEO.  That is not surprising.  The subject matter of the JVA

---

[1] Baker Hughes explains in its separate reply brief why the review provision does not make it a controlling person with respect to Siebel's unscripted oral statements either.  Among other things, Plaintiffs do not allege that either Baker Hughes or Simonelli previewed the oral statements or was present when Siebel made them.

4

review provision—"press release[s] or public statements"—is far more likely to be the province of a company's public relations or investor relations employees than the responsibility of its chief executive.[2]

Plaintiffs also contend that Simonelli must be a control person because he served on C3's board "precisely because of the execution of the JVA." Opp. 42. Plaintiffs' reasoning is unclear, and the assertion fails in any event. Plaintiffs themselves allege that Simonelli served on the board because Baker Hughes was an investor in C3: "Because Baker Hughes owned 14.7% of C3's Class A common stock, it designated its Chairman, CEO and President, Simonelli, to serve on C3's board of directors." ¶ 89; *see also* ¶ 53 ("As a result of this [stock] purchase, Baker Hughes' CEO Simonelli was appointed to the board of C3"). Simonelli ceased to serve on the board in December 2021, after Baker Hughes had decreased its investment in C3. And even if Plaintiffs were correct about the reason Simonelli joined the board, they do not explain how that equates either to day-to-day involvement with C3's operations or to control over Siebel's challenged oral statements—the only two avenues to Section 20(a) liability Plaintiffs identify. Opp. at 38.

Plaintiffs finally contend that the Court has already ruled that Simonelli is a controlling person. Opp. at 4. That is misleading. The Court considered control person liability only under Section 15. Unlike Section 20(a), Section 15 does not trigger the heightened pleading requirements of Rule 9(b)—a point Simonelli made in his opening brief and Plaintiffs ignore. Dkt. 202 at 13 (citing authorities); Dkt. 154 at 22-23 (Court's February 2024 ruling on Section 15 liability). Even more significantly, the Section 15 claim on which the Court ruled has nothing to do with Siebel's oral statements. It is necessarily confined to the four corners of the IPO Registration Statement, and hence to Statement #3. ¶ 92 (alleging that purported control persons are liable for the "aforesaid wrongful conduct," *i.e.*, for statements in the IPO Registration Statement challenged under Section 11). The Court has not ruled on Plaintiffs' Section 20(a) claim against Simonelli, much less ruled that the claim could extend to oral statements. Under the authorities above, and on the facts of this

---

[2] If Plaintiffs' theory is based on control at two removes—that Baker Hughes has control under the JVA review provision and Simonelli is a control person of Baker Hughes—that theory fails too. *Fezzani v. Bear, Stearns & Co., Inc.*, 384 F. Supp. 2d 618, 646 n.10 (S.D.N.Y. 2004) ("Plaintiffs[ ] seek to hold [defendant] responsible based on tertiary liability—his control of Bear Stearns, which in turn allegedly controlled Baron. Plaintiffs[ ] cannot stretch the concept of control liability so far.").

case, Siebel's oral statements are outside the scope of Section 20(a).

**B.      Plaintiffs Fail to State an Exchange Act Claim Against Simonelli Based on Statement #3**

**1.      Plaintiffs' Section 10(b) claim fails on scienter grounds**

As Simonelli noted in his opening brief, the TAC leaves unclear whether Plaintiffs are even trying to allege scienter on his part as to Statement #3, which concerns certain sales in fiscal 2020. By their own terms, Plaintiffs' scienter allegations relate to sales force deployment, not to revenue in that fiscal year. Dkt. 202 at 5-6; ¶¶ 182-83. The Court has already held that "the topics are distinct," and that allegations related to one do not show scienter with respect to the other. Dkt. 154 at 33 (confidential witness allegations related to the purported falsity of Statement #3 do not show scienter with respect to oral statements about the sales force).

Plaintiffs respond with a single paragraph titled "Scienter for Defendant Simonelli." Opp. 30-31. Like the TAC, that paragraph largely concerns sales force deployment, which is the subject of Siebel's oral statements—not Statement #3. Plaintiffs invite the Court to "draw a strong inference that Simonelli was … aware of (or deliberately reckless to) the fact that the full Baker Hughes salesforce was not working to sell C3's products." *Id.* at 31. That is nonsensical. Under *Janus*, Simonelli has no Section 10(b) liability for Siebel's statements about the sales force. Plaintiffs, again, do not dispute this. Simonelli's scienter as to those statements is accordingly not a live issue in this case.

As to Statement #3, Plaintiffs cite nothing remotely suggesting that Simonelli intended to deceive investors by means of it. Plaintiffs draw on the *Pankow* allegations about May 2021 board materials, but those materials are irrelevant to scienter in connection with Statement #3 on both chronological and substantive grounds. The board materials post-date the December 2020 Registration Statement by many months, and are wholly unrelated to the topic of sales in fiscal year 2020 (ended April 30, 2020). The May 2021 materials plainly do not bear on Simonelli's state of mind in December 2020, let alone suggest that he intended at that time to deceive investors by means of a statement about sales in a period that had closed eight months earlier. Simonelli made all of these points in his opening brief. Dkt. 202 at 7. In a familiar move, Plaintiffs ignore them.

6

Plaintiffs' contentions about the JVA are irrelevant for the same reason.  Plaintiffs say that the JVA "specified the minimum number of salespeople to work on the Joint Venture."  Opp. at 30-31.  Whatever light that is supposed to shed on Siebel's statements about sales force deployment, it has nothing to do with Statement #3.

Continuing on the theme of the JVA, Plaintiffs again say that Simonelli joined C3's board "*because of* the Joint Venture."  Opp. at 30 (emphasis Plaintiffs').  Plaintiffs do not explain how this purported causal link is supposed to show scienter any more than they explain how it is supposed to show control.  *Supra* at 5.  Plaintiffs' "because of" formulation is also once again undermined by their own repeated allegations that Simonelli joined the board "because of" Baker Hughes' investment.  *Id.*  And even if Plaintiffs were correct about the reason Simonelli joined the board, that would add nothing to the scienter analysis.  The Court has held, in this case and others, that the importance to a company of a partnership or similar venture does not establish scienter.  Simonelli made this point too in his opening brief.  Dkt. 202 at 6 (citing February 2024 Order and related authority).  Plaintiffs ignore it.[3]

Plaintiffs' sole remaining scienter allegation is that Simonelli served as a C3 director and audit committee member, as well as Baker Hughes' CEO.  Opp. 30; ¶ 182.  But a defendant's position has never been sufficient to establish a strong inference of intentional deceit.  *E.g.*, *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1158-59 (C.D. Cal. 2007) ("the high rank of various Individual Defendants within [the company] is insufficient, without more …. It is also insufficient to demonstrate a strong inference of scienter for Plaintiff to allege that various of the Individual Defendants held positions on various committees") (internal citations omitted).  The reason is obvious.  If position were sufficient, courts would be required to infer scienter on the part of virtually every high-ranking executive in the country.

In emphasizing audit committee membership, moreover, Plaintiffs perpetuate a factual error Simonelli pointed out in his opening brief (and Plaintiffs ignore).  Plaintiffs say that audit

---

[3] Plaintiffs bizarrely say that Simonelli has described the "Joint Venture as mere 'minutiae.'"  Opp. at 30.  He has not.  Neither the word nor the concept appears in any paper Simonelli has filed or anything else Plaintiffs identify.  Plaintiffs' lack of care in this area is symptomatic of their sloppy and freewheeling approach to Simonelli generally, including the near-frivolous assertion of claims plainly barred by *Janus*—claims Plaintiffs do not even try to defend.

7

committee membership demonstrates Simonelli's access to "foundational financial documents." Opp. at 30.  But Statement #3 is not part of C3's financial statements.  It appears in the Management's Discussion and Analysis portion of the Registration Statement (MD&A).  As to the financial statements themselves, Plaintiffs do not challenge the line items showing that Baker Hughes *did* sell C3 products in fiscal 2020.  Dkt. 202 at 7; *infra* at 12.

Plaintiffs' allegations about Simonelli's positions at C3 and Baker Hughes thus do not support a strong inference of scienter any more than their irrelevant allegations about the JVA and May 2021 board materials.  The obvious defects in Plaintiffs' scienter allegations—virtually all of which Plaintiffs ignore—should easily dispose of their misguided claim that Simonelli is liable for Statement #3 under Section 10(b).

### 2.    Plaintiffs' Section 10(b) claim fails on loss causation grounds

Plaintiffs similarly fail to plead loss causation as to Statement #3.  Plaintiffs say they have "already met their burden regarding loss causation," suggesting that the Court's previous ruling settles the matter.  Opp. at 31.  That is obviously untrue as to Statement #3, which the Court has not previously examined under Section 10(b) (or Section 20(a)).

With loss causation as with scienter, Plaintiffs' allegations about Siebel's oral statements do not carry over to Statement #3.  "[T]he topics are distinct."  Dkt. 154 at 33.  That distinctness is fatal in the loss causation analysis.  The parties agree that Plaintiffs bear the burden of tracing C3's December 1, 2021 stock price decline back to the "very facts" at issue in Statement #3.  Dkt. 202 at 8 (citing authorities); Opp. at 34.  A corrective disclosure on one topic does not tie back to the "very facts" at issue on a different topic.  The Court previously ruled that C3's purported corrective disclosure on December 1 plausibly revealed that C3 did not have access to Baker Hughes' entire sales force.  Dkt. 154 at 42.  That is simply a different topic than revenue in a period ended 19 months earlier.

Plaintiffs themselves appear to have recognized that distinction in drafting the TAC.  In addressing loss causation, Plaintiffs labeled C3's December 1 statements "corrective disclosures regarding *the truth about C3's salesforce.*"  ¶ 157 (section heading; emphasis added and capitalization altered).  They did not allege that C3's December 1 statements revealed anything

8

about Statement #3.[4]

In their brief—as opposed to the TAC—Plaintiffs seek for the first time to connect Statement #3 to the distinct issue of sales force deployment. They proclaim in conclusory terms (1) that Statement #3 "omitted the fact that the Joint Venture had failed to generate revenues," (2) that this purportedly omitted fact "led to a restructuring of the Joint Venture," and (3) that the restructuring in turn "ultimately led to Defendants' admission on December 1, 2021, that the partnership was not working." Opp. at 34. Plaintiffs' argument fails in all respects.

First, Plaintiffs' purported causal chain does not appear in the TAC. Plaintiffs may not cure the pleading shortfall in their complaint with arguments in a brief. The Court has already twice warned them about this. "Supplementing allegations through briefing will not be permitted, and the Court will, for example, ignore any arguments only raised in the briefing (but not in the complaint) explaining why a challenged statement is misleading." Dkt. 154 at 16 n.13; *id.* at 32 n.22 (declining to "consider these new arguments" where "Plaintiffs did not allege as much in the CAC.").

Second, Plaintiffs' newly-presented causal chain depends on substituting self-serving characterization for reality. The final step of the chain is C3's purported "admission … that the partnership was not working." But Plaintiffs do not and cannot cite any such admission. To the contrary: Plaintiffs acknowledge that C3 and Baker Hughes agreed to *increase* the value of their reseller arrangement by $45 million, and that analysts reported on that agreement following C3's December 1 disclosure. ¶ 165. That is scarcely an admission that the arrangement was not working.

Third, Plaintiffs identify no factual basis for the links in their purported causal chain. Nor could they—because it is nonsensical. Plaintiffs do not and cannot explain why a purported failure to generate revenue between June 2019 and April 2020 would lead C3 to admit failure 19 months later, particularly as Baker Hughes had just agreed to increase the value of the JVA. ¶ 165.

Finally, Plaintiffs misapprehend their pleading burden. They suggest in a footnote that they

---

[4] In addition to the December 1 disclosure and stock drop, Plaintiffs allege stock price declines on March 2, 2021 and September 2, 2021. ¶¶ 151-52. As Simonelli pointed out in his opening brief, Plaintiffs do not connect these earlier declines to Statement #3 either. Dkt. 202 at 9-10. Plaintiffs do not respond to this argument and have thus waived the issue. *E.g.*, *Papasan v. Dometic Corp.*, 2017 WL 4865602, at *18 (N.D. Cal. Oct. 27, 2017) (plaintiff's failure to address argument in responding to defendants' motion to dismiss constitutes waiver; collecting authorities).

9

have adequately alleged loss causation because both Statement #3 and the challenged oral statements were "part of the alleged fraud." Opp. at 34 n.14. That sweeping and conclusory assertion could be made in every Section 10(b) case. Every Section 10(b) case is about an alleged fraud, and most alleged frauds have more than one part. "Part of the alleged fraud" cannot satisfy the controlling "very facts" standard. *See, e.g.*, *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 839 (9th Cir. 2022) (purported corrective disclosure reporting clinical trial results does not establish loss causation for challenged statement reporting results from an earlier clinical trial; the fact that the disclosure and the challenged statement related to the same product and same alleged fraud is insufficient).

Plaintiffs similarly betray their misunderstanding of controlling standards with their contention that they need only allege "enough fact [sic] to raise a reasonable expectation that discovery will reveal evidence of loss causation." Opp. at 31 (citing *In re Gilead Scis., Inc. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008)). That pleading standard was superseded when the Ninth Circuit adopted Rule 9(b)'s particularity requirements for allegations of loss causation. *Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*, 774 F.3d 598, 605 (9th Cir. 2014). Plaintiffs do not contend that they can satisfy the applicable particularity standard.[5]

Plaintiffs' opposition brief, in short, shows why they were right *not* to attempt to plead loss causation as to Statement #3 in the TAC. Their procedurally improper effort to do so for the first time in their brief fails at every level. Plaintiffs' Section 10(b) claim against Simonelli is as defective on the element of loss causation as it is on the element of scienter.

### 3. Simonelli is not a Section 20(a) control person as to Statement #3

Plaintiffs do not distinguish between the oral statements and Statement #3 for purposes of control person liability. Opp. at 42. This makes their arguments difficult to parse. Plaintiffs assert,

---

[5] Issues of causation related to Statement #3 are also relevant to Plaintiffs' Securities Act claims, and Plaintiffs discuss those issues in responding to C3's negative causation argument. Opp. at 13-14. C3 has shown in its separate reply brief why Plaintiffs' negative causation analysis is incorrect. But even if Plaintiffs had the better of the argument on negative loss causation, this would not show that they had adequately alleged loss causation as to Statement #3 under Section 10(b). The burdens and standards are entirely different. Plaintiffs bear the burden of establishing loss causation under Section 10(b). 15 U.S.C. § 78u-4(b)(4). And the standard Plaintiffs cite—that the challenged statement need only "touch upon" the reason for a stock price decline—was rejected by the Supreme Court under Section 10(b) more than 20 years ago. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 343 (2005).

as noted, that "Simonelli, through Baker Hughes, had the explicit contractual right to approve any public statements by C3 on the Joint Venture, which covers all the false statements identified in the Complaint." Opp. at 42; *supra* at 4. As to Statement #3, that is wrong on two counts. Simonelli identified both in his opening brief, and Plaintiffs respond to neither, meaning they have waived these issues too. Dkt. 202 at 9-10; *supra* at 9 n.4.

First, as discussed above, Simonelli did *not* have an "explicit contractual right" to review C3's statements under the JVA. Dkt. 202 at 11. Plaintiffs do not argue even that the JVA provision shows *Baker Hughes'* control as to Statement #3. The argue only (and wrongly) that the JVA establishes Baker Hughes' control over Siebel's oral statements. Opp. at 41. Simonelli, of course, had no rights under the contract at all—a point Plaintiffs do not dispute.

Second, the JVA review provision does not by its terms apply to regulatory filings like the Registration Statement. Dkt. 202 at 12. Similarly, as a matter of securities law, counterparties to a transaction are not responsible for the accuracy of one another's SEC filings reporting that transaction. *Id.* The JVA provision adds nothing to the Section 20(a) analysis for Statement #3.

Apart from the JVA, Plaintiffs cite Simonelli's audit committee membership in an effort to show control, just as they did in their attempt to establish a strong inference of scienter. Opp. at 42. On both counts, Plaintiffs are proceeding from a false premise. *Supra* at 7-8. Statement #3 is not part of C3's financial statements, as Plaintiffs appear to believe. Audit committee membership may be relevant to control, but only as to challenged statements within an audit committee's jurisdiction. Plaintiffs' principal authority makes this point repeatedly. *In re BofI Holding, Inc. Sec. Litig.*, 2017 WL 2257980 (S.D. Cal. May 23, 2017). In reviewing earlier decisions addressing audit committee members' potential liability under Section 20(a), the *BofI* court noted that the statements at issue in those cases "fell within the purview of the Audit Committee's duties," or that the audit committee had the power to control "the financial statements in general." *Id.* at *29 (discussing *Wool v. Tandem Computs., Inc.*, 818 F.2d 1433 (9th Cir. 1987), and *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 690 F. Supp. 2d 959 (D. Ariz. 2010)). In addressing the facts before it, the *BofI* court then held that audit committee membership supported the plaintiffs' control allegations because the "allegedly false and misleading statements made about the adequacy of

11

BofI's internal control departments fell within the purview of the Audit Committee's duties," which included "oversight of the Company's financial reporting and internal controls." 2017 WL 2257980, at *29-30.[6]

BofI highlights what is missing here. Plaintiffs argue in conclusory fashion that "Simonelli had control of the precise subject matter of … the Registration Statement's false statement." Opp. at 42. No facts Plaintiffs allege support that assertion. Statement #3, as noted, is part of the MD&A—*Management's* Discussion and Analysis. Plaintiffs do not allege that the MD&A falls within the audit committee's purview. Financial statements plainly *do* come within that purview—but Plaintiffs do not challenge C3's financial statements. Dkt. 202 at 14 & n.7. As C3 points out in its motion, the audited financial statements in the company's 2022 Form 10-K wholly undermine Plaintiffs' contentions about Statement #3. The financial statements show that for fiscal 2020, C3 booked $5.929 million in "Total revenue from certain customers in Oil and Gas field related to the Baker Hughes arrangement"—that is, sales Baker Hughes made to its own customers in the oil and gas industry. Dkt. 201 at 10.[7] For purposes of the Section 20(a) analysis, the financial statements underscore the wrongheadedness of Plaintiffs' effort to show that audit committee membership establishes control as to Statement #3. The statements that Plaintiffs allege are within the audit committee's purview—the financial statements—are the very statements Plaintiffs do *not* challenge.

Plaintiffs identify only two legal bases for the element of control required under Section 20(a)—involvement in day-to-day management and the authority to control the content of challenged statements. Opp. at 38. Plaintiffs do not and cannot contend that the first is relevant to Simonelli, an outside director. They seek to show that the second applies, through arguments about both the JVA review provision and Simonelli's audit committee membership. But neither argument

---

[6] Plaintiffs cite no authority beyond *BofI* (and *Murphy*) in responding to Simonelli's Section 20(a) arguments. Opp. at 42. They ignore Simonelli's authorities, including *In re Peregrine Systems, Inc. Securities Litigation*, 2005 WL 8158825 (S.D. Cal. Mar. 30, 2005), a financial statement fraud case in which the court dismissed Section 20(a) claims against audit committee members. Dkt. 202 at 12, 14. Plaintiffs also fail to address authorities holding that signing a registration containing challenged statements does not establish control. Dkt. 202 at 13-14 (citing *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Prod. Liab. Litig.*, 258 F. Supp. 3d 1037, 1048 (N.D. Cal. 2017)).

[7] This resolves the Court's earlier concern that the "approximately $6 million delta"—that is, the $5.929 figure—could potentially reflect "money BH paid to cover its own sales shortfall" as opposed to actual sales of C3 product Baker Hughes made to its customers. Dkt. 154 at 18-20.

12

is consistent with the facts alleged.  Statement #3 does not come within the JVA provision; nor do Plaintiffs allege that it is within the audit committee's purview.  The Court should dismiss Plaintiffs' Section 20(a) claim against Simonelli as to Statements #3, just as it should dismiss Plaintiffs' Section 20(a) claim as to the challenged oral statements.[8]

### C.    Plaintiffs Cannot State a Claim Against Simonelli Under Section 20A

Plaintiffs' Section 20A claim against Simonelli is derivative of their Section 20A claim against Baker Hughes.  Plaintiffs do not allege that Simonelli himself sold any C3 stock.  The sole basis of their claim against Simonelli is that he is Baker Hughes' CEO, which they say makes him a Section 20A control person (which is distinct from control person liability under Section 20(a)).

With their usual carelessness, Plaintiffs accuse Simonelli of "ignor[ing]" their Section 20A control person theory.  Opp. at 37.  In reality, Simonelli addressed that theory in his opening brief, arguing that the Section 20A claim fails because Plaintiffs have not established a predicate Section 20A violation by Baker Hughes.  Dkt. 202 at 15.  Baker Hughes shows in its separate reply why that continues to be the case.

### III.    CONCLUSION

Simonelli has summarized the arguments above in Appendix A.  Based on those arguments, the Court should dismiss Plaintiffs' Exchange Act claims against Simonelli with prejudice.  Based on the arguments in the C3 Defendants' motion and briefing, which Simonelli has joined, the Court should also dismiss Plaintiffs' Securities Act claims against Simonelli with prejudice.

Date:  June 9, 2025

Respectfully submitted,

**SIDLEY AUSTIN LLP**

By:    _/s/ Sara B. Brody_
Sara B. Brody (SBN 130222)

_Attorneys for Defendant Lorenzo Simonelli_

---

[8] The Court's earlier ruling that Plaintiffs adequately pled control for purposes of their Section 15 claim does not require a different result.  Plaintiffs do not dispute that Section 20(a) claims are governed by a higher pleading standard than Section 15 claims. _Supra_ at 5.  What is missing from Plaintiffs' Section 20(a) allegations is exactly what Rule 9(b) requires:  a particularized factual basis supporting the allegation of control.

13

**Appendix A**

| Claim | Summary of Reasons to Dismiss Claims Against Simonelli |
|---|---|
| **Oral Statements** | |
| Section 10(b) | Foreclosed by *Janus*.  Only "makers" are liable under Section 10(b).  **Plaintiffs do not dispute.** |
| Section 20(a) | JVA review provision does not give Simonelli personally any right or obligation to control C3's statements. **Plaintiffs do not dispute.** <br><br> Contention that outside director controls CEO's unscripted oral statements is nonsensical.  **Plaintiffs do not dispute.** |
| **Statement No. 3** | |
| Securities Act claims— addressed in C3's opening and reply briefs | Plaintiffs fail to establish falsity.  Unchallenged financial statements show fiscal year 2020 revenue of $5.929 million from Baker Hughes' sales of C3 products to its oil and gas customers. <br><br> Negative causation—announcement of sales force reorganization in December 2021 did not disclose purported truth about Baker Hughes' sales of C3 products in fiscal 2020. |
| Section 10(b) | Scienter <ul><li>May 2021 board materials are too late to show scienter as to Statement #3.  **Plaintiffs do not dispute.**</li><li>JVA—As a legal matter, the significance of a partnership agreement to a company is insufficient to create a strong inference of scienter.  **Plaintiffs do not dispute.**</li><li>Audit Committee membership does not support strong inference of intentional deceit.</li></ul> Loss causation <ul><li>In the TAC, Plaintiffs did not even try to link the December 1, 2001 decline to Statement #3.  Their loss causation allegations are confined to statements about the sales force.  **Plaintiffs do not dispute.**</li><li>Plaintiffs' three-part causal chain, introduced for the first time in their opposition brief, cannot fix the problem.</li></ul> |

14

| Claim | Summary of Reasons to Dismiss Claims Against Simonelli |
|---|---|
| **Statement No. 3** | |
| Section 20(a) | JVA review provision does not give Simonelli personally any right or obligation to monitor C3's statements. **Plaintiffs do not dispute.** |
| | JVA review provision does not apply to regulatory filings. **Plaintiffs do not dispute.** |
| | Audit Committee membership does not establish control. |
| | • Statement #3 is distinct from the unchallenged financial statements within Audit Committee purview. **Plaintiffs do not dispute.** |
| **Alleged Insider Sales** | |
| Section 20A | Sole remaining theory is that Simonelli is a control person with respect to Baker Hughes' sales. **Plaintiffs do not dispute.** |
| | No Section 20A violation by Baker Hughes (addressed in Baker Hughes' opening and reply briefs). |

15